UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YUSUF AHMED, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL GROUP, et al.,<br><br>    Defendants. | No. 3:20-cv-30056-MGM |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL RULE 30(b)(6) TESTIMONY**

Defendant Liberty Mutual Group Inc. failed to meet its obligation under Federal Rule of Civil Procedure 30(b)(6) to designate an individual to testify about information known to or reasonably available to it regarding the matters for examination set out in Plaintiffs' duly issued notice of deposition (Exhibit 1). Liberty Mutual's objections to complying with that notice lack merit and Liberty Mutual did not make a conscientious good-faith effort to prepare its designee to answer Plaintiffs' questions fully, completely, and unevasively. The Court should order Liberty Mutual to prepare a designee (or designees) to testify regarding items 1–4, 7, and 9 of the notice of deposition fully, completely, and unevasively.

**I.    Procedural background.**

    **A.    Nature of the case.**

This is an action for breach of fiduciary duties under ERISA, 29 U.S.C. §1132(a)(2) and §1132(a)(3). See Complaint, Dkt. No. 1. Plaintiffs are participants in the Liberty Mutual 401(k) Plan. The Plan is a defined contribution plan under ERISA (29 U.S.C. §1002(2)(A) and §1002(34)) into which Plaintiffs defer portions of their compensation for their retirement savings. The Plan is administered by Defendants or their employees for which Defendants have

1

assumed responsibility. Dkt. No. 55.

Plaintiffs allege Defendants mismanaged their Plan by, among other things, causing the Plan to incur excessive administrative expenses, including excessive fees for recordkeeping services and managed account services, and including in the Plan imprudent investment options—the Sterling Mid-Cap Value Portfolio and the Wells Fargo Government Money Market Fund. Dkt. No. 1 at 16–86. As Plan fiduciaries, Defendants were obligated to act solely in the interest of Plan participants and for the exclusive purpose of providing benefits to participants and defraying reasonable expenses of administration and to act with the care, skill, prudence, and diligence of an expert fiduciary of a large retirement plan. 29 U.S.C. §1104(a)(1)(A) and (B).

### B. The notice of Rule 30(b)(6) deposition.

On September 8, 2023, Plaintiffs issued a notice of deposition under Rule 30(b)(6) to Liberty Mutual listing nine items as matters for examination.[1] The notice specified that the deposition would take place on a date and time to be agreed to by the parties.

On September 20, Liberty Mutual identified Christopher Felton as its designee for five of the items and stated he was available on October 23. They stated their response as to the other matters was pending.

On October 4, Liberty Mutual delivered nine pages of objections to the notice and indicated that an unspecified individual would testify only as to some of the matters listed in the notice of deposition.[2]

On October 10, Plaintiffs responded to the objections, insisting that Liberty Mutual produce a witness to testify regarding all matters specified for examination and indicating their

---

[1] Declaration of Michael A. Wolff ¶2, Exhibit 1.
[2] Wolff Decl. ¶3, Exhibit 2.

willingness to accept documentation that provided the requested information.[3] Plaintiffs also asked Liberty Mutual to identify who would testify regarding the other matters for examination.

The parties met and conferred on October 13. Plaintiffs followed up that day with an email on the items that Liberty Mutual indicated it would respond to.[4] On October 19, Plaintiffs followed up with another email noting the lack of response, asking for an identification of whom Liberty Mutual designated to testify on items 1 through 4 of the notice of deposition, noting their intent to move to compel absent compliance and asking whether Liberty Mutual intended to proceed with the deposition as to items 5 through 9 only or postpone the deposition until the parties' disputes were resolved.[5]

On October 20, Liberty Mutual identified Christopher Felton as their designee for all topics in the notice of deposition.[6] Liberty Mutual identified certain documents that contained information responsive to some of the topics, indicated it continued to search for others, and confirmed its continuing objections as to other topics. Liberty Mutual did not object to proceeding with the deposition on October 23 subject to subsequent resolution of disputes over outstanding objections.

Plaintiffs issued an amended notice of deposition setting the deposition for October 23[7] and the parties proceeded with that deposition. At the end of the deposition, Plaintiffs stated that they were suspending the deposition until the Court could decide this motion to compel.[8]

On October 27, 2023, Plaintiffs informed Defendants of their intention to pursue this motion

---

[3] Wolff Decl. ¶4, Exhibit 3.
[4] Wolff Decl. ¶5, Exhibit 4
[5] *Id.*
[6] Wolff Decl. ¶6, Exhibit 5.
[7] Wolff Decl. ¶7, Exhibit 6.
[8] Wolff Decl. ¶8, Exhibit 7 at 141:20–25 (Draft transcript of the deposition of Christopher Felton).

to compel and asked if they wished to further confer about these issues.[9] Defendants did not respond to that email. Later on October 27, without referencing Plaintiffs' intended motion to compel or the Rule 30(b)(6) notice, Defendants produced 273 pages of additional documents.[10] On Monday, October 30, Plaintiffs discovered that this production included six pdf prints of spreadsheets that relate to a "Liberty Mutual Admin Expense" account for October 4, 2018 through October 16, 2023.[11] On October 31, Defendants confirmed they opposed this motion and did not request further discussions.[12]

## II. Legal Standards.

Federal Rule of Civil Procedure 30(b)(6) allows Plaintiffs to issue a notice of deposition that names Liberty Mutual as the deponent and describes with reasonable particularity the matters for examination. Liberty Mutual was required to designate one or more officers, directors, or managing agents, or other persons, to testify on its behalf and that designee was obligated to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

"Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36-37 (D. Mass. 2001).

Liberty Mutual had to make a conscientious good-faith effort to prepare its designee to "answer fully, completely, unevasively." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (quoting *Mitsui & Co. (U.S.A.) v. Puerto Rico Water Resources Auth.*, 93

---

[9] Wolff Decl. ¶10, Exhibit 9.
[10] Wolff Decl. ¶11.
[11] Wolff Decl. ¶11.
[12] Wolff Decl. ¶12.

F.R.D. 62, 67 (D.P.R. 1981)). That duty included examining documents, inquiring of past employees, and examining other sources that could provide the information requested. *Id.* (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)); *see also Great Lakes Ins., SE v. Andersson*, No. 20-40020-TSH, 2021 U.S. Dist. LEXIS 254325, *5–6 (D. Mass. Oct. 14, 2021).

Federal Rule of Civil Procedure 37 allows Plaintiffs to move for an order compelling answers to deposition inquiries if a deponent fails to answer a question asked under Rule 30 or a corporation fails to make a designation under Rule 30(b)(6). Fed. R. Civ. P. 37(a)(3)(B)(i)–(ii). Evasive or incomplete answers at deposition are the same as a failure to answer. Fed. R. Civ. P. 37(a)(4). Likewise, a failure to adequately prepare a designee to answer fully, completely, and unevasively is the same as a failure to designate under Rule 30(b)(6).

### III.  The items for which Liberty failed to comply with Rule 30(b)(6).

Plaintiffs' notice of deposition complied with Rule 30(b)(6) because it describes with reasonable particularity the matters for examination. Ex. 1, 6. Liberty Mutual did not comply with Rule 30(b)(6) because it did not designate a representative who was sufficiently prepared to testify about the matters for examination based on information reasonably available to Liberty Mutual.

**Item 1**

The first matter for examination asked Liberty Mutual for information regarding fees that were deducted from participant investments putatively for the payment of Plan administrative expenses. That item stated:

> 1. Describe the process by which Plan administrative fees were deducted from Plan investment options, the Plan account into which those fees were deposited, all deposits into (including interest or investment gains) and disbursements out of

   that account from April 2014[13] to present, how those disbursements were authorized on behalf of the Plan, the monthly balance of that account from April 2014 to present. Identify all documents that describe transactions into and out of that account and the monthly balance of that account.

 Liberty objected to producing a witness to identify deposits and disbursements in the account, the monthly balance of the account, and the documents that describe the transactions and monthly balances.[14] Liberty based its objection on the grounds that the information was "more properly the subject of discovery by other means" and that they "previously produced documents and other information responsive to this Subject."[15] Liberty Mutual later indicated that "for the period between April 2014 and July 1, 2018, Defendants are not aware of any documents in their possession that describe the transactions into and out of the account that held plan administrative fees." At the same time, however, Liberty Mutual identified three documents that "contain information about plan expense disbursements between April 2014 and July 1, 2018."[16]

 The three documents that Liberty Mutual identified are spreadsheets that are titled "Liberty Mutual Insurance - 401(k) Plan Clearing Account Reconciliation" and bear the dates April 30, 2016, June 30, 2018, and July 2, 2018.[17] Liberty Mutual's designee testified that there was a spreadsheet describing transactions in the expense account, but could not identify it.[18] He could not identify the spreadsheets Liberty Mutual had identified[19] or explain what information was included in the spreadsheets.[20] Later, after a break in the deposition, he stated deposition exhibit

---

[13] April 2014 is the beginning of the limitations period. 29 U.S.C. §1113.
[14] Ex. 2 at 2
[15] *Id.*
[16] Ex. 5 at 2.
[17] Wolff Decl. ¶9, Exhibit 8.
[18] Ex. 7 at 32:10–33:9
[19] *Id.* at 34:9–35:21, 36:9–37:3
[20] *Id.* at 37:8–40:13.

52 was the spreadsheet that Liberty Mutual's attorneys had shown him, but only *on the morning of his deposition*.[21] Showing a designee a document on the morning of a deposition obviously is not adequately preparing the witness to testify about the document, particularly when it is a large spreadsheet like exhibit 52.

The designee admitted he did nothing to determine what the spreadsheets were or how they relate to each other.[22] The designee admitted he could not provide the balance of the expense account for any month from and after April 2014 and could provide no accounting for debits and credits to the expense account after July 2, 2018, the end date of the third spreadsheet.[23] The designee also could not identify what happened to the $1,039,436.92 balance of the account shown in deposition exhibit 54.[24] The designee could not identify the balance in the expense account when Fidelity took over from Northern Trust as the trustee of Plan assets.[25] The designee did not know whether the expense account funds were invested in any manner,[26] even after he was shown what appears to be a March 31, 2022 statement from Fidelity for an "Expense Account" that was invested in a money market fund (and had a balance of $740,694.59).[27] He also could not identify any gains from the investment of the "Expense Account" or similar statements of the account for any period other than the first quarter of 2022.[28] He could not even describe what efforts Liberty Mutual undertook to find documents that provided this information.[29]

---

[21] *Id.* at 62:2–63:1.
[22] *Id.* at 37:4–7.
[23] *Id.* at 40:15–41:12, 44:2–5.
[24] *Id.* at 41:14–23; Ex. 8 at 3.
[25] Ex. 7 at 41:25–42:4. Fidelity took over as trustee on July 1, 2018.
[26] *Id.* at 42:17–25.
[27] *Id.* at 43:1–43:23, 44:15–23 (dep. ex. 2).
[28] *Id.* at 45:19–46:4
[29] *Id.* at 46:6–11.

Liberty Mutual designated Felton specifically to identify how "disbursements were authorized on behalf of the Plan." Yet, when asked who provided authority to instruct the Plan's trustee to make disbursements from the Plan's expense account, he did not know.[30]

Liberty Mutual's objection that information sought in Item 1 was "more properly the subject of discovery by other means" is not a valid objection.[31] *Lockheed Martin Corp. v. L-3 Communs. Corp.*, No. 05-1580, 2007 U.S. Dist. LEXIS 52658, at *11 (M.D. Fla. July 22, 2007; *Ierardi v. Lorillard, Inc.*, No. 90-7049, 1991 U.S. Dist. LEXIS 11320, *3 (E.D. Pa. Aug. 13, 1991) (rejecting contention interrogatories as more appropriate other means for information sought in Rule 30(b)(6) deposition). Liberty Mutual also did not satisfy its duty to make a conscientious good-faith effort to prepare its designee to answer fully, completely, and unevasively. *Briddell*, 233 F.R.D. at 60. Its designee knew virtually nothing about Item 1.

Liberty Mutual also stated on October 20 "that it agreed to search for and produce documents sufficient to describe the transactions into and out of the account that held plan administrative fees between July 1, 2018 and the present to the extent that such documents exist and can be located after a reasonably diligent search."[32] Liberty Mutual did not produce those documents before or at the October 23 deposition, or indicate that it was going to produce the documents at a later date. Only near the end of the day on October 27 did Liberty Mutual finally produce, albeit without so indicating, six documents that appear to contain information of the Plan's expense account, albeit commencing only on *October 3, 2018* and thus leaving a void of

---

[30] *Id.* at 46:19–49:20. The Plan's trustees were "directed trustees" with no discretion to act as a fiduciary for the Plan, but instead subject to the directions of a Plan fiduciary. 29 U.S.C. §1103(a)(1).
[31] Liberty cited no authority for that objection. Ex. 2 at 2.
[32] Ex. 5 at 2.

information from July 1, 2018 (the end date of deposition exhibit 54) to October 3, 2018.[33] Liberty Mutual denied Plaintiffs the opportunity to examine Liberty Mutual's designee about these documents. Indeed, producing those documents near the end of the fact discovery period (Dkt. No. 75) deprived Plaintiffs of the opportunity to conduct any discovery about the documents.

The Court should order Liberty Mutual to produce a thoroughly prepared witness to answer Plaintiffs' inquiries regarding Item 1, particularly all information to provide a full accounting for the disposition of the administrative fees from April 2014 to present and to identify how disbursements from the expense account were authorized on behalf of the Plan.

**Items 2–4**

Items 2–4 sought certain information regarding Plan activity before the start of the limitations period that bore on Defendants' performance of their fiduciary duties during the limitations period. Those Items stated:

> 2. Describe the most recent request for proposal (RFP) for Plan recordkeeping services that was conducted before 2016, when it was conducted, the companies to whom requests were made, the proposals received, and who conducted the RFP.
>
> 3. Describe the benchmarking, request for information (RFI), or other analysis of the reasonableness *vel non* of the Plan's recordkeeping expenses between 2012 and 2016.
>
> 4. Describe the benchmarking, RFP, RFI or other analysis of the reasonableness *vel non* of the Plan's managed account fees charged 3 between 2012 and present. Identify by first and last name the participants whose accounts were charged for managed account services and the dates during which the accounts were charged.

Liberty Mutual objected to providing any information about these topics before April 2014 on the grounds that they were overly broad, unduly burdensome, sought irrelevant information,

---

[33] Wolff Decl. ¶11; ex. 10.

and were "not proportional to the needs of the case[.]"[34] Liberty Mutual's designee did not know whether these RFPs or analyses had been conducted before 2014 and did nothing to try to find that information.[35] The witness, however, had no trouble testifying about events in 2012, even 2009, when it suited Liberty Mutual's interest.[36]

Whether Defendants conducted a RFP for Plan services before 2014 is relevant to determining whether it was prudent for Defendants to wait until 2016 to do so (albeit only partially for Plan managed account services).[37] As Plaintiffs allege, and as the DOL has indicated, prudent plan fiduciaries conduct RFPs for plan services at least every 5 years.[38] Therefore, the question of whether Defendants had inquired as to the reasonableness of Plan service fees either through a RFP or other means is relevant to whether they prudently waited until 2016 to do so (albeit, as Plaintiffs allege, inadequately).

To find this information Liberty Mutual could have just asked the people on its benefits team[39] or read the minutes of the fiduciary committee responsible for the administration of the Plan. That is hardly a burden. Liberty Mutual's designee did not even look at the minutes from before April 2014. He looked only at the minutes that Liberty Mutual's counsel provided to him.[40] When it suited Liberty Mutual's interest, the designee was provided certain minutes before April 2014.[41] It would not have been a significant burden for the designee to read through *all* of the pre-April 2014 minutes to determine the last time before 2016 Defendants conducted a

---

[34] Ex. 2 at 3–4, Ex. 5 at 2–3.
[35] Ex. 7 at 49:22–50:17, 52:19–53:7, 58:16–59:20.
[36] Ex. 7 at 76:1–24, 77:19–79:1.
[37] Ex. 7 at 28:6–29:13.
[38] Dkt. No. 1 at 21 n.9 (citing experts), 22 (¶60, citing DOL), 77 (¶193).
[39] Ex. 7 at 27:3–9, 50:4–23.
[40] Ex. 7 at 53:3–54:6.
[41] Ex. 7 at 78:12–79:1.

RFP for Plan recordkeeping or managed account services or otherwise analyzed whether recordkeeping and managed account fees were reasonable.

Liberty Mutual's objections are unfounded and its refusal to produce a witness to provide information responsive to Items 2–4 before April 2014 is improper. The Court should order Liberty Mutual to prepare and produce that witness.

**Item 7**

Item 7 requested information about how much money was exchanged between Liberty Mutual and one of the Plan's investment advisers (Wells Fargo, adviser to the Wells Fargo Government Money Market Fund). See Dkt. No. 1 at 41–68.

> 7. From 2014 to present, describe all services provided by Liberty Mutual Group, Inc. or its subsidiaries, to Wells Fargo & Company or its affiliates and vice versa and the amounts paid each year for those services.

Liberty Mutual objected to identifying the amounts paid each year on the grounds that it "is more properly the subject of discovery by other means."[42] That objection is baseless for the reasons described above.

In response to Plaintiffs' interrogatories, Liberty Mutual identified documents that described its business relationship with Wells Fargo. Liberty Mutual did not produce documents that identified the amounts paid for services exchanged between the two entities.[43] Liberty Mutual's designee did not provide that information either.[44]

Plaintiffs contend that Defendants imprudently retained the Wells Fargo Money Market Fund as a Plan investment. Dkt. No. 1 at 41–68. Promoting a lucrative business relationship with Wells Fargo would be an explanation why they did so, and that would be imprudent and disloyal.

---

[42] Ex. 2 at 7.
[43] Ex. 2 at 7.
[44] Ex. 7 at 86:7–88:16, 95:6–11, 98:23–99:2, 100:23–101:3.

29 U.S.C. §1104(a)(1)(A) and (B). Liberty Mutual certainly knows how much it was paid from Wells Fargo and how much it paid Wells Fargo. The Court should order Liberty Mutual to obtain information on the amounts paid between Liberty Mutual and Wells Fargo for any services they provided and produce a witness to identify it.

**Item 9**

Item 9 sought similar information about the payments for services between Liberty Mutual and another provider of a Plan investment option that Plaintiffs contend was imprudent—Sterling Capital Management LLC (adviser for the Sterling Mid Cap Value investment). See Dkt. No. 1 at 36–40.

> 9. From 2014 to present, describe all services provided by Liberty Mutual Group, Inc. or its subsidiaries, to Sterling Capital Management LLC, BB&T Asset Management LLC, or BB&T Securities, or affiliates thereof and vice versa and the amounts paid each year for those services.

As with Item 7, Liberty Mutual objected to providing information about the "amounts paid" for these services on the invalid basis of "more properly the subject of discovery by other means."[45] As of October 20, Liberty Mutual said it would continue to search for documents sufficient to identify the amounts paid.[46] Liberty Mutual did not produce or identify any such documents at the deposition. Liberty Mutual's designee also did not provide this information.[47]

As with Item 7, the Court should order Defendants to obtain information on the amount paid between Liberty Mutual and Sterling Capital Management LLC, BB&T Asset Management LLC, or BB&T Securities, or their affiliates for any services they provided and produce a witness to identify it.

---

[45] Ex. 2 at 8.
[46] Ex. 5 at 3.
[47] Ex. 7 at 131:16–133:5, 134:14–17, 135:4–7, 135:19–22, 136:12–17, 137:16–21, 138:13–16, 139:3–7, 139:19–140:4.

12

## CONCLUSION

The Court should order Liberty Mutual to produce a designee or designees who has been fully prepared to answer Plaintiffs' inquiries regarding Items 1–4, 7, and 9 of the notice of deposition.

October 31, 2023

Respectfully submitted,

/s/      Michael A. Wolff
Jerome J. Schlichter (admitted *pro hac vice*)
Michael A. Wolff (admitted *pro hac vice*)
Joel D. Rohlf (*pro hac vice*)
SCHLICHTER BOGARD LLP
100 South Fourth Street, Suite 1200
St. Louis, MO, 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
mwolff@uselaws.com
jrohlf@uselaws.com

*Lead Counsel for Plaintiffs*

Robert T. Naumes, BBO # 367660
Christopher Naumes, BBO # 671701
NAUMES LAW GROUP
2 Granite Ave, #425
Milton, Massachusetts 02186
617-227-8444
617-696-2437 (fax)
robert@naumeslaw.com
christopher@naumeslaw.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2023.

/s/      Michael A. Wolff