UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
YUSUF AHMED, et al.,                          :
                                              :
               Plaintiffs,   :   Civil Action
                                              :   No. 20-30056-MGM
v.                                            :
                                              :
LIBERTY MUTUAL GROUP INC., et al.,            :   **ORAL ARGUMENT REQUESTED**
                                              :
               Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' (1) OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL ADDITIONAL RULE 30(B)(6)
TESTIMONY (ECF NO. 82) AND (2) REQUEST FOR ORAL ARGUMENT**

                        James R. Carroll
                        Michael S. Hines
                        Mary E. Grinman
                        SKADDEN, ARPS, SLATE
                         MEAGHER & FLOM LLP
                        500 Boylston Street
                        Boston, Massachusetts 02116
                        (617) 573-4800

                        *Counsel for Defendants*
                        *Liberty Mutual Group Inc. and*
                        *the 401(k) Plan Administrative*
Dated: November 7, 2023         *Committee*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT.............................................................................................................................2

    A.    The Testimony Plaintiffs Seek With Respect To Topic 1 Is
Cumulative, Duplicative, And Outside Of Liberty Mutual's Knowledge ...............4

        1.    Additional Testimony About Subpart 4 Is Not Warranted ..........................5

        2.    Testimony Concerning Subparts 3, 5, And 6 Is Not Warranted ..................6

    B.    Topics 2-4 Of Plaintiffs' Rule 30(b)(6) Notice Would Require A
Renewed Document Collection And Review After The End Of Discovery .........10

    C.    Topics 7 And 9 Of Plaintiffs' Rule 30(b)(6)
Notice Are No More Than A Fishing Expedition...................................................12

REQUEST FOR ORAL ARGUMENT ........................................................................................15

# **TABLE OF AUTHORITIES**

*Corker v. Costco Wholesale Corp.*,
 No. C19-0290RSL, 2022 WL 2391770 (W.D. Wash. July 1, 2022) .................................12

*Dongguk University v. Yale University*,
 270 F.R.D. 70 (D. Conn. 2010)..................................................................................3, 8

*E.E.O.C. v. American International Group, Inc.*,
 No. 93 Civ. 6390 (PKL) RLE, 1994 WL 376052 (S.D.N.Y. July 18, 1994).......................8

*Greenberg v. PATHS Program Holding, LLC (MA)*,
 No. 3:19-CV-30032-MGM, 2023 WL 3868318 (D. Mass. June 7, 2023) .........................7

*Honaker v. Walmart, Inc.*,
 No. 5:21-CV-325-ACC-PRL, 2022 WL 17608749 (M.D. Fla. Dec. 13, 2022) ..................9

*Izzo v. Wal-Mart Stores, Inc.*,
 No. 2:15-cv-01142-JAD-NJK, 2016 WL 409694 (D. Nev. Feb. 2, 2016) ........................12

*Kindle v. Dejana*,
 No. 14-CV-6784 SJF ARL, 2015 WL 5117797 (E.D.N.Y. Aug. 27, 2015)................14, 15

*MC Asset Recovery, LLC v. Southern Co.*,
 No. 1:06-cv-0417-BBM, 2008 WL 11334118 (N.D. Ga. Jan. 3, 2008) ..............................9

*Milazzo v. Sentry Insurance*,
 856 F.2d 321 (1st Cir. 1988)..........................................................................................15

*True Health Chiropractic Inc v. McKesson Corp.*,
 No. 13-CV-02219-HSG (DMR), 2015 WL 3409721 (N.D. Cal. May 27, 2015)..............13

*Trustees of Boston University v. Everlight Electronics Co.*,
 Nos. 12-CV-11935-PBS et seq., 2014 WL 5786492 (D. Mass. Sept. 24, 2014).............3, 7

## **STATUTES**

Fed. R. Civ. P. 26(b)(1)...........................................................................................3, 10, 12, 13

Fed. R. Civ. P. 26(b)(2)(C) ..............................................................................................................3

Fed. R. Civ. P. 26(b)(2)(C)(i) .........................................................................................................7

Fed. R. Civ. P. 26(b)(2)(C)(ii) ........................................................................................................7

**PRELIMINARY STATEMENT**[1]

On October 23, 2023, Plaintiffs deposed the Rule 30(b)(6) corporate designee of Liberty Mutual Group Inc. ("Liberty Mutual") -- Christopher Felton -- for approximately five hours. (Hines Decl. ¶ 6.) Mr. Felton spent considerable time preparing for the deposition, including by meeting with counsel four times, reviewing more than 100 documents, and speaking with at least four other Liberty Mutual employees. (Wolff Decl. Ex. 7 at 7:6-24; Hines Decl. ¶ 6.) Nevertheless, Plaintiffs claim that they are entitled to additional testimony as to six out of their nine deposition topics. The Court should deny Plaintiffs' motion to compel for multiple independent reasons.

*First*, the additional testimony that Plaintiffs seek concerning the "expense account" of the Liberty Mutual 401(k) Plan (the "Plan") either (1) has already been provided, (2) is cumulative and duplicative of produced documents, or (3) is outside of Liberty Mutual's knowledge. In particular, Plaintiffs seek testimony about each deposit, disbursement, investment gain, and interest gain in the expense account over a period of more than nine years. Liberty Mutual has already produced a complete accounting of the expense account from 2018 through the present (Hines Decl. ¶ 12) and has explained that it lacks knowledge about that topic for any period prior to 2018. There is no additional testimony available.

*Second*, Plaintiffs' request for testimony about requests for proposal ("RFPs"), requests for information ("RFIs"), benchmarking, and other analyses related to the Plan's

---

[1] Plaintiffs' Memorandum in Support of Plaintiffs' Motion To Compel Rule 30(b)(6) Testimony (ECF No. 84) is cited as "Pl. Mem. at __". The Declaration of Michael A. Wolff in support of Plaintiffs' Motion To Compel Rule 30(b)(6) Testimony (ECF No. 84-1) is referred to as the "Wolff Declaration" (cited as "Wolff Decl. ¶ __"). Citations in the form of "Hines Decl. ¶ __" are to the Declaration of Michael S. Hines In Support Of Defendants' Opposition To Plaintiffs' Motion To Compel Additional Rule 30(b)(6) Testimony And Defendants' Opposition To Plaintiffs' Motion To Amend Scheduling Order, filed contemporaneously herewith.

recordkeeping and managed account services and fees from time periods predating the Class Period[2] is unduly burdensome and disproportional to the needs of the case. With Plaintiffs' full knowledge, and with certain exceptions agreed to by the parties, Defendants have not collected or reviewed documents that predate April 2014 during the entire sixteen months that fact discovery has been pending. (Hines Decl. ¶¶ 5, 7.) Suddenly, mere weeks before the expiration of the Court's twice-extended fact discovery deadline, Plaintiffs demand that Liberty Mutual prepare a corporate designee to testify to analyses conducted years before the beginning of the Class Period. Contrary to Plaintiffs' assertions, preparation for such testimony would require a new document collection (to the extent that the documents have been retained) and review for an unbounded time period -- a burden that is grossly disproportionate at this late stage of fact discovery.

*Third*, Plaintiffs cannot demonstrate that their demand for testimony about every single dollar exchanged between Liberty Mutual or its subsidiaries on the one hand, and two enormous banking institutions and their affiliates on the other hand has any relevance to Plaintiffs' claims. Plaintiffs speculate that Liberty Mutual's business relationships with BB&T and Wells Fargo are a possible explanation for the Plan's inclusion of two investment options in the Plan lineup (Pl. Mem. at 11-12), but sixteen months of discovery has not resulted in a single shred of evidence to support that speculation. Plaintiffs' unfounded guess cannot justify the broad and untethered discovery that Plaintiffs seek.

## ARGUMENT

The Federal Rules of Civil Procedure limit the scope of discovery to matters that are "relevant" and "proportional to the needs of the case," including "the importance of the

---

[2] The Class Period runs from April 10, 2014 through the date of judgment. (ECF No. 72).

2

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  The Court must "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 30(b)(6) "allows an organization to designate an individual to 'testify on its behalf.'" *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, Nos. 12-CV-11935-PBS et seq., 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014).  "Accordingly, Rule 30(b)(6) imposes burdens on both the discovering party and the designating party," including by requiring the party seeking discovery to "describe 'with reasonable particularity the matters for examination.'" *Id.*  "If the noticing party does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an impossible task" and "compliant designation is not feasible." *Id.*  In addition, where a Rule 30(b)(6) "notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (observing that "[c]ourts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods").

3

Against this backdrop, and contrary to Plaintiffs' assertions, the testimony of Liberty Mutual's corporate designee more than satisfied the requirements of Rule 30(b)(6), and Plaintiffs' motion should be denied.

**A.     The Testimony Plaintiffs Seek With Respect To Topic 1 Is Cumulative, Duplicative, And Outside Of Liberty Mutual's Knowledge**

Topic 1 seeks testimony about the Plan's process for collecting and paying administrative expenses, including:

1. "Describe the process by which Plan administrative fees were deducted from Plan investment options";

2. "Describe . . . the Plan account into which those fees were deposited";

3. "Describe . . . all deposits into (including interest or investment gains) and disbursements out of that account from April 2014 to present";

4. "Describe . . . how those disbursements were authorized on behalf of the Plan";

5. "Describe . . . the monthly balance of that account from April 2014 to present"; and

6. "Identify all documents that describe transactions into and out of that account and the monthly balance of that account."

(*See* Wolff Decl. Ex. 6 at 2-3.)  Liberty Mutual agreed to provide testimony about subparts 1, 2, and 4.  Notably, Plaintiffs do not dispute that Liberty Mutual's designee provided sufficient testimony about subparts 1 and 2.  Plaintiffs now seek to compel further testimony about subparts 3, 4, 5, and 6.

4

1. **Additional Testimony About Subpart 4 Is Not Warranted**

Plaintiffs assert that Mr. Felton did not provide adequate testimony about subpart 4 -- how "disbursements were authorized on behalf of the Plan." (Pl. Mem. at 8.) That is simply not true. Mr. Felton testified multiple times that disbursements on behalf of the Plan were authorized by members of Liberty Mutual's benefits team:

> [Q] Who instructed Northern Trust to make disbursements from the account?
> [ . . . ]
> THE WITNESS: The benefits team.
> BY MR. WOLFF:
> Q Who specifically? [I]ndividuals? [N]ames of individuals? Benefits team is a vague and amorphous concept.
> A The senior leadership.
> MR. HINES: Object to the form.
> BY MR. WOLFF:
> Q Who is the senior leadership during the time that Northern Trust held the expense account?
> A I believe at that point it was Charlie.

(Wolff Decl. Ex. 7 at 46:19 – 47:7.)

> Q Who was authorized to instruct Fidelity Management Trust Company to make disbursements from the expense account?
> MR. HINES: Object to the form.
> THE WITNESS: Senior leaders in benefits.
> BY MR. WOLFF:
> Q Who were those individuals?
> A I believe it was Charlie and Tom at the time.

(*Id.* at 47:21 – 48:4.)

> Q Who is the authorized to instruct Fidelity to direct Fidelity to make disbursements from the expense account?
> MR. HINES: Object to the form.
> THE WITNESS: The senior leaders in benefits.
> BY MR. WOLFF:
> Q Yeah. What are their names?
> A Charlie is among them.

(*Id.* at 48:16-24.) Mr. Felton's testimony that senior leaders from Liberty Mutual's benefits team, including Charles Claudio, authorized disbursements on behalf of the Plan is a complete

5

answer to the Topic that Plaintiffs noticed. There is no additional testimony that Liberty Mutual can provide about the Topic.

### 2. Testimony Concerning Subparts 3, 5, And 6 Is Not Warranted

Plaintiffs seek to compel a witness to testify about subparts 3, 5, and 6 of Topic 1, *i.e.*, "all deposits into (including interest or investment gains) and disbursements out of" the Plan's expense account, "the monthly balance of that account," and the identity of all related documents from April 2014 to present. (Pl. Mem. at 5-6, 9.) Yet Plaintiffs acknowledge that Liberty Mutual has produced documents, to the extent that they are available, that describe the transactions into and out of the Plan's expense account. (*Id.* at 6, 8.) Even so, Plaintiffs seek a designee to testify orally about each deposit, disbursement, investment gain, and interest gain in the expense account over a period of more than nine years. Such testimony is not only cumulative and duplicative of produced documents but is also outside of Liberty Mutual's knowledge for at least the period between 2014 and 2018. The Court should deny Plaintiffs' request.

*First*, Plaintiffs acknowledge that for the period from 2018 through the present, Defendants have produced a complete accounting of the Plan's expense account, including deposits in, disbursements out, and interest and investment gains in the account. (Pl. Mem. at 8-9.)[3] Contrary to Plaintiffs' protest that Defendants did not produce those documents sooner, Defendants produced them as soon as they were available. (Hines Decl. ¶ 12.) As Plaintiffs know, the Plan's expense account, and any documents pertaining to it, are in the possession of the Plan's recordkeeper and trustee, Fidelity. (*Id.*) When Liberty Mutual received Plaintiffs'

---

[3] Plaintiffs object that the accounting commences in October 2018 instead of July 2018 (Pl. Mem. at 8-9), but the account was not funded until October 2018. (Hines Decl. ¶ 12.) Thus, there are no additional statements that Defendants can produce.

6

Rule 30(b)(6) request for an accounting of the Plan's expense account, Liberty Mutual began working with Fidelity to determine whether such an accounting could be generated.[4] (*Id.*) Defendants produced the accounting documents upon receipt from Fidelity. (*Id.*) Moreover, Plaintiffs served Fidelity with a document subpoena more than eight months ago. (*Id.*) Plaintiffs could have, at any time before the Rule 30(b)(6) deposition of Liberty Mutual, conferred with Fidelity to receive the same documents. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii) (requiring the Court to limit discovery when the party seeking it "has had ample opportunity to obtain the information by discovery in the action").

Although Plaintiffs assert that they were "denied . . . the opportunity to examine Liberty Mutual's designee about these documents," (Pl. Mem. at 9), the produced documents provide the totality of Liberty Mutual's testimony about deposits into, disbursements out of, and interest and investment gains in the expense account. Requiring Liberty Mutual to designate a deponent to memorize those accounting statements and orally testify about them is unreasonable, cumulative, and duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (stating that the Court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). *See also Trs. of Bos. Univ.*, 2014 WL 5786492, at *4 (declining to compel defendant to designate a Rule 30(b)(6) witness to testify

---

[4] Plaintiffs also assert that production of the accounting documents "near the end of the fact discovery period (Dkt. No. 75) deprived Plaintiffs of the opportunity to conduct any discovery about the documents." (Pl. Mem. at 9.) Plaintiffs ignore that the accounting documents produced by Defendants did not exist during document production. (Hines Decl. ¶ 12.) Rather, the documents were generated by Fidelity to accommodate Plaintiffs' Rule 30(b)(6) topic. (*Id.*) Defendants had no duty to produce those documents any earlier than they did. *See Greenberg v. PATHS Program Holding, LLC (MA)*, No. 3:19-CV-30032-MGM, 2023 WL 3868318, at *3 (D. Mass. June 7, 2023) ("It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials.").

7

about "the costs, expenses on an itemized basis, gross profit margin, operating profit margin, incremental profit margin, and revenues" for certain products over eight years, holding that "[i]t is not reasonable to expect one or more witnesses to remember and testify about every one of these facts"); *E.E.O.C. v. Am. Int'l Grp., Inc.*, No. 93 Civ. 6390 (PKL) RLE, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994) (declining to compel additional Rule 30(b)(6) testimony for questions about an investigative file that the designee could not answer because "[i]t is not reasonable to expect any individual to remember every fact in an EEOC investigative file. . . . the defendants do not have a legitimate need to inquire into facts contained in the file"); *Dongguk Univ.*, 270 F.R.D. at 75-76, 78 (striking Rule 30(b)(6) topics as unreasonably cumulative and duplicative of prior discovery when produced documents contained requested information). Liberty Mutual's production of accounting documents for the Plan's expense account between 2018 and the present resolves the need for Rule 30(b)(6) testimony about the deposits into, disbursements out of, and interest and investment gains in the Plan's expense account for that period.

*Second*, for the period from April 2014 until 2018, Plaintiffs concede that Defendants have already conveyed they "are not aware of any documents in their possession that describe the transactions into and out of the account that held plan administrative fees." (Pl. Mem. at 6.) Plaintiffs know that the Plan changed service providers in 2018, and that Defendants are not in possession of complete Plan expense accounting records from before that transition. (Hines Decl. ¶ 11.) Plaintiffs also know who the Plan's trustee was during that period and could have subpoenaed the trustee for existing records at any time during the last sixteen months of discovery. Plaintiffs also served the Plan's former recordkeeper with a document subpoena in February 2023 and could have conferred with the recordkeeper before the Rule

8

30(b)(6) deposition of Liberty Mutual to determine whether it was in possession of any relevant documents.  (*Id.*)  Plaintiffs took none of those actions.

As Plaintiffs acknowledge, Defendants produced three spreadsheets, located during Defendants' email review, which appear to contain some information about plan expense disbursements between April 2014 and July 2018.  (Pl. Mem. at 6; Hines Decl. ¶ 11.)  These documents are not, to Defendants' knowledge, a complete accounting of the Plan's expense account.  (Hines Decl. ¶ 11.)  Plaintiffs complain that Liberty Mutual's Rule 30(b)(6) designee could not answer certain questions about the information contained in the spreadsheets, including the monthly balance of the Plan's expense account or the investment gains of the account.  (Pl. Mem. at 6-7.)  The spreadsheets were not created by anyone within Liberty Mutual (Hines Decl. ¶ 11), and it is therefore entirely reasonable that Liberty Mutual's designee would be unable to answer questions about the information contained in the spreadsheets.  *See, e.g.*, *MC Asset Recovery, LLC v. Southern Co.*, No. 1:06-cv-0417-BBM, 2008 WL 11334118, at *2 (N.D. Ga. Jan. 3, 2008) (declining to compel further Rule 30(b)(6) testimony because designee reasonably did not know information in the possession of another entity, holding that "it is entirely possible that some of the questions . . . posed to [the designee] were in fact not within [the entity's] knowledge or reasonably available to it"); *Honaker v. Walmart, Inc.*, No. 5:21-CV-325-ACC-PRL, 2022 WL 17608749, at *1 (M.D. Fla. Dec. 13, 2022) (holding that the obligation to prepare a witness pursuant to Rule 30(b)(6) "does not mean, however, that the corporate witness can never answer that the corporation lacks knowledge of a certain fact").  The testimony Plaintiffs seek for the period between 2014 and 2018 is simply outside of Liberty Mutual's knowledge.  No additional testimony can be provided.

## B.   Topics 2-4 Of Plaintiffs' Rule 30(b)(6) Notice Would Require A Renewed Document Collection And Review After The End Of Discovery

Topics 2-4 seek testimony about RFPs, RFIs, benchmarking, and other analyses related to the Plan's recordkeeping and managed account services and fees from time periods prior to 2014 -- nearly a decade ago. (*See* Wolff Decl. Ex. 6 at 3.) In fact, Topic 2 seeks information about RFPs from an entirely unbounded period prior to 2014. (*Id.*) Liberty Mutual agreed to provide -- and did provide -- testimony on Topics 2-4 for the period within the statute of limitations (April 2014 to the present). (Pl. Mem. at 9.) Requiring Liberty Mutual to investigate time periods prior to 2014 at this late stage of discovery -- long after the scope of document review and collection was negotiated between the parties -- is unduly burdensome and not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs assert that "[i]t would not have been a significant burden" for Liberty Mutual to investigate and provide testimony about RFPs, RFIs, and other analyses during time periods prior to 2014. (Pl. Mem. at 10-11.) Not so. As Liberty Mutual explained to Plaintiffs (*see* Wolff Decl. Ex. 5), providing testimony in response to Topics 2-4 outside the Class Period would require a massive undertaking on the part of Liberty Mutual. Discovery in this case has been pending for more than sixteen months. (Hines Decl. ¶ 5.) Plaintiffs served Requests for Production in July 2022, and, in August 2022, Defendants stated that they would limit their review and production of documents to the period between April 2014 and the present. (*Id.* at ¶ 7.) In the subsequent months, the parties negotiated the temporal scope of discovery and Defendants agreed to search for and produce a limited set of documents that pre-dated April 2014, including certain fiduciary committee meetings and materials. (*Id.*) In the twelve months that followed, and pursuant to that agreement, Defendants engaged in an extensive document collection and review involving multiple vendors and produced over 14,000 documents. (*Id.*)

10

With Plaintiffs' full knowledge, Defendants largely have not collected or reviewed documents from the period before April 2014. (*Id.*) Since October 2022, Plaintiffs never once objected to that temporal limitation. (*Id.*)

Nevertheless, with mere weeks remaining before the expiration of the Court's twice-extended discovery deadline, Plaintiffs suddenly insist that Liberty Mutual provide testimony about RFPs, RFIs and other analyses related to the Plan's recordkeeping and managed account services before April 2014. In order to prepare for such testimony, Liberty Mutual would have to search for, collect, and review potentially thousands of documents from more than a decade ago. Plaintiffs' assertion that Liberty Mutual would merely have to "read the minutes of the fiduciary committee" from before April 2014 is a red herring. (*See* Pl. Mem. at 10.) Defendants have produced to Plaintiffs all of the minutes of the Plan's fiduciary committee *dating back to December 2008*. (Hines Decl. ¶ 8.) Plaintiffs know that those minutes do not reference RFPs, RFIs, or other analyses related to the Plan's recordkeeping and managed account fees prior to 2014. (*Id.*)[5] Reviewing those minutes is therefore not relevant to -- and certainly not sufficient to -- respond to Plaintiffs' inquiries in Topics 2-4. Similarly, Plaintiffs know that "just ask[ing] the people on [Liberty Mutual's] benefits team" is just as insufficient. (*See* Pl. Mem. at 10.) Plaintiffs have deposed multiple individuals on Liberty Mutual's benefits team and, unsurprisingly, none of them were able to answer Plaintiffs' questions related to RFPs,

---

[5] Plaintiffs' aside that Liberty Mutual's Rule 30(b)(6) designee "had no trouble testifying about events in 2012, even 2009, when it suited Liberty Mutual's interest" is misleading. (*See* Pl. Mem. at 10.) Mr. Felton testified only about information gleaned from the fiduciary committee minutes. (*See* Wolff Decl. Ex. 7 at 77:19 – 79:1.) Those minutes do not contain analogous information about the Plan's RFPs, RFIs, or other analyses related to recordkeeping and managed account fees. (Hines Decl. ¶ 8.)

RFIs, and other analyses of the Plan's recordkeeping and managed account fees that may have occurred more than a decade ago.  (Hines Decl. ¶ 9.)

Requiring Liberty Mutual to conduct a new search for information from more than ten years ago at this late stage of discovery is not "proportional to the needs of the case," and the "burden" and "expense" of satisfying that demand far "outweigh[] its likely benefit."  *See* Fed. R. Civ. P. 26(b)(1).  *See also Izzo v. Wal-Mart Stores, Inc.*, No. 2:15-cv-01142-JAD-NJK, 2016 WL 409694, at *4 (D. Nev. Feb. 2, 2016) (denying motion to compel Rule 30(b)(6) testimony in light of burden on defendants to conduct extensive new document review); *Corker v. Costco Wholesale Corp.*, No. C19-0290RSL, 2022 WL 2391770, at *1 (W.D. Wash. July 1, 2022) (denying motion to compel even where discovery was relevant and proportional because "a dramatic expansion of the temporal scope of the case at the very end of fact discovery would impose an undue burden").  The Court should decline Plaintiffs' invitation to entirely upend discovery at the eleventh hour.

C.  **Topics 7 And 9 Of Plaintiffs' Rule 30(b)(6) Notice Are No More Than A Fishing Expedition**

Topics 7 and 9 seek testimony about the (1) services provided by Liberty Mutual or its subsidiaries to Wells Fargo & Company or its affiliates (collectively, "Wells Fargo") and vice versa, (2) services provided by Liberty Mutual or its subsidiaries to Sterling Capital Management LLC, BB&T Asset Management LLC, BB&T Securities, or their affiliates (collectively, "BB&T") and vice versa and (3) the amounts paid each year for such services.  (*See* Wolff Decl. Ex. 6 at 4.)  Plaintiffs do not dispute that Liberty Mutual agreed to provide and did provide testimony about the services supplied by Liberty Mutual to Wells Fargo and BB&T, and vice versa.  Liberty Mutual's designee also testified about the relative position of the Wells Fargo and BB&T relationships compared to Liberty Mutual's relationships with other entities.

12

(*See* Wolff Decl. Ex. 7 at 86:17-20, 87:1-12, 88:19-89:15, 131:21-132:6.)  Plaintiffs insist, however, that Liberty Mutual must also testify about the amounts paid each year for such service since 2014.  (Pl. Mem. at 11-12.)  The Court should not permit Plaintiffs to engage in such a burdensome fishing expedition.

Plaintiffs seek information about every dollar exchanged between Liberty Mutual -- a large global insurance company -- and BB&T and Wells Fargo -- two of the largest banks in the United States, over a period of nearly ten years.  Although Plaintiffs conclusorily assert that "Liberty Mutual certainly knows how much it was paid from Wells Fargo and how much it paid Wells Fargo" (Pl. Mem. at 12), the reality is much more complicated.  As Mr. Felton testified, "there is no centralized relationship manager" for Wells Fargo and BB&T, and the business units within Liberty Mutual that had relationships with BB&T and Wells Fargo "varied over time."  (Wolff Decl. Ex. 7 at 86:12-13, 87:5-6.)  The burden of locating and producing information related to every dollar spent and received by Liberty Mutual or any one of its multiple subsidiaries in connection with services received from or provided to Wells Fargo, BB&T, or any of their affiliates is enormous (Hines Decl. ¶ 11) and substantially "outweighs [the] likely benefit" of such discovery.  *See* Fed. R. Civ. P. 26(b)(1); *see also True Health Chiropractic Inc v. McKesson Corp.*, No. 13-CV-02219-HSG (DMR), 2015 WL 3409721, at *3-4 (N.D. Cal. May 27, 2015) (denying motion to compel discovery from "a large entity with many independently operating subdivisions, including some that are separate legal entities" and holding that "requiring [the d]efendants to search each of the business units of [the entity] would be burdensome" and would "outweigh[] the likely benefit of the proposed discovery").

Plaintiffs' only justification for their burdensome discovery requests with respect to BB&T and Wells Fargo is that "[p]romoting a lucrative business relationship with Wells

13

Fargo [or BB&T] *would be* an explanation" for why the Plan included investment vehicles from those institutions in its investment lineup. (Pl. Mem. at 11 (emphasis added).) Plaintiffs, however, have adduced no evidence during sixteen months of discovery to support that speculation even though Defendants agreed to search for and produce any documents about Wells Fargo and BB&T that concerned the Plan. (Hines Decl. ¶ 10.) Plaintiffs' counsel did not even ask Liberty Mutual's Rule 30(b)(6) designee whether inclusion of the at-issue investment vehicles had any connection to Liberty Mutual's business relationships with BB&T and Wells Fargo. (*See* Wolff Dec. Ex. 7.)

In any event, Plaintiffs' allegations about commonplace business relationships do not justify Plaintiffs' extensive discovery requests. For example, in *Kindle v. Dejana*, former participants of an employee stock ownership plan sued their employers after the plan's stock was sold for an allegedly below-market-value price. No. 14-CV-6784 SJF ARL, 2015 WL 5117797, at *1 (E.D.N.Y. Aug. 27, 2015). The plaintiffs alleged that the purportedly independent trustees retained for the sale transaction were not in fact independent due to their close relationship with the attorney who negotiated the sale on behalf of the defendants. *Id.* Like here, the plaintiffs in *Kindle* asserted that the "close relationship" created a conflict of interest and a resulting breach of the ERISA fiduciary duty of loyalty to the plan. *Id.* The *Kindle* plaintiffs moved to compel broad discovery about the relationship between the trustees and the attorney, whether or not that discovery implicated the at-issue sale transaction. *Id.* The court denied the motion to compel, holding that the plaintiffs "ha[d] not demonstrated that the substance of these unrelated transactions, rather than the fact that [the trustee and the attorney] were both involved, is 'relevant to any party's claim or defense' or 'reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* at *2 (quoting Fed R. Civ. P. 26(b)). The court concluded that the

14

plaintiffs had "not made 'a prima facie showing that the discovery sought is more than merely a fishing expedition.'"  *Id.* (citation omitted).  *See also Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) (affirming denial of motion to compel where the plaintiff "failed to allege facts adequate to justify her discovery request").  As in *Kindle*, Plaintiffs here have made no showing that the dollars exchanged between Liberty Mutual, Wells Fargo, and BB&T -- which are unconnected to the Plan -- have any relevance to Plaintiffs' allegations of disloyalty.  Accordingly, Plaintiffs' motion to compel additional testimony about Topics 7 and 9 should be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully request oral argument on Plaintiffs' Motion To Compel Rule 30(b)(6) Testimony.  Plaintiffs' motion seeks an expansion of the scope of discovery that contravenes the parties' original agreement on multiple fronts, and the significance and complexity of the issues at stake merit oral argument.

Dated:  November 7, 2023
       Boston, Massachusetts

Respectfully submitted,

/s/ Michael S. Hines
James R. Carroll (BBO # 554426)
Michael S. Hines (BBO # 653943)
Mary E. Grinman (BBO # 694097)
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

*Counsel for Defendants*
*Liberty Mutual Group Inc.,*
*and the 401(k) Plan Administrative Committee*

15