UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YUSUF AHMED, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL GROUP, et al.,<br><br>　　　　Defendants. | No. 3:20-cv-30056-MGM<br><br>Leave to file granted on Nov. 17, 2023<br>Doc. 92 |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL RULE 30(b)(6) TESTIMONY**

Liberty Mutual does not provide any basis for excusing its failure to comply with Rule 30(b)(6) or to deny Plaintiffs' motion in any respect.

**Item 1.**

Liberty Mutual entirely ignores its duty to obtain the information needed to address the matters for examination in Plaintiffs' Rule 30(b)(6) notice and to identify and prepare as many designees as were necessary to answer Plaintiffs' questions fully, completely, and unevasively. The nature and extent of this duty is clearly laid out in this Court's decision in *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33 (D. Mass. 2001). Yet, Liberty Mutual does not even address, much less distinguish, *Calzaturficio*. Liberty Mutual also does not show that it undertook the required effort to obtain the information required to properly respond to the Rule 30(b)(6) notice.

Liberty Mutual had the obligation to review not only all of the documents produced in this case but also all of the documents that were practically available to Liberty Mutual (even if not in its direct control) to provide the information requested in Plaintiffs' Rule 30(b)(6) notice. *Calzaturficio*, 201 F.R.D. at 36–38. "Even if the documents are voluminous and the review of

1

those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Id.* (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)).

That obligation required at least reviewing all of the prior fact witness testimony and deposition exhibits. *Id.* at 37. Liberty Mutual does not even claim that it did so. Liberty Mutual states that its designee "reviewed more than 100 documents." Dkt. No. 89 at 2 (Hines Decl. ¶6).[1] That is a declaration not from the designee (Christopher Felton), but instead from Liberty Mutual's trial counsel. Mr. Felton testified he examined only the documents that were provided to him by trial counsel. Exhibit 7 at 7:8–9, 7:25–8:6, 8:20–23  (Dkt. No. 84-8 (impounded, see Dkt. No. 83)). Liberty Mutual does not indicate what those 100 documents were or how they were selected. Liberty Mutual thus has failed to demonstrate that it conducted a reasonable investigation to find information responsive to Plaintiffs' Rule 30(b)(6) notice. Liberty Mutual had an obligation to review *all available documents*, not just 100 hand-selected by trial counsel, in order to provide the information requested in the Rule 30(b)(6) notice.

Liberty Mutual contends that it was not obligated to obtain and review documents from sources other than its own files. Specifically, Liberty Mutual contends that it was not obligated to obtain information from the Plan trustees. Dkt. No. 87 at 9 ("MIO"), MIO at 6. That also is wrong, as *Calzaturficio* explains and which Liberty Mutual fails to address.

Liberty Mutual had to obtain documents and information from all other parties from whom it had a legal right, authority, or even "practical ability" to obtain that information. *Calzaturficio*, 201 F.R.D. at 38–39 (quoting, among others, *Prokosch*, 193 F.R.D. at 636, and compelling

---

[1] Mr. Hines makes a number of statements of fact without providing any basis for his personal knowledge of those facts or Liberty Mutual's efforts to ascertain the facts. *See* Dkt. No. 89 at 4–5, Hines Decl. ¶¶11–12; *cf.* Fed. R. Evid. 602.

deponent to obtain information from its accountant); *id.* at 39 ("such documents would include the tax-related documents because those documents, even if they were in the possession of Fabiano's accountant, were still in Fabiano's control because Fabiano had the legal right and the practical ability to obtain the documents from the accountant."). Liberty Mutual does not even contend, much less prove, that it had no practical ability to get this information from the Plan trustees. *Linhares v. Woods Hole*, 20-12035-IT, 2022 WL 17736800, 2022 U.S. Dist. LEXIS 226623, at *13–14 (D. Mass. Dec. 16, 2022) (nothing in the record showing no practical ability to get records from customer).

Liberty Mutual had much more than just the practical ability to get this information from the Plan trustees. Liberty Mutual had an affirmative legal duty to know this information. ERISA imposes on Liberty Mutual the duty to provide to the U.S. Department of Labor (and Plan participants, on request) an annual report accounting for all income and disbursements in the Plan. 29 U.S.C. §§1023(a), 1024(a). It could not provide that accounting if it did not know about the transactions in one of the Plan's accounts—specifically, the expense account at issue in Item 1 of the Rule 30(b)(6) notice. The trustees that Liberty Mutual falsely contends controlled the expense account were not independent fiduciaries over whom Liberty Mutual had no control. Instead, they were *directed* trustees, directed by *Liberty Mutual* (through the committee of Liberty Mutual executives), meaning that *Liberty Mutual* was the fiduciary responsible for the actions of these trustees. 29 U.S.C. §1103(a).

Plan documents produced by Defendants confirm that Liberty Mutual controlled the directed trustees and Plan expenses. The 2018 Trust Agreement with Fidelity Management Trust Company states, "All services are of a directed nature to be performed within the framework of Sponsor's [Liberty Mutual] written directions regarding the Plan's provisions[.]" Declaration of

Michael A. Wolff filed herewith, ¶2, Exhibit 16 at 4–5 (§6.2). The Trust Agreement with the previous trustee (The Northern Trust Company) specifies that the trustee makes disbursement from the Plan (such as payments from the expense account for administrative expenses) only "pursuant to the direction of the Committee[.]" Wolff Decl. ¶3, Exhibit 11 at 3 (Article Two), 12 (§9.7). The Northern Trust agreement specifically requires the trustee to provide Liberty Mutual an annual statement of account for the Plan funds, which should identify all transactions regarding the expense account. *Id.* at 10 Art 7 ("the Trustee shall render to the Committee a statement of account for the Trust Fund"). Liberty Mutual informed participants that the Plan trustees "report[] all transactions to the TIP Administrative Committee" (the Plan committee comprising Liberty Mutual executives) and "pays all disbursements under the Plan upon authorization from the TIP Administrative Committee." Wolff Decl. ¶4, Exhibit 12 at 34. The Plan Document (29 U.S.C. §1102(a)) specifies that Liberty Mutual, through its committee of executives, had a duty to "receive, review and keep on file (as it deems convenient or proper) reports of the financial condition, and of the receipts and disbursements, of the Trust from the Trustee." Wolff Decl. ¶5, Exhibit 13 at 6 (§13.5(e)).

    Liberty Mutual therefore either has, or has access to and the practical ability to obtain, all of the information necessary to answer Plaintiffs' questions about Item 1 of the Rule 30(b)(6) notice. It just did not conduct an adequate investigation to find that information and provide it to Plaintiffs through properly prepared designees under Rule 30(b)(6).[2]

    Liberty Mutual's claim that it does *not* have this information, if true, would be a damning

---

[2] Contrary to Liberty Mutual's contention, Plaintiffs do not concede that Liberty Mutual satisfied its Rule 30(b)(6) duty as to what it describes as "subparts 1 and 2." MIO at 4.

admission.[3] The duty to account for all assets entrusted to a fiduciary is a fundamental fiduciary duty. *Pioneer Liquidating Corp. v. United States Trustee*, 264 F.3d 803, 808 (9th Cir. 2001) (quoting *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1462 (9th Cir. 1997)). Under the common law of trusts,[4] a trustee is "under a duty to the beneficiary to keep and render clear and accurate accounts with respect to the administration of the trust." Restatement (Second) of Trusts, § 172. "A trustee has a duty to maintain clear, complete, and accurate books and records regarding the trust property and the administration of the trust, and, at reasonable intervals on request, to provide beneficiaries with reports or accountings." Restatement (Third) of Trusts, §83. The trustee "has a duty to maintain books (or accounts) and records that show in detail the nature and amount of the trust property and the trustee's administration thereof." Restatement (Third) of Trusts, §83, cmt. a. The failure of the fiduciary to provide that accounting results in the fiduciary's liability for funds that it cannot account for. Restatement (Second) of Trusts, § 172, cmt. b.[5]

    Liberty Mutual's counsel may well not have realized the effect of admitting on behalf of Liberty Mutual (and the other defendants) that it does not know what happened to millions of dollars of fees deducted from Plan investment accounts over which it was fully responsible. That

---

[3] *See* Hines Decl. ¶11, Dkt. No. 89 at 4. Mr. Hines does not personally know this information, since he is not the Plan fiduciary. He also does not indicate what inquiry he or anyone else made to find this information that Liberty Mutual must possess or have access to. If Liberty Mutual wants to admit that it does not know what happened to the millions of dollars in administrative expenses that were deducted from Plan investments, then it should do so through the testimony of a Rule 30(b)(6) designee whose admission will bind Liberty Mutual in this case.

[4] In defining an ERISA fiduciary's duty, courts look to the common law of trusts. *Tibble v. Edison Int'l*, 575 U.S. 523, 528–29 (2015). In this application, the ERISA fiduciary—Liberty Mutual—is the equivalent of the "trustee" under the common law of trusts because it, not the directed trustee, is the fiduciary under ERISA. 29 U.S.C. §1103(a).

[5] The cases that Liberty Mutual cites do not concern fiduciaries or other parties who have access to information of third parties that they control.

likely will change before trial and counsel will then attempt to present evidence showing in fact what happened in the expense account. It is just such sandbagging that Rule 30(b)(6) is designed to prevent. *Calzaturficio*, 210 F.R.D. at 36 (quoting, *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C., 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C., 1996), among other cases).

In addition to not obtaining the documents necessary to testify about Item 1 of the Rule 30(b)(6) notice, Liberty Mutual does not even show that it attempted to obtain this information from other *individuals*. *Cf. Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (duty to inquire of past employees and examining other sources). Liberty Mutual contends that its designee "spoke with at least four other Liberty Mutual employees in preparation for his deposition." Hines Decl. ¶6, Dkt. No. 89 at 2; MIO at 1, Dkt. No. 87 at 4. Liberty Mutual should know exactly how many people Mr. Felton met with to prepare for his deposition and not resort to a hedging "at least." Liberty Mutual also does not explain how these individuals were selected to prepare Mr. Felton to respond to Plaintiffs' Rule 30(b)(6) notice. Mr. Felton testified that he spoke to *only* four Liberty Mutual employees and these individuals had nothing to do with Items 1 through 4 of the Rule 30(b)(6) notice and had information only as to Items 7 and 9. Exhibit 7 at 7:8–20.[6] In other words, Liberty Mutual's designee did not talk to *anyone* at Liberty Mutual or the Plan's trustees to obtain the information sought in Item 1. That is not compliance with Liberty Mutual's duty under Rule 30(b)(6).

Liberty Mutual's contention that it produced documents putatively relating to the expense account at issue in Item 1 "as soon as they were available"—on October 27, four days after the Rule 30(b)(6) deposition—is disingenuous. MIO 6. These documents obviously were in Liberty

---

[6] None of those four individuals (Angelo Capotosto, Mark D'Amato, Matt Towne, John Mileski) are identified in Defendants' Rule 26(a)(2)(A)(ii) disclosure. Wolff Decl. ¶6, Exhibit 14.

Mutual's control, since Liberty Mutual belatedly produced them. They should have been produced with Liberty Mutual's other document production and long before the Rule 30(b)(6) deposition. Fed. R. Civ. P. 34(a)(1) (obligation to produce requested documents "in the responding party's possession, custody, or control"); *see* Dkt. No. 86 at 3 (listing requests for this information in Plaintiffs' July 2022 request for production of documents).

Liberty Mutual contends that Plaintiffs should have just taken the depositions of the Plan trustees to obtain information on Item 1 of the Rule 30(b)(6) notice. Liberty Mutual did not indicate in its Rule 26(a)(1)(A)(i) disclosure that the trustees were likely to have discoverable information about Plan fees and costs. Wolff Decl. Exhibit 14 at 2–10.[7] Instead, Defendants identified 22 Liberty Mutual executives with knowledge of "oversight of the Plan" and "fees and costs paid in connection with the Plan during some portion of the Relevant Time Period." *Id.* at 3–9. In fact, Mr. Felton was one of ten such executives identified as having information about Plan "fees and costs." *Id.* at 7. Plaintiffs, of course, cannot take the depositions of all 22 Liberty Mutual executives. L.R. 26.1(c). After having taken the depositions of individuals Plaintiffs thought most likely to know this information (unsuccessfully), they ultimately had to resort to a Rule 30(b)(6) deposition so that Liberty Mutual would designate the individual(s) who actually knew the answers to the questions Plaintiffs were asking.

Rule 30(b)(6) was specifically designed to prevent this game of hiding the ball. "The underlying purpose of Rule 30(b)(6) is to prevent 'bandying,' the practice in which people are deposed in turn but each disclaims knowledge of the facts that are clearly known to persons in the organization and thereby to the organization itself." *Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.*, 279 F.R.D. 59, 61 (D. Mass. 2011) (quoting *Tequila Centinela, S.A. de C.V. v.*

---

[7] Neither "Northern Trust" nor "Fidelity" appear anywhere in this disclosure.

*Bacardi & Co. Ltd.*, 242 F.R.D. 1, 5 (D.D.C. 2007)); *see also Chauvin v. UPS*, No. 23-392, 2023 U.S. Dist. LEXIS 109400, at *16–17, 2023 WL 4175100 (E.D. La. June 25, 20923) (Rule 30(b)(6) "alleviates the opposing party from having to play a frustrating game of blind man's bluff in naming the appropriate corporate officer to be deposed or from being bandied from pillar to post by deposition witnesses who disclaim personal knowledge on topics with others in the corporation are familiar.") (quotation marks and citation omitted).[8]

Liberty Mutual's contention that its designee fully answered what it describes as "subpart 4" of Item 1 is incorrect. MIO 5. Mr. Felton admitted he did not know the information included in what Liberty Mutual quotes and that it was just "my assumption." Exhibit 7 at 24:2–25:6. Those quotes also do not indicate how (or if) the Plan's fiduciaries authorized "Charlie" or "Tom" to direct the Plan trustees to make disbursements. Mr. Felton admitted he did not ask anyone on the "benefits team" about the Plan fees at issue in Item 1. Exhibit 7 at 25:5–27:9.

Liberty Mutual does not provide any justification for failing to provide a witness who was prepared to testify fully, completely, and unevasively about Item 1 and does not provide any basis for denying Plaintiffs' motion.

**Items 2–4.**

Liberty Mutual claims it would be a "massive undertaking" to determine whether and when it conducted a RFP, RFI, or other benchmarking of the Plan's recordkeeping and managed

---

[8] Liberty Mutual persists in this game by suggesting that Plaintiffs should have taken depositions of the Plan's recordkeepers, who also are under Liberty Mutual's control, without indicating how recordkeepers have more access to the trustees' information than Liberty Mutual has. Hines Decl. ¶¶11–12, Dkt. No. 89 at 4–5. Liberty Mutual further plays games by producing a spreadsheet "containing information about plan expense disbursements between April 2014 and July 2018" (which its Rule 30(b)(6) designee could not identify or explain) and simultaneously claiming the spreadsheet is "not, to Defendants' knowledge, a complete accounting of the Plan's expense account during that time period." Hines Decl. ¶11, Dkt. No. 89 at 4. Mr. Hines also does not have any personal knowledge for making this statement.

account expenses before 2016. MIO 10. It does not explain *why* that undertaking would be massive. Liberty Mutual simply could conduct whatever inquiry it deemed reasonable and then answer the questions posed in Items 2–4, such as "no RFP, RFI, or other benchmarking of the Plan's recordkeeping and managed account expenses was conducted before 2016." Although, it is true, as Liberty Mutual admits, that fiduciary committee minutes going back to 2008 do not evidence such benchmarking was done, that does not mean it did not happen, as defendants often testify that committee minutes are not verbatim transcripts of what occurred at committee meetings. A binding admission from Liberty Mutual, however, would be conclusive.

While Liberty Mutual objects to having to engage in another document production after having produced more than 14,000 documents for the post-April 2014 time period alone (MIO 10–11), Plaintiffs are not requesting such a production.[9]

Liberty Mutual does not provide any reason for failing even to search for the information requested in Items 2–4 or any basis for denying Plaintiffs' motion.

**Items 7 and 9.**

Liberty Mutual contends that obtaining and providing full information on the payments exchanged between Liberty Mutual and two of the Plan's investment managers would be an "enormous" burden. MIO 13. Liberty Mutual provides no evidence in support of that contention. Although it cites to paragraph 11 of its attorney's declaration, that paragraph does not even address these Items. Dkt. No. 89 at 4. Nothing in the Hines declaration addresses the supposed burden of providing this information. Since Liberty Mutual has failed to demonstrate any burden

---

[9] This alone distinguishes *Corker v. Costco Wholesale Corp.*, No. 19-290, 2022 WL 2391770, at *1 (W.D. Wash. July 1, 2022), which concerned a motion to compel production of documents. *Izzo v. Wal-Mart Stores, Inc.*, No. 15-1142, 2016 WL 409694, at *4 (D. Nev. Feb. 2, 2016), was a slip and fall case in which the plaintiff requested all prior claims and incidents of similar falls. The defendants there sought a protective order, unlike Liberty Mutual here.

from providing the information requested in Items 7 and 9, it has no basis for refusing to provide this information. *See Katz v. Liberty Power Corp., LLC*, No. 18-10506-ADB, 2020 WL 3492469, 2020 U.S. Dist. LEXIS 112969, *18 (D. Mass. June 26, 2020) (must show "affidavit or otherwise that [discovery] would be unduly burdensome.") (quoting *Cooper v. Charter Commc'ns, Inc.*, No. 12-10530, 2016 U.S. Dist. LEXIS 3651, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016)).

As noted above, Liberty Mutual has a duty to obtain this information from sources to which it has access. Indisputably, that includes its own affiliates and subsidiaries. *E.g.*, *Addamax Corp. v. Open Software Foundation, Inc.*, 148 F.R.D. 462, 468–69 (D. Mass. 1993) (Collings, M.J.); *LSI Corp. v. Vizio, Inc.*, No. 12-91068, 2012 WL 1926924, at *5 (D. Mass. May 24, 2012) (Collings, M.J.).

Because Liberty Mutual has not demonstrated any burden in obtaining and providing the information request in Items 7 and 9, the Court must compel Liberty Mutual to obtain that information and produce and prepare a Rule 30(b)(6) designee to provide Plaintiffs that information.

<table>
<tr><td>November 20, 2023</td><td>Respectfully submitted,<br>/s/      Michael A. Wolff<br>Jerome J. Schlichter (admitted *pro hac vice*)<br>Michael A. Wolff (admitted *pro hac vice*)<br>Joel D. Rohlf (*pro hac vice*)<br>SCHLICHTER BOGARD LLP<br>100 South Fourth Street, Suite 1200<br>St. Louis, MO, 63102<br>(314) 621-6115<br>(314) 621-5934 (fax)<br>jschlichter@uselaws.com<br>mwolff@uselaws.com<br>jrohlf@uselaws.com<br><br>*Lead Counsel for Plaintiffs*<br><br>Robert T. Naumes, BBO # 367660<br>Christopher Naumes, BBO # 671701<br>NAUMES LAW GROUP<br>2 Granite Ave, #425<br>Milton, Massachusetts 02186<br>617-227-8444<br>617-696-2437 (fax)<br>robert@naumeslaw.com<br>christopher@naumeslaw.com<br><br>*Local Counsel for Plaintiffs*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 20, 2023.

/s/      Michael A. Wolff