UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YUSUF AHMED, et al.,                      :

                Plaintiffs,        :        Civil Action
      v.                                                No. 20-30056-MGM
                              :

LIBERTY MUTUAL GROUP INC., et al.,        :

                Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

James R. Carroll
Michael S. Hines
Mary E. Grinman
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

*Counsel for Defendants*
*Liberty Mutual Group Inc. and*
*the 401(k) Plan Administrative Committee*

Dated:  August 5, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND .................................................................................................2

      A.     The Plan ......................................................................................................2

      B.     Plaintiffs' Allegations ...............................................................................4

      C.     The Challenged Funds ..............................................................................5

PROCEDURAL BACKGROUND.........................................................................................6

ARGUMENT .........................................................................................................................7

I.       ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE
        PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO ESTABLISH LOSS..............7

      A.     Plaintiffs' Only Evidence Of Loss Comes From Their
              Retained Experts, Who Are All Unreliable And Must Be Excluded......................8

      B.     The Absence Of Any Evidence Of Loss Warrants
              Granting Summary Judgment On All Of Plaintiffs' Claims.................................10

II.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
        ON PLAINTIFFS' DISLOYALTY CLAIMS (COUNTS II AND III)............................11

      A.     Plaintiffs Must Show That Defendants Retained The Challenged Funds
              For The Purpose Of Providing Benefits To Themselves Or Someone Else .........12

      B.     There Is No Evidence That Defendants Retained The Challenged
              Funds For The Purpose Of Furthering Liberty Mutual's Business Interests ........13

      C.     The Lack Of Evidence Of Disloyal Motives Calls For Granting
              Summary Judgment For Defendants On Plaintiffs' Disloyalty Allegations..........15

CONCLUSION.....................................................................................................................17

i

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*Brotherston v. Putnam Investments, LLC,*
  907 F.3d 17 (1st Cir. 2018) ....................................................................7, 12, 13

*Cunningham v. Cornell University,*
  86 F.4th 961 (2d Cir. 2023) ...............................................................8, 9, 10, 11

*Cunningham v. Cornell University,*
  No. 16-cv-6525 (PKC), 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017), *aff'd,* 86
  F.4th 961 (2d Cir. 2023) ....................................................................................12

*Ellis v. Fidelity Management Trustee Co.,*
  257 F. Supp. 3d 117 (D. Mass. 2017) .......................................................12, 16

*Ellis v. Fidelity Management Trustee Co.,*
  883 F.3d 1 (1st Cir. 2018).................................................................4, 7, 12, 14

*Falberg v. Goldman Sachs Group, Inc.,*
  No. 22-2689-cv, 2024 WL 619297 (2d Cir. Feb. 14, 2024) ..................12, 16, 17

*Falberg v. Goldman Sachs Group, Inc.,*
  2022 WL 4280634 (S.D.N.Y. Sept. 14, 2022), *aff'd,* 2024 WL 619297 (2d Cir.
  Feb. 14, 2024) .....................................................................................................12

*Ferguson v. Ruane Cunniff & Goldfarb Inc.,*
  No. 17-cv-6685 (ALC), 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)............................3

*Lalonde v. MassMutual Insurance Co.,*
  No. 22-30147-MGM, 2024 WL 1346027 (D. Mass. Mar. 29, 2024) ..................................3

*McCauley v. PNC Financial Services Group, Inc.,*
  No. 2:20-CV-01493-CCW, 2024 WL 3091754 (W.D. Pa. June 21, 2024)................10, 11

*McGovern ex rel. McGovern v. Brigham & Women's Hospital,*
  584 F. Supp. 2d 418 (D. Mass. 2008) ..................................................................7

*Medina-Munoz v. R.J. Reynolds Tobacco Co.,*
  896 F.2d 5 (1st Cir. 1990)....................................................................................7

*Moitoso v. FMR LLC,*
  451 F. Supp. 3d 189 (D. Mass. 2020) ................................................................7

*Smith v. CommonSpirit Health,*
  37 F. 4th 1160 (6th Cir. 2022) ............................................................................5

*Troudt v. Oracle Corp.*,
    No. 20-11006-NMG, 2019 WL 1006019 (D. Colo. Mar. 1, 2019) ......................15, 16, 17

*Turner v. Schneider Electric Holdings, Inc.*,
    No. CV 20-11006-NMG, 2023 WL 387592 (D. Mass. Jan. 24, 2023)............................11

**<u>STATUTES & RULES</u>**                                                                **<u>PAGE(S)</u>**

29 U.S.C. § 1104(a)(1)(A) ...........................................................................................7, 12

Federal Rule of Civil Procedure 56(a) ...........................................................................7

## PRELIMINARY STATEMENT

After more than four years of litigation, the factual record unequivocally establishes that Defendants were prudent and loyal stewards of the Liberty Mutual 401(k) Plan (the "Plan"). As such, Defendants are confident that they would prevail at any trial on the merits. But this case should not reach the trial phase: Defendants seek summary judgment on two narrow issues of law. *First*, Plaintiffs' claims should be dismissed in their entirety because Plaintiffs have not established that they suffered any losses with respect to the challenged conduct. *Second*, in the alternative, Defendants are entitled to summary judgment on Counts II and III insofar as those Counts allege a breach of the Employee Retirement Income Security Act of 1974 ("ERISA") duty of loyalty because, despite years of discovery, Plaintiffs have adduced no evidence of disloyal motive or purpose.

Defendant Liberty Mutual Group Inc. ("Liberty Mutual") offers its employees an opportunity to save for retirement through the Plan. Plaintiffs -- former and current employees of Liberty Mutual -- commenced this action in April 2020, alleging that Defendants breached their fiduciary duties of prudence and loyalty under ERISA by (1) allowing Plan participants to pay allegedly excessive fees to the Plan's recordkeeper and managed account provider and (2) retaining the Sterling Mid Cap Value Fund and the Wells Fargo US Government Money Market Fund (together, the "Challenged Funds") as investment options in the Plan. After years of litigation, including three discovery extensions, Plaintiffs' claims have amounted to nothing. Summary judgment is warranted for at least two independent reasons.

*First*, to prevail on their ERISA breach of fiduciary duty claims, Plaintiffs must establish that they have suffered a loss. Plaintiffs cannot do so. Plaintiffs' only evidence of loss comes in the form of three expert reports, authored by proffered experts Donald C. Stone, John T. Hare, and Edward S. O'Neal. As detailed in Defendants' motions to exclude Plaintiffs' experts,

filed contemporaneously herewith, none of Plaintiffs' experts proffer a reliable method to establish loss, and each expert's testimony must therefore be excluded. Resolution of Defendants' motions to exclude also resolves this motion: Plaintiffs' failure to introduce any admissible evidence of loss is fatal and requires dismissal of the Complaint in its entirety.

*Second*, at a minimum, Plaintiffs' disloyalty claims (Counts II and III) should be dismissed because there is no evidence that Defendants retained the Challenged Funds for the purpose of advancing their own business interests at the expense of Plan participants. Plaintiffs theorize that Defendants maintained the Challenged Funds in the Plan in order to advance Liberty Mutual's business relationships with Branch Banking and Trust ("BB&T") and Wells Fargo Company ("Wells Fargo"). After years of written discovery and many depositions, Plaintiffs' theory has found no evidentiary support. Plaintiffs must not be permitted to proceed to trial on their baseless conjecture.

## FACTUAL BACKGROUND

This factual background section provides contextual information for the Court's convenience.[1]

### A.    The Plan

Liberty Mutual is the eighth largest global property and casualty insurer as of 2023. (SMF ¶ 1.) Liberty Mutual sponsors the Plan. (*Id.* ¶ 2.) The Plan is a "defined contribution" 401(k) plan that allows all eligible Liberty Mutual employees to contribute savings

---

[1]    Defendants' Local Rule 56.1 Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried, filed herewith, is cited as "SMF ¶ __." Citations to "Hines Decl. ¶ __" are to the Declaration of Michael S. Hines In Support Of Defendants' Motions To Exclude and Motion For Summary Judgment, filed contemporaneously herewith.

to individual participant accounts.  (*Id.* ¶¶ 13-14.)  Throughout the Class Period,[2] the Plan has

offered participants a broad array of investment options with various investment strategies and

risk profiles, including actively managed and passively managed investment products,[3] as well as

a diverse mix of collective trusts, separately managed accounts, and mutual funds.[4]  (*Id.* ¶¶ 17-

18.)  Liberty Mutual matches 50% of an employee's contributions to the Plan up to 8% of their

eligible compensation.  (*Id.* ¶ 15.)  The Plan is participant-directed:  each participant allocates the

employee and employer contributions into investment options of their choice that are available in

the Plan.  (*Id.* ¶ 16.)  A committee of Liberty Mutual employees -- the Liberty Mutual Retirement

Committee (the "Retirement Committee") -- is a named fiduciary of the Plan.  (*Id.* ¶ 21.)  The

Retirement Committee's members include, among others, Liberty Mutual's (i) Chief Executive

Officer, (ii) Chief Legal Officer, (iii) Chief Financial Officer, and (iv) Chief Investment Officer.

(*Id.* ¶¶ 24-25.)  The Retirement Committee is responsible for administering the Plan.  (*Id.* ¶¶ 3-

5, 22-23.)  In particular, the Retirement Committee is responsible for (1) selecting and removing

investment options from the Plan's lineup and (2) monitoring fees paid to providers for the

---

[2]      The Class Period runs from April 10, 2014 through the date of judgment.  (ECF No. 72.)

[3]      Active management refers to an investment product where the investment manager "uses her judgment in buying and selling individual securities (*e.g.*, stocks, bonds, etc.) in an attempt to generate investment returns that surpass a benchmark index, net of fees."  (*See* ECF No. 1 ("Compl.") ¶ 85.)  On the other hand, in a passively managed fund -- often referred to as an index fund -- the "investment manager attempts to match the performance of a given benchmark index by holding a representative sample of securities in that index, such as the S&P 500."  (*Id.*)

[4]      Collective investment trusts are a "common kind of pooled investment product" that differ from mutual funds in "terms of their regulatory and transparency features." *Lalonde v. Mass. Mut. Ins. Co.*, No. 22-30147-MGM, 2024 WL 1346027, at *2, 9 (D. Mass. Mar. 29, 2024) (citation omitted).  Separately managed accounts are "alternative investment vehicle[s]" that similarly differ from mutual funds because they "are not subject to SEC regulations and disclosure rules."  *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685 (ALC), 2019 WL 4466714, at *10 (S.D.N.Y. Sept. 18, 2019).

services provided to the Plan.  (*Id.* ¶¶ 23, 26-28; *see id.* ¶¶ 31-33.)  Throughout the Class Period, the Plan also retained an independent investment advisor, Rocaton Investment Advisors ("Rocaton") to assist the Retirement Committee with monitoring the Plan's investment options, as well as the Plan's fees and expenses.  (*Id.* ¶¶ 29-30.)

        **B.**    <u>**Plaintiffs' Allegations**</u>

      *First*, Plaintiffs challenge the prudence of certain fees paid by Plan participants (1) to the Plan's recordkeeper, Hewitt Associates (n/k/a Alight Solutions) and (2) to the Plan's managed account providers, Financial Engines Advisors L.L.C. and Strategic Advisers, LLC. (Compl. ¶¶ 209-16; 232-38; *see* SMF ¶¶ 37-40.)  Plaintiffs also assert that the fees collected from participants by the Plan to pay for administrative costs were excessive.  (SMF ¶ 14; *see id.* ¶¶ 31-33.)

      *Second*, Plaintiffs challenge the inclusion of two of the Plan's former investment options:  the Sterling Mid Cap Value Fund and the Wells Fargo US Government Money Market Fund.  (Compl. ¶¶ 217-31.)  In particular, Plaintiffs assert that the Sterling Mid Cap Value Fund underperformed during the Class Period.  (*Id.* ¶ 221.)  Plaintiffs also allege that Defendants offered the Sterling Mid Cap Value Fund in the Plan "to advance Liberty Mutual's business interests rather than participants' interests in violation of ERISA."  (*Id.* ¶ 103.)  As for the Wells Fargo US Government Money Market Fund, Plaintiffs allege that Defendants imprudently retained it as the "sole capital preservation investment" in the Plan when they should have retained a stable value fund instead.[5]  (Compl. ¶ 144.)  Plaintiffs also allege that Defendants

---

[5]     A stable value fund is an investment option that "often utilizes 'wrap insurance,' a form of insurance providing that, subject to exclusions, when a stable value fund is depleted such that investors cannot all recover book value, the insurance provider will cover the difference."  *Ellis v. Fid. Mgmt. Tr. Co.* (*Ellis II*), 883 F.3d 1, 3 (1st Cir. 2018).

offered the Wells Fargo US Government Money Market Fund in the Plan "not based on an analysis of its merits but rather to drive significant revenue to Wells Fargo" and to protect Liberty Mutual's "lucrative business relationships with Wells Fargo." (*Id.* ¶¶ 109, 117.)

### C.    The Challenged Funds

The Sterling Mid Cap Value Fund was a separately managed account that was available to Plan participants from 2013 until 2018. (SMF ¶¶ 45, 55.) The Sterling Mid Cap Value Fund was initially a standalone investment option in the Plan, but from July 2015 to 2018, it was offered as part of the Small/Mid-Cap Active portfolio investment option. (*Id.* ¶¶ 45-55.) In 2018, the Sterling Mid Cap Value Fund was removed from the Plan. (*Id.* ¶¶ 50-55.)

The Sterling Mid Cap Value Fund was managed by Sterling Capital Management LLC, an affiliate of Truist Financial Corporation (f/k/a BB&T). (*Id.* ¶¶ 46, 74.) During the Class Period, affiliates of BB&T were parties to business agreements with affiliates of Defendants to sell Liberty Mutual insurance products. (*Id.* ¶¶ 74-81.) There is no evidence that those business relationships influenced the retention of the Sterling Mid Cap Value Fund in the Plan. As of 2014, BB&T was the eleventh largest bank in the United States. (*Id.* ¶ 74.)

The Wells Fargo US Government Money Market Fund was a mutual fund that was available to Plan participants from 2012 to 2021. (*Id.* ¶¶ 56, 58-63, 73.) The fund was a standalone option available to Plan participants and, in addition, it was one of the underlying funds that comprised the Plan's target date funds. (*Id.* ¶ 58.)[6] In other words, any participant in the Plan who held assets in the Plan's target date funds would also have held some assets in the

---

[6]    Target date funds are a fund of funds investment product wherein "managers change the allocation of the underlying investments that they hold over time" as an employee approaches retirement in order "to protect an employee's investment gains and spare her the unpredictability of market fluctuations as she approaches retirement." *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. 2022).

Wells Fargo US Government Money Market Fund.  On August 2, 2017, the Retirement

Committee approved a recommendation to eliminate the target date funds' allocation to the

Wells Fargo US Government Money Market Fund.  (*Id.* ¶¶ 64-66.)  Accordingly, between

November 2014 and May 2018, the percentage of the Plan's assets invested in the Wells Fargo

US Government Money Market Fund decreased from 7% to 3%.  (*Id.* ¶ 67.)  In 2021, the Wells

Fargo US Government Money Market Fund was removed from the Plan.  (*Id.* ¶¶ 68-73.)

      The Wells Fargo US Government Money Market Fund was managed by Wells

Fargo Funds Management, LLC.  (*Id.* ¶ 57.)  During the Class Period, affiliates of Wells Fargo

were parties to business agreements with affiliates of Defendants to sell Liberty Mutual

insurance products.  (*Id.* ¶¶ 83-85.)  Additionally, during the Class Period, Defendants and their

affiliates had banking and investment accounts with Wells Fargo affiliates and provided long-

term disability insurance for certain Wells Fargo employees.  (*Id.* ¶¶ 86-87.)  There is no

evidence that those business relationships influenced the retention of the Wells Fargo US

Government Money Market Fund in the Plan.  As of 2014, Wells Fargo was the third largest

bank in the United States.  (*Id.* ¶ 82.)

## PROCEDURAL BACKGROUND

      Plaintiffs filed this action on April 10, 2020.  (ECF No. 1.)  On June 3, 2020,

Liberty Mutual moved to dismiss the complaint for failure to state a claim.  (ECF No. 20.)  The

Court denied that motion on June 15, 2021.  (ECF No. 44.)  Over the past two years, the parties

conducted discovery, including (1) three discovery extensions, (2) production of more than

100,000 pages of documents, (3) 16 fact depositions, (4) 23 expert reports, and (5) six expert

depositions.  (Hines Decl. ¶¶ 5-6, 9-10; ECF Nos.  62, 79, 99.)  All discovery was completed by

June 2024.  (Hines Decl. ¶ 11.)

## **ARGUMENT**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is only "'genuine' if the evidence about the issues in dispute is such that a reasonable jury could resolve the point in favor of the non-moving party." *Ellis II*, 883 F.3d at 7 (alterations and citation omitted). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id.* (citation omitted). This is because to overcome a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).

## **I.     ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO ESTABLISH LOSS**

Counts I through IV of the Complaint allege breaches of fiduciary duty under ERISA § 1104(a)(1). (Compl. ¶¶ 209-38.) To establish an ERISA breach of fiduciary duty claim, a plaintiff must show, among other things, "a breach of fiduciary duty and loss to the plan." *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 39 (1st Cir. 2018). In the First Circuit, once an ERISA plaintiff demonstrates both a breach of duty and a loss to the plan, the burden shifts to the defendant to prove that the defendant's breach of duty did not cause the plan's loss. *Id.* at 35, 39. But the plaintiff still bears the initial burden of showing a loss. *Id.* at 39; *see also Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 210 (D. Mass. 2020) ("The plaintiff still bears the burden of showing the existence and extent of the alleged loss." (citation omitted)). Thus, if Plaintiffs cannot establish a loss to the Plan, then Plaintiffs cannot establish an ERISA breach of fiduciary duty claim, warranting summary judgment for Defendants. *McGovern ex rel.*

7

*McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 426 (D. Mass. 2008) ("Summary judgment is properly entered against a party who 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (citation omitted)).

> **A.    Plaintiffs' Only Evidence Of Loss Comes From Their**
> **Retained Experts, Who Are All Unreliable And Must Be Excluded**

Losses in ERISA breach of fiduciary duty cases are "measured by the difference between the plan's actual performance and how the plan would have performed if the funds had been [operated] like other funds being [properly operated] during the same period." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 981 (2d Cir. 2023). In order to establish losses, a plaintiff must "show, at a minimum, that there was a 'prudent alternative' . . . . That is, [p]laintiffs must provide evidence of a 'suitable benchmark' against which loss could be measured." *Id.* at 982 (citation and alteration omitted). Plaintiffs proffer only one form of evidence to support their allegations of loss: the expert reports of Mr. Donald C. Stone, Mr. John T. Hare, and Dr. Edward S. O'Neal. In fact, in response to Defendants' interrogatory requesting that Plaintiffs "[i]dentify all losses," Plaintiffs stated only that "[e]xpert opinion calculating the full damages to the class will be produced under the schedule for expert disclosures provided by the Court." (SMF ¶¶ 95-96.) But, as discussed in more detail in Defendants' motions to exclude Plaintiffs' experts, none of Plaintiffs' experts proffer a reliable method to establish loss with respect to any of Plaintiffs' allegations. As a result, Plaintiffs have no admissible evidence of loss.

*Recordkeeping and managed account fees*: Plaintiffs' only evidence of loss with respect to recordkeeping and managed account fees paid by the Plan comes from the expert reports of Mr. Stone, who purports to (1) identify a "market" price for recordkeeping and

managed account services during the Class Period, and then use that price to calculate losses allegedly suffered by the Plan from paying excessive fees, and (2) identify a preferred expense account balance for the Plan, and use that to calculate losses allegedly suffered by the Plan from overcollection of administrative expenses.  (*See* Memorandum Of Law In Support Of Defendants' Motion To Exclude, In Part, The Opinions And Testimony Of Mr. Donald C. Stone (ECF No. 107) at 2-7).)  But Mr. Stone's opinion of the "market" rate for recordkeeping and managed account services is unreliable because it is impermissibly premised solely on his experience, the specifics of which Mr. Stone does not recall today.  (*See id.* at 11-14.)  Similarly, Mr. Stone's opinion of the appropriate balance that should be maintained in a plan expense account is solely Mr. Stone's subjective belief, not a reliable expert opinion.  (*Id.* at 16.)  Mr. Stone's subjective opinion that fees could have been lower does not establish a "prudent alternative" or a "suitable benchmark[] against which loss could be measured.  *See Cunningham*, 86 F.4th at 982.

     *Challenged Funds*:  Plaintiffs' evidence with respect to the Challenged Funds likewise comes only from the expert reports of Mr. Hare, Dr. O'Neal, and Mr. Stone.  Mr. Stone, for his part, purports to identify *a single* alternative investment option to the Wells Fargo US Government Money Market Fund.  (Memorandum Of Law In Support Of Defendants' Motion To Exclude, In Part, The Opinions And Testimony Of Mr. Donald C. Stone (ECF No. 107) at 9-10, 17).)  Mr. Hare also purports to identify alternative investment options for the two Challenged Funds.  (Memorandum Of Law In Support Of Defendants' Motion To Exclude The Opinions And Testimony Of Mr. John T. Hare And Dr. Edward S. O'Neal (ECF No. 105) at 3-11.).)  Dr. O'Neal compares the returns of the Challenged Funds with the returns of the alternatives identified by Mr. Hare and labels those differences "losses" to the Plan.  (*Id.* at 12-

13.)  All of those opinions must be excluded as unreliable.  (*See* Memorandum Of Law In Support Of Defendants' Motion To Exclude, In Part, The Opinions And Testimony Of Mr. Donald C. Stone (ECF No. 107); Memorandum Of Law In Support Of Defendants' Motion To Exclude The Opinions And Testimony Of Mr. John T. Hare And Dr. Edward S. O'Neal (ECF No. 105).)  Mr. Stone's selection of a single alternative for the Wells Fargo US Government Money Market Fund is unreliable because it is not based on any methodology.  (Memorandum Of Law In Support Of Defendants' Motion To Exclude, In Part, The Opinions And Testimony Of Mr. Donald C. Stone (ECF No. 107 at 17.)  In fact, Mr. Stone did not even look at other alternatives. (*Id.*)  Rather, Mr. Stone simply states that the alternative he chose is appropriate because it is "large" and "well-known."  (*Id.*)  Similarly, Mr. Hare's alternative fund selection methodology is subjective and unexplained, resulting in an arbitrary list of alternative investment options.  (*See* Memorandum Of Law In Support Of Defendants' Motion To Exclude The Opinions And Testimony Of Mr. John T. Hare And Dr. Edward S. O'Neal (ECF No. 105 at 15-18.)  Dr. O'Neal's loss calculation methodology is entirely derivative of Mr. Hare's, and therefore fails for the same reasons as Mr. Hare's proffered opinions.  (*See id.* at 20.)  Mr. Hare's and Mr. Stone's arbitrary selection of funds against which they measure the Challenged Funds is not sufficient to establish a "prudent alternative" to measure loss.  *See Cunningham*, 86 F.4th at 982.

In short, Plaintiffs' only proffer of evidence with respect to losses is dubious and excludable, and therefore all of their claims should be summarily dismissed.

**B.**  **The Absence Of Any Evidence Of Loss Warrants**
<u>**Granting Summary Judgment On All Of Plaintiffs' Claims**</u>

Courts routinely grant motions for summary judgment in ERISA breach of fiduciary duty cases in which the plaintiffs' experts on loss have been excluded and the plaintiffs can present no other evidence of loss.  For example, just two months ago, the Western District of

Pennsylvania granted summary judgment for PNC Financial Services Group, Inc. on ERISA breach of fiduciary duty claims after the court excluded the plaintiff's loss expert.  *McCauley v. PNC Financial Services Grp., Inc.*, No. 2:20-CV-01493-CCW, 2024 WL 3091754, at *5-6 (W.D. Pa. June 21, 2024).  There, the court held that the plaintiff's proffered expert had "failed to identify a reliable methodology or process he used to calculate the reasonable market fee" for the retirement plan's recordkeeping fees and, accordingly, excluded the expert.  *Id.* at *4.  The court found that the plaintiff "relie[d] solely on [the expert's report on losses] to establish a prima facie case of loss," and "because the [c]ourt ruled [the expert's] expert opinion inadmissible," it held that the plaintiff "cannot establish a loss" and granted summary judgment for the defendant.  *Id.* at *6.  *See also Turner v. Schneider Elec. Holdings, Inc.*, No. CV 20-11006-NMG, 2023 WL 387592, at *3-5 (D. Mass. Jan. 24, 2023) (Gorton, J.) (granting summary judgment to defendants in ERISA breach of fiduciary duty case in which the plaintiffs did not "proffer[] any evidence of losses to the [p]lan"); *Cunningham*, 86 F.4th at 982 (affirming award of summary judgment to defendants in ERISA breach of fiduciary duty case "having concluded that [p]laintiffs' evidence was insufficient to demonstrate a genuine dispute of material fact as to whether the [p]lans suffered loss").

As in *McCauley*, *Turner*, and *Cunningham*, Plaintiffs have no admissible evidence creating a genuine dispute of material fact on the issue of Plan losses.  Thus, summary judgment on all of Plaintiffs' claims is warranted.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' DISLOYALTY CLAIMS (COUNTS II AND III)

Independent of Plaintiffs' failure to demonstrate loss, Defendants are entitled to summary judgment as to Plaintiffs' claims alleging a breach of the duty of loyalty.  (*See* Compl. ¶¶ 217-31.)  Plaintiffs speculate that Defendants breached their duty of loyalty by (1) retaining

the Sterling Mid Cap Value Fund to "advance Liberty Mutual's business interests" with BB&T

and (2) retaining the Wells Fargo US Government Money Market Fund to "drive significant

revenue to Wells Fargo" and to protect Liberty Mutual's "lucrative business relationships with

Wells Fargo." (*Id.* ¶¶ 103, 109, 117.) Plaintiffs' disloyalty allegations fail because there is no

evidence that Defendants retained the Challenged Funds for the purpose of advancing their own

business interests.[7]

### A.    Plaintiffs Must Show That Defendants Retained The Challenged Funds For The Purpose Of Providing Benefits To Themselves Or Someone Else

ERISA's duty of loyalty requires fiduciaries to "discharge [their] duties with

respect to a plan solely in the interest of the participants and beneficiaries and . . . for the

exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii)

defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). To

establish that an ERISA fiduciary breached the "duty of loyalty, a plaintiff needs to show that the

fiduciary served an interest or obtained a benefit at the expense of plan beneficiaries." *Ellis v.*

*Fid. Mgmt. Tr. Co.* (*Ellis I*), 257 F. Supp. 3d 117, 126 (D. Mass. 2017), *aff'd*, *Ellis II*, 883 F.3d 1

(1st Cir. 2018). The First Circuit has repeatedly explained that the key question in "reviewing

ERISA duty of loyalty claims" is "whether the fiduciary's '*operative motive* was to further its

own interests.'" *Brotherston*, 907 F.3d at 40 (emphasis added) (quoting *Ellis II*, 883 F.3d at 6).

Other federal courts have similarly observed that the relevant inquiry asks whether a fiduciary's

actions "were *for the purpose* of providing benefits to themselves or someone else and did not

simply have that incidental effect." *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017

---

[7]    As discussed above, the Court should grant summary judgment with respect to all of
Plaintiffs' claims because Plaintiffs cannot establish a loss. As a result, the Court need not reach
this issue unless the Court declines to dismiss all of Plaintiffs' claims.

WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017), *aff'd*, 86 F.4th 961 (2d Cir. 2023). To defeat

summary judgment, then, a plaintiff must point to evidence in the record that a fiduciary "acted

*for the purpose* of providing benefits to itself or someone else." *Falberg v. Goldman Sachs Grp.,*

*Inc.*, No. 19 Civ. 9910 (ER), 2022 WL 4280634, at *14 (S.D.N.Y. Sept. 14, 2022) (granting

summary judgment for defendants on the plaintiff's loyalty claim where the plaintiff "ha[d] not

pointed to any evidence demonstrating that the [c]ommittee 'acted for the purpose' of advancing

[the company's] interests"), *aff'd*, No. 22-2689-cv, 2024 WL 619297 (2d Cir. Feb. 14, 2024).

**B.    There Is No Evidence That Defendants Retained The Challenged
        Funds For The Purpose Of Furthering Liberty Mutual's Business Interests**

After two years of discovery, including 16 fact depositions and the production of

more than 100,000 pages of documents (*see* Hines Decl. ¶¶ 3-5, 16, 11), there is *no evidence at*

*all* that Defendants retained the Challenged Funds for the purpose of providing benefits to

themselves or to anyone else other than Plan participants. Plaintiffs' lack of evidence is manifest

in Plaintiffs' interrogatory responses:

| No. | Defendants' Interrogatory | Plaintiffs' Response |
|---|---|---|
| 4 | State the Basis for Your contention that "Defendants provided the Sterling Mid-Cap Portfolio to advance Liberty Mutual's interests rather than participants" interests in violation of ERISA. (Compl. ¶ 103.) | Plaintiffs incorporate by reference their response to Interrogatory Number 1 that explains why there is no rational explanation for the inclusion of the Sterling Mid-Cap Value Portfolio other than to advance Liberty Mutual's extensive business relationships with BB&T. |
| 7 | State the Basis for Your contention that "Defendants provided the Money Market Fund to the Plan not based on an analysis of its merits but rather to drive significant revenue to Wells Fargo." (Compl. ¶ 109.) | Plaintiffs incorporate by reference their response to Interrogatory Number 1 that explains why there is no rational explanation for the inclusion of the Wells Fargo Government Money Market Fund other than to advance Liberty Mutual's extensive business relationships with Wells Fargo. |

(SMF ¶¶ 88-91.) Nowhere in Plaintiffs' responses to Interrogatory Nos. 4 or 7 (or Interrogatory

No. 1) do Plaintiffs identify any evidence that Defendants' "operative motive" in retaining the

Challenged Funds was to advance Defendants' business relationships with BB&T or Wells Fargo.

13

*See Brotherston*, 907 F.3d at 40.  In fact, Plaintiffs' interrogatory responses provide no evidence of Defendants' motive whatsoever.  Plaintiffs' speculation that "there is no rational explanation" for retention of the Challenged Funds other than the advancement of Defendants' business interests is not evidence of anything.  Indeed, it is not at all surprising that Liberty Mutual (a large global insurance company) has business relationships with the largest banks in the United States, including BB&T and Wells Fargo.  (*See* SMF ¶¶ 1, 74, 82.)

Plaintiffs' response to Interrogatory No. 1, which Plaintiffs incorporate by reference, fares no better.  Interrogatory No. 1 asked Plaintiffs to "[i]dentify each and every Plan investment option, including any investments underlying the Plan's investment options, from April 2014 to the present that [Plaintiffs] contend were imprudent for the Plan and State the Basis for that contention."  (SMF ¶ 92.)  Plaintiffs' response contains assertions of the Challenged Funds' purported underperformance, excessive price, and supposed unpopularity among other retirement plans.  (*Id.* ¶ 93.)  Based on those assertions, Plaintiffs again contend that "the only rational explanation for [the Challenged Funds'] continued inclusion in the Plan was to advance Liberty Mutual's" business interests and relationships with BB&T and Wells Fargo. (*Id.*)[8]  Plaintiffs' statement is conjecture, not evidence.  Without any evidence that Defendants' business relationships played a role in the decision to retain the Challenged Funds in the Plan, Plaintiffs cannot show that Defendants acted for the purpose of advancing their own interests.

Moreover, "Plaintiffs' theory of how [Defendants] behaved disloyally suffers from the added disability of making little sense."  *Ellis II*, 883 F.3d at 7 (affirming grant of

---

[8]    Plaintiffs' responses to Interrogatory Nos. 1, 4, and 7 state that Plaintiffs "will supplement this response, directly or through expert testimony, after all discovery is complete." (SMF ¶ 94.)  Discovery has been closed for nearly two months, and Plaintiffs have not served any supplemental responses.  (Hines Decl. ¶¶ 8, 11.)  Plaintiffs' expert reports, moreover, do not address their disloyalty allegations.

summary judgment on duty of loyalty claim where "plaintiffs' theory . . . was plainly illogical").
The record evidence demonstrates that Defendants' choices throughout the Class Period served
to repeatedly *reduce* the amount of Plan assets held in the Challenged Funds:

- *First*, in August 2017, the Retirement Committee approved a recommendation to change the underlying funds in the Plan's target date funds by eliminating any allocation to the Wells Fargo US Government Money Market Fund.  (SMF ¶¶ 64-66.) In part as a result of that change, the percentage of the Plan's assets invested in the Wells Fargo US Government Money Market Fund *decreased* from 7% in November 2014 to 3% in May 2018.  (*Id.* ¶ 67.)

- *Second*, the Retirement Committee *removed* the Sterling Mid Cap Value Fund from the Plan in 2018.  (*Id.* ¶¶ 50-55.)

- *Third*, the Retirement Committee *removed* the Wells Fargo US Government Money Market Fund from the Plan in 2021.  (*Id.* ¶¶ 68-73.)

Defendants' decisions throughout the Class Period resulted in Plan assets moving away from the
Challenged Funds.  Those decisions contradict Plaintiffs' theory that Defendants were
improperly using the Plan's assets to advance business relationships with BB&T and Wells
Fargo.

### C.    The Lack Of Evidence Of Disloyal Motives Calls For Granting Summary Judgment For Defendants On Plaintiffs' Disloyalty Allegations

Plaintiffs' failure, after years of discovery, to adduce evidence of Defendants'
alleged improper motivation in retaining the Challenged Funds is fatal, and warrants summary
judgment as to Plaintiffs' claims of disloyalty.  For example, in *Troudt v. Oracle Corp.*, the
District of Colorado granted Oracle Corporation's motion for summary judgment on an ERISA
breach of loyalty claim alleging that the plan paid excessive recordkeeping fees to Fidelity
Management Trust Company ("Fidelity") in order to "advance Oracle's other business
relationships with Fidelity."  2019 WL 1006019, at *6 (D. Colo. Mar. 1, 2019).  Fidelity was "a
customer of Oracle," and from that unremarkable fact, plaintiffs "maintain[ed]" that Oracle

15

breached its duty of loyalty "by allowing the [p]lan to pay allegedly excessive recordkeeping fees in order to maintain a favorable business relationship with Fidelity." *Id.* at *10. The only evidence plaintiffs uncovered to support this theory was that "occasionally" Oracle's sales team -- which had "discuss[ed] among themselves how to leverage Oracle's business relationship with Fidelity" -- "request[ed] . . . information from" Oracle's plan. *Id.* "At best," the court explained, "plaintiffs can say only that [the plan's committee] members were 'aware' of Oracle and Fidelity's business relationship." *Id.* The court concluded that "[t]o draw any further, more sinister conclusion would be nothing more than rank speculation, and is therefore insufficient to create a genuine dispute [of] material fact for trial." *Id.*

Plaintiffs here have indulged in even *more* "rank speculation" than the *Troudt* plaintiffs. There is no evidence that any Liberty Mutual team responsible for the business relationships with BB&T and Wells Fargo had any interaction with the Retirement Committee, much less any interaction concerning the Challenged Funds. As in *Troudt*, "[a]t best," Plaintiffs can only speculate that some members of the Retirement Committee -- who were, after all, some of the most senior individuals at Liberty Mutual (*see* SMF ¶ 25) -- were "aware" of Liberty Mutual's business relationships with BB&T and Wells Fargo. *See Troudt*, 2019 WL 1006019, at *10. But mere awareness of business relationships is insufficient to establish that Defendants retained the Challenged Funds with the *purpose* of advancing those business relationships. Plaintiffs simply have no evidence, and thus no argument, that Defendants "served an interest or obtained a benefit at the expense of plan beneficiaries." *Ellis I*, 257 F. Supp. 3d at 126.

Similarly in *Falberg v. Goldman Sachs Group, Inc.*, the Second Circuit affirmed summary judgment to the defendants on an ERISA breach of loyalty claim. 2024 WL 619297, at *2. The court held that "[a]s an overarching matter, [the plaintiff] failed to introduce evidence

16

that [d]efendants retained the [c]hallenged [f]unds in the [p]lan for the purpose of advancing their interests; indeed, the evidence in the record suggests otherwise." *Id.* The court noted that the defendants had hired an independent investment advisor and that "there is no evidence in the record that either the independent investment advisor or the [c]ommittee members had any personal incentive to favor the [c]hallenged [f]unds." *Id.* The court also observed that the plan's fiduciaries had removed all of the challenged funds after a "period of underperformance." *Id.* As in *Falberg*, the Plan's fiduciaries hired an independent investment advisor to help the Retirement Committee monitor the Plan's investments, and the fiduciaries' and independent advisor's monitoring resulted in the removal of both the Challenged Funds from the Plan. (*See* SMF ¶¶ 29-30, 50-55, 68-73.)

In the end, Plaintiffs are still where they began this case: drawing a "sinister[] conclusion" based on "nothing more than rank speculation" that Defendants retained the Challenged Funds in the Plan in order to advance business relationships with BB&T and Wells Fargo. *See Troudt*, 2019 WL 1006019, at *10. Such speculation is "insufficient to create a genuine dispute [of] material fact for trial" and summary judgment is thus "appropriate as to" Plaintiffs' duty of loyalty claims. *Id.*

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant summary judgment in favor of Defendants.

Dated:  August 5, 2024
        Boston, Massachusetts

Respectfully submitted,

/s/ *Michael S. Hines*
James R. Carroll (BBO # 554426)
Michael S. Hines (BBO # 653943)
Mary E. Grinman (BBO # 694097)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

*Counsel for Defendants*
*Liberty Mutual Group Inc. and*
*the 401(k) Plan Administrative Committee*