**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

YUSUF AHMED, et al.,

        Plaintiffs,

v.                                                        No. 3:20-cv-30056-MGM

LIBERTY MUTUAL GROUP, INC., et al.,

        Defendants.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Factual Background ...................................................................................................... 2

    I.    Defendants caused the Plan to pay unreasonably high recordkeeping fees. ................... 2

    II.   Defendants caused the Plan to pay unreasonably high managed account fees. .............. 5

    III.  Defendants disloyally and imprudently retained the two challenged funds. ................... 6

        A.   The Wells Fargo MMF ........................................................................................ 6

        B.   The Sterling MCV ............................................................................................... 7

Plaintiffs' Claims ........................................................................................................ 9

Legal Standard ............................................................................................................ 9

Argument .................................................................................................................... 11

    I.    The evidence is sufficient to establish a loss. ............................................................. 11

        A.   Losses are reliably shown by Plaintiffs' experts. .............................................. 12

        B.   Other evidence shows the Plan's fees were unreasonably high. ......................... 13

        C.   Plaintiffs are not limited to their interrogatory responses. ................................ 14

    II.   The evidence is sufficient to find that Defendants acted disloyally. .............................. 15

        A.   There is enough circumstantial evidence to deny summary judgment. ................. 15

        B.   Plaintiffs' interrogatory responses are immaterial. .................................................. 19

Conclusion ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ......................................................................... 17

*Brock v. Robbins*,
  830 F.2d 640 (7th Cir. 1987) ......................................................................... 14

*Brotherston v. Putnam Inv., LLC*,
  907 F.3d 17 (1st Cir. 2018)............................................................. 11, 13, 16

*Bunch v. W.R. Grace & Co*,
  555 F.3d 1 (1st Cir. 2009) .............................................................................. 16

*Carlson v. Univ. of New England*,
  899 F.3d 36 (1st Cir. 2018).............................................................................. 10

*Cates v. Trs. of Columbia Univ.*,
  No. 16-6524, 2019 U.S. Dist. LEXIS 186573 (S.D.N.Y. Oct. 25, 2019), *report and
  recommendation adopted*, 2020 U.S. Dist. LEXIS 55409 (S.D.N.Y., Mar. 30, 2020) ........... 14

*Cherkaoui v. City of Quincy*,
  877 F.3d 14 (1st Cir. 2017)............................................................................... 10

*Cunningham v. Cornell Univ.*,
  86 F.4th 961 (2d Cir. 2023) ............................................................................. 11

*Dardaganis v. Grace Capital, Inc.*,
  889 F.2d 1237 (2d Cir. 1989) .......................................................................... 11

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
  761 F. Supp. 185 (D. Mass. 1991) .................................................................. 10

*Den norske Bank AS v. First Nat'l Bank*,
  75 F.3d 49 (1st Cir. 1996).................................................................................. 10

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007) ........................................................................... 16

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982) ............................................................................ 16

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985) .......................................................................... 11

*Ellis v. Fid. Mgmt. Tr. Co.*,
  883 F.3d 1 (1st Cir. 2018)................................................................................. 16

*Evans v. Akers*,
  534 F.3d 65 (1st Cir. 2008)............................................................................... 11

*Falberg v. Goldman Sachs Grp., Inc.*,
  No. 22-2689, 2024 U.S. App. LEXIS 3418 (2d Cir. Feb. 14, 2024) ........................ 18

*Fuller v. Suntrust Banks, Inc.*,
   No. 11-784, 2019 U.S. Dist. LEXIS 187098 (N.D. Ga. Oct. 3, 2019) ........................ 13, 16, 17

*George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*,
   424 F.2d 25 (1st Cir. 1970) ........................................................................................ 10

*George v. Kraft Foods Glob., Inc.*,
   641 F.3d 786 (7th Cir. 2011) ..................................................................................... 12

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
   931 F. Supp. 2d 296 (D. Mass. 2013) ......................................................................... 11

*Hamelin v. Kinder Morgan, Inc.*,
   No. 21-30054 (MGM), 2022 U.S. Dist. LEXIS 227568 (D. Mass. Dec. 19, 2022) ................ 15

*Hodgens v. Gen. Dynamics Corp.*,
   144 F.3d 151 (1st Cir. 1998) ...................................................................................... 16

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) ..................................................................................... 16

*Leigh v. Engle*,
   858 F.2d 361 (7th Cir. 1988) ..................................................................................... 11

*Luitgaren v. Sun Life Assurance Co. of Canada*,
   765 F.3d 59 (1st Cir. 2014) ........................................................................................ 16

*Mendes v. Medtronic, Inc.*,
   18 F.3d 13 (1st Cir. 1994) .......................................................................................... 10

*Morris v. Gov't Dev. Bank*,
   27 F.3d 746 (1st Cir. 1994) ........................................................................................ 10

*Netherlands Ins. Co. v. HP, Inc.*,
   646 F. Supp. 3d 139 (D. Mass. 2022) ......................................................................... 12

*Plasterers' Local Union No. 96 Pension Plan v. Pepper*,
   663 F.3d 210 (4th Cir. 2011) ..................................................................................... 11

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
   273 F.R.D. 367 (S.D.N.Y. 2010) ................................................................................. 15

*Roth v. Sawyer-Cleator Lumber Co.*,
   16 F.3d 915 (8th Cir. 1994) ....................................................................................... 18

*Sacerdote v. N.Y. Univ.*,
   9 F.4th 95 (2d Cir. 2021) ...................................................................................... 11, 12

*Sellers v. Trs. of Bos. Coll.*,
   No. 22-10912-WGY, 2024 U.S. Dist. LEXIS 66356 (D. Mass. Apr. 11, 2024) ..................... 13

*Sonicsolutions Algae Control, LLC v. Diversified Power Int'l, LLC*,
   No. 21-30068 (MGM), 2024 U.S. Dist. LEXIS 44736 (D. Mass. Mar. 8, 2024).................... 10

*Spano v. Boeing Co.*,
   125 F. Supp. 3d 848 (S.D. Ill. 2014)........................................................................... 18

*Students for Fair Admissions v. President & Fellows of Harvard Coll. Harvard Corp.*,
    346 F. Supp. 3d 174 (D. Mass. 2018) ................................................................. 10

*Taite v. Bridgewater State Univ., Bd. of Trs.*,
    999 F.3d 86 (1st Cir. 2021) ...................................................................... 16, 18

*Tracey v. Mass. Inst. of Tech.*,
    404 F. Supp. 3d 356 (D. Mass. 2019) ................................................................ 10

*Troudt v. Oracle Corp.*,
    No. 16-175, 2019 U.S. Dist. LEXIS 33017 (D. Colo. Mar. 1, 2019) ...................................... 18

*Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
    843 F.3d 561 (2d Cir. 2016) ..................................................................... 11

*Tussey v. ABB, Inc.*,
    No. 06-4305, 2012 U.S. Dist. LEXIS 45240 (W.D. Mo. Mar. 31, 2012), *remanded on
    other grounds,* 746 F.3d 327 (8th Cir. 2014) ........................................................ 14

*Vellali v. Yale Univ.*,
    No. 16-1345, 2022 U.S. Dist. LEXIS 192235 (D. Conn. Oct. 21, 2022) ................................. 14

**Statutes**

29 U.S.C. § 1104(a)(1)(A) ............................................................................... 9, 16

29 U.S.C. § 1104(a)(1)(B) .................................................................................. 9

29 U.S.C. § 1109(a) ..................................................................................... 10

**Rules**

Fed. R. Civ. P. 26(e)(1)(A) .............................................................................. 15

Fed. R. Civ. P. 56(a) ..................................................................................... 9

Fed. R. Evid. 26(e)(1)(A) ................................................................................ 20

## INTRODUCTION

The Court should deny Defendants' motion for summary judgment.[1] ECF 108. The evidence adduced in discovery is more than sufficient to prove Plaintiffs' claims. In particular, the evidence shows that Defendants breached their fiduciary duties to the Liberty Mutual 401(k) Plan (the "Plan") by (a) allowing the Plan's recordkeeper, Hewitt Associates, and the Plan's managed account providers, Financial Engines, LLC and Strategic Advisers, LLC, to charge unreasonable fees; and (b) failing to timely remove two imprudent investment options: the Wells Fargo U.S. Government Money Market Fund ("Wells Fargo MMF") and the Sterling Mid-Cap Value Fund ("Sterling MCV"). SMF ¶¶ 97–211.[2]

There is ample evidence to support a finding of loss for each alleged breach. Defendants repeat their attacks on Plaintiffs' experts, *see* ECF 109 at 7–11, but as Plaintiffs argued in their oppositions to Defendants' separate *Daubert* motions, all three experts—Donald Stone, John Hare, and Edward O'Neal—offer reliable, admissible testimony, based not only on their specialized knowledge and expertise but also on the objective data they reviewed and analyzed. *See* ECF 121 (Stone Resp.); ECF 122 (Hare & O'Neal Resp.). Together, their testimony will establish that Defendants' fiduciary breaches each cost Plan participants millions of dollars in lost earnings. In addition, Plaintiffs also have other substantial, non-expert evidence to prove loss on their fee claims, including the fees paid by similar plans and the significantly lower pricing the Plan finally obtained after soliciting competitive bids.

---

[1] "Defendants" refers to Liberty Mutual Group Inc. ("Liberty Mutual") and the 401(k) Plan Administrative Committee.

[2] "SMF" refers to Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Material Facts As to Which There is no Genuine Issue to be Tried. Page citations are to the ECF header number, exhibit page number or PDF page number other than for transcripts, which cite to the transcript page and line, and internal cross references.

The evidence is also sufficient to create a genuine issue of material fact on the duty of loyalty. ███████████████████████████████████████████████

███████████████████████████████████████████ SMF ¶¶ 112, 132,

147, 180–82. ██████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████ *Id.* ¶¶ 160–67, 186–91. ███████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███ *Id.* ¶¶ 105–06, 109, 162–67, 190–91. The circumstantial evidence of disloyalty is sufficient to defeat summary judgment.

**FACTUAL BACKGROUND**

**I.    Defendants caused the Plan to pay unreasonably high recordkeeping fees.**

██████████████████████████████████████████████████████

██████████████████████████ *Id.* ¶ 107. █████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████. *Id.* ¶ 104. Even the defense expert, Steven Gissiner, admitted that he could not recall a "jumbo" plan like the Plan going more than a decade without a recordkeeping RFP. *Id.*

On top of the high recordkeeping fees Hewitt received from the Plan, Defendants also allowed Hewitt to collect hundreds of thousands of dollars in uncapped revenue sharing from Financial Engines. *Id.* ¶ 114. ██████████████████████████████████

██████████████████████. *Id.* ¶ 110. █████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ *Id.* ¶ 112. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████. *Id.* ¶ 116.

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 117. ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████. *Id.* ¶ 109. █████████████████████████████

████████████████████████████████████████████████

███████. *Id.*

██████████████████████████████████████████

████████████████████████████████████████████. ¶¶ 118–27.

████████████████████████████████████████████████

██████████████████████████. *Id.* ¶ 118. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████. *Id.* ¶¶ 119–27.

For example, the Chevron Employee Savings Investment Plan (the "Chevron Plan"), with 34,000 participants, paid $26 per participant in 2018 for substantially the same services. Moreover, the Chevron Plan's fee schedule in 2015 provided that plans with over 50,000 participants, like the Plan, would have paid only $22 per participant. *Id.* ¶¶ 124–26. Fidelity has stipulated that the value of the recordkeeping services it provided to its own 55,000-participant plan fell between $14 and $21 between 2014 and 2017. *Id.* ¶ 127. █████████████████████████████

████████████████████████████████████████████████████████████████

███. *Id.* ¶ 118.

An additional wrinkle in this case is that participants did not directly pay the recordkeeping fees to Hewitt. Instead, Defendants collected a 5 basis point administrative fee (later reduced to 3 basis points in 2019) from every participant account in the Plan and held that money in an expense account to pay expenses, including recordkeeping fees. *Id.* ¶ 128. ████████████████████

████████████████████████████████████████████████████████████████

███████. *Id.* ¶¶ 130–32. █████████████████████████

█████████████████████████████████████████████. *Id.* ¶ 130.████████████

████████████████████████████████████████ *Id.* ¶¶ 134–37.██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

*Id.* ¶ 137.███████████████████████████████████

███████████████████████████████████████████████. *Id.* ¶¶ 139–
40.

**II.     Defendants caused the Plan to pay unreasonably high managed account fees.**

███████████████████████████████████████████████

████████████████. *Id.* ¶ 141. ██████████████████████████

██████████████████████████████████. *Id.* ¶ 140.

███████████████████████████████████████

██████████████████████████████. *Id.* ¶¶ 144–46. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████. *Id.* ¶
145. ███████████████████████████████████████

██████. ¶ 146.

███████████████████████████████████████*Id.* ¶ 141.

███████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶ 147. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████ *Id.* ¶¶ 148–51.██████████████████

████████████████████████████████. *Id.* ¶¶ 142, 150.

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████. *Id.* ¶ 152.████████████████████████

███████████████████████████████████████████████

[REDACTED] *Id.* ¶ 153. Plaintiffs will also show that other large plans, such as those offered by Boeing, Kimberly-Clark, Kaiser Permanente, and JC Penney, all had substantially lower managed account fees than the Plan. *Id.* ¶ 154.

## III.   Defendants disloyally and imprudently retained the two challenged funds.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] . *Id.* ¶¶ 160–67, 186–91. [REDACTED]

[REDACTED]

[REDACTED] . *Id.* ¶¶ 105–06, 109, 166.

### A.   The Wells Fargo MMF

[REDACTED]

[REDACTED] *Id.* ¶ 174.

Capital preservation options are typically mutual funds or stable value funds that seek to preserve invested capital to avoid loss. *Id.* ¶ 168. [REDACTED]

[REDACTED] . *Id.* ¶ 170. [REDACTED]

[REDACTED]

[REDACTED]

*Id.* ¶ 171.

[REDACTED]

[REDACTED] .

*Id.* ¶ 180. [REDACTED]

██████████████████████████████████████████. *Id.* ¶¶ 177, 181–184. A reasonable person might wonder why.

████████████████████████████████████████████████

██████ *Id.* ¶¶ 162–64. ███████████████████████████

██████████████████████████████. *Id.* ¶ 162.

███████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* ¶ 166. In 2018, however, the relationship began to wind down. *Id.* ¶ 164. By 2020, Wells Fargo announced that it was selling the subsidiary that managed the Wells Fargo MMF. ███████████████

████████████████████████████████████████████████

████████████████████. *Id.* ¶¶ 164, 167, 184. ████████████████

██████████████████. *Id.* ¶ 184.

████████████████████████████████████████████

██████████████████████████████. *Id.* ¶ 208. ██████████████

███████████████████████████████████████████████

████████████████████████████████████████. *Id.* ¶ 208. ████

███████████████████████████████. *Id.* ¶ 208 n.200. █████████████

███████████████████████████. *Id.* ¶ 209. █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████. *Id.*

**B.    The Sterling MCV**

The Sterling MCV is a separate account in the mid-cap value asset class managed by Sterling Capital Management, a subsidiary of BB&T. *Id.* ¶ 186. Between 2014 and 2022, ██████

██████████████████████████████████████████████████████████████

████ *Id.* ¶¶ 187–91.

████████████████████████████████████████████████████████████

*Id.* ¶ 192. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████." *Id.*

¶¶ 193, 200. ██████████████████████████████████████████████████

████████████████████. *Id.* ¶ 200.

████████████████████████████████████████████████████████████

██████████████. *Id.* ¶¶ 195–99.████████████████████████████

███████████████████████████████████████. *Id.* ¶ 201.

██████████████████████████████████████████████████████████████

███████████████████████████████████s. *Id.* ¶ 204. ████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ *Id.*

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████. *Id.* ¶ 204. █

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████. *Id.* ████████████

█████████████████████████████████████████████████████████████.

*Id.* ¶ 199. 

. *Id.* ¶ 206.

. *Id.* ¶¶ 201–11.

## PLAINTIFFS' CLAIMS

Plaintiffs assert four fiduciary breach claims. They allege that Defendants violated ERISA's duty of prudence (29 U.S.C. § 1104(a)(1)(B)) by causing the Plan (1) to pay unreasonable recordkeeping fees (ECF 1 ¶¶ 67, 209–216, Count I); (2) to pay unreasonable managed account fees (*id.* ¶¶ 189, 193, 217–223, Count IV); (3) to imprudently retain the Sterling MCV despite the fund consistently underperforming its benchmark and comparable funds (*id.* ¶¶ 217–223, Count II); and (4) to imprudently retain the Wells Fargo MMF over a prudent capital preservation option (*id.* ¶¶ 224–231, Count III). In Counts II and III, and relevant to Defendants' motion, Plaintiffs separately allege that Defendants breached their duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) by retaining the Sterling MCV and Wells Fargo MMF to advance Liberty Mutual's corporate relationships with BB&T and Wells Fargo. *Id.* ¶¶ 103, 112–117, 152.

## LEGAL STANDARD

To prevail on their motion, Defendants must demonstrate that there is "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' when the evidence is such that a reasonable factfinder could resolve

the point in favor of the non-moving party, and a fact is 'material' when it might affect the outcome of the suit under the applicable law." *Sonicsolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, No. 21-30068 (MGM), 2024 U.S. Dist. LEXIS 44736, at *13 (D. Mass. Mar. 8, 2024) (quoting *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994)); *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23–24 (1st Cir. 2017) (same). The non-moving party only needs to place "one material fact into dispute[.]" *Sonicsolutions,* 2024 U.S. Dist. LEXIS 44736, at *13 (citing *Mendes v. Medtronic, Inc*., 18 F.3d 13, 15 (1st Cir. 1994)). The Court must view the entire record "in the light most favorable to the non-moving party and draw all reasonable inferences in [the non-moving party's] favor." *Carlson v. Univ. of New England*, 899 F.3d 36, 43 (1st Cir. 2018).

Summary judgment "should be granted only when the truth is clear, when no material fact remains for trial, and when the moving party is entitled to judgment as a matter of law." *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc*., 424 F.2d 25, 35 (1st Cir. 1970) (citation omitted). "At summary judgment, … courts normally assume that the trier of fact would credit the expert testimony proffered by the nonmovant[.]" *Den norske Bank AS v. First Nat'l Bank*, 75 F.3d 49, 58 (1st Cir. 1996). When the non-moving party's experts "present more than 'merely conclusory allegations' summary judgment is inappropriate." *Tracey v. Mass. Inst. of Tech*., 404 F. Supp. 3d 356, 363 (D. Mass. 2019) (quoting *Students for Fair Admissions v. President & Fellows of Harvard Coll. Harvard Corp.*, 346 F. Supp. 3d 174, 194 (D. Mass. 2018)); *see also Data Gen. Corp. v. Grumman Sys. Support Corp*., 761 F. Supp. 185, 188 (D. Mass. 1991) (the evidence, including expert testimony, "create[ed] a material issue of fact").

A fiduciary that breaches its duties "must 'make good' to the plan 'any losses to the plan resulting'" from the breach. 29 U.S.C. § 1109(a). Plaintiffs must establish three elements to prove their claims: "breach, loss, and causation." *Brotherston v. Putnam Inv., LLC*, 907 F.3d 17, 30 (1st

Cir. 2018). Loss is intended to restore the Plan to the position it would have occupied but for the breach. *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (citing Rest. (2d) of Trusts § 205(c)); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co*., 931 F. Supp. 2d 296, 307 (D. Mass. 2013). Loss is measured "by reference to what the results 'would have been if the portion of the trust affected by the breach *had been properly administered*.'" *Brotherston,* 907 F.3d 17 at 31 (quoting Rest. (3d) of Trusts, § 100) (emphasis in original). To meet their burden, Plaintiffs "must provide evidence of a 'suitable benchmark' against which loss [could] be measured." *Cunningham v. Cornell Univ*., 86 F.4th 961, 982 (2d Cir. 2023) (citing *Brotherston,* 907 F. 3d at 34). They do not have to demonstrate that the alternatives they put forth were "the *only* plausible or prudent ones[.]" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 113 (2d Cir. 2021) (emphasis in original). Plaintiffs need only show "there was some sort of loss to the Plan." *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 220 (4th Cir. 2011). It is reversible error to conflate loss with damages, the amount of "money [that] should be awarded to plaintiffs." *Sacerdote,* 9 F.4th at 112.

## ARGUMENT

**I.     The evidence is sufficient to establish a loss.**

The evidence amply demonstrates that Defendants' breaches of duty resulted in losses to the Plan. "Losses to a plan from breaches of the duty of prudence may be ascertained, with the help of expert analysis, by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio." *Brotherston*, 907 F.3d at 34 (quoting *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008)). If the Plan would have earned more through a prudent investment alternative than it earned though the Plan's imprudent investment, "there is a 'loss[.]'" *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 567 (2d Cir. 2016) (quoting *Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237, 1243 (2d Cir. 1989)); *Brotherston*, 907 F.3d at 34; *see also Leigh v. Engle*, 858 F.2d 361, 367 (7th Cir. 1988) (favoring "the

straightforward approach of comparing the return on the improper investments with that of a reasonably prudent alternative investment" to determine loss). For fee claims, loss is established if Plaintiffs can both prove the charged fees were imprudent and show a prudent alternative. *Sacerdote*, 9 F.4th at 113. They do not need to show that their alternatives were "the only plausible or prudent ones." *Id.*

> **A.    Losses are reliably shown by Plaintiffs' experts.**

Defendants argue that if the Court should grant their *Daubert* motions to exclude Plaintiffs' expert evidence regarding reasonable fees and alternative investment options, there would be no evidence of loss. For the reasons explained in Plaintiffs' *Daubert* oppositions, the opinions of Plaintiffs' well-qualified experts are reliable, relevant, well-supported, and admissible. Mr. Stone offers reliable expert opinions regarding the fees charged to the Plan and associated losses, as well as the prudence of investing in the Vanguard stable value fund rather than the Wells Fargo MMF. *See generally* ECF 121. ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ . SMF ¶¶ 208, 210. Dr. O'Neal's calculations reliably show that the Plan would have earned more with each of those investment alternatives. SMF ¶¶ 209, 211.

The reliable opinions of Plaintiffs' qualified experts preclude summary judgment. *See George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 798–99 (7th Cir. 2011) (expert's admissible opinions "that defendants' failure to solicit bids caused [the plan] to overpay [the recordkeeper] by at least $16 per participant per year" were sufficient to "create a genuine issue of material fact"); *Netherlands Ins. Co. v. HP, Inc.*, 646 F. Supp. 3d 139, 153 (D. Mass. 2022) (finding that "a genuine issue of material fact does indeed exist" based on evidence offered by the plaintiffs' experts).

Whether the expert selected suitable comparator funds is a "question of fact" not suited to summary judgment. *Brotherston*, 907 F.3d at 34; *see also Fuller v. Suntrust Banks, Inc*., No. 11-784, 2019 U.S. Dist. LEXIS 187098, at *94 (N.D. Ga. Oct. 3, 2019) ("[T]he determination of the appropriateness of the comparator funds used is a question for trial, not summary judgment.") (citation omitted); *Sellers v. Trs. of Bos. Coll.*, No. 22-10912-WGY, 2024 U.S. Dist. LEXIS 66356, at *104–05 (D. Mass. Apr. 11, 2024) (the use of index funds as "adequate comparators" presents a question of fact).

      **B.**      **Other evidence shows the Plan's fees were unreasonably high.**

Contrary to Defendants' claim (ECF 109 at 12), the record also contains other evidence of loss, aside from their experts, associated with Plaintiffs' excessive fee claims. A



. *See supra* at 3. Publicly available data shows that comparable plans offered by Chevron and Fidelity paid under $26 per participant during the class period for substantially the same services. *See supra* at 3–4

. *See supra* at 3.

Non-expert evidence also demonstrates that the Plan paid too much for managed account services. In 2014,

. *See supra* at 5–6. Comparable plans with over $1 billion in assets, such as the plans offered by Boeing, Kimberly-Clark, Kaiser Permanente, and JC Penney, paid significantly less than the Plan for managed account services during the class period. SMF ¶ 153. And when the plan finally inquired about the fees, the costs declined substantially. *Id.* ¶ 150.

These objective data points are enough to establish a genuine issue of material fact on the element of loss. *See Vellali v. Yale Univ.*, No. 16-1345, 2022 U.S. Dist. LEXIS 192235, at *55 (D. Conn. Oct. 21, 2022) (denying summary judgment where evidence of loss included pricing of similar plans and fees defendant achieved after it began negotiating with providers); *Cates v. Trs. of Columbia Univ.*, No. 16-6524, 2019 U.S. Dist. LEXIS 186573, at *27–29 (S.D.N.Y. Oct. 25, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 55409 (S.D.N.Y., Mar. 30, 2020) (similar); *see also Tussey v. ABB, Inc.*, No. 06-4305, 2012 U.S. Dist. LEXIS 45240, at *107–08 (W.D. Mo. Mar. 31, 2012), *remanded on other grounds,* 746 F.3d 327 (8th Cir. 2014) (relying on "the average per head amount paid by the Texa$aver Plan, Fidelity's internal records, and the Mercer Report" to measure losses); *id.* at *33–37 (relying on same evidence in finding the expert's market rates credible).

Defendants also ignore the fact that proof of loss is not required to impose the equitable relief Plaintiffs are seeking under ERISA, ECF 1 at ¶¶ 5, 206, 215, 223, 230, 237. *See Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987) (equitable relief can still be awarded for imprudence even without a demonstrated loss).

### C.     Plaintiffs are not limited to their interrogatory responses.

To the extent Defendants suggest that Plaintiffs are precluded from offering other evidence of loss because of their interrogatory responses, they are mistaken. First, Defendants have not taken the first step in the process under Local Rule 37.1 to seek such a sanction; before filing this motion, they never raised any concerns with the adequacy of Plaintiffs' interrogatory responses or their objections. Rohlf Decl. ¶ 2. Second, Defendants did not request all evidence that would support a finding of "loss," *i.e.*, that the Plan paid more than necessary. Rather, their interrogatory asked Plaintiffs to "identify all *losses*, damages and/or equitable restitution claimed," "state the dollar amount thereof," and provide a "specific, itemized calculation of that dollar amount." SMF

¶¶ 95–96 (emphasis added). Plaintiffs appropriately referred to their forthcoming "expert opinion calculating the full damages to the class." *Id.* Loss and damages are not the same thing. *Sacerdote*, 9 F.4th at 112. Plaintiffs' response cannot be construed as limiting the evidence to establish a loss.

Plaintiffs properly asserted an objection to Defendants' interrogatory on the grounds that it was premature, as fact and expert discovery were not complete. *Id.* Plaintiffs subsequently disclosed all of the non-expert evidence recited above in Mr. Stone's written report, which was produced to the defense months ago. *Id.* Having disclosed in writing their intention to rely on the evidence, Plaintiffs were not required under the Rules to supplement their interrogatory responses. Fed. R. Civ. P. 26(e)(1)(A); *see also Hamelin v. Kinder Morgan, Inc.*, No. 21-30054 (MGM), 2022 U.S. Dist. LEXIS 227568, at *20 (D. Mass. Dec. 19, 2022) (recognizing that defendants' interrogatory called for "details that [plaintiff] cannot be expected to provide, at least before the completion of fact and expert discovery"). A party is not required "to parse through documents that already have been produced to [the other parties], which [those other parties] are in a position to review themselves, in order to explain the obvious." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010).

## II.     The evidence is sufficient to find that Defendants acted disloyally.

### A.     There is enough circumstantial evidence to deny summary judgment.[3]

The evidence permits a reasonable inference that Defendants kept the Wells Fargo MMF and the Sterling MCV in the Plan for years, despite the availability of superior options, because of the lucrative insurance brokerage agreements between Liberty Mutual and the funds' parent banks. Such conduct constitutes a breach of loyalty. Under ERISA, fiduciaries must act "solely in the

---

[3] Dismissal of Plaintiffs' loyalty claims would not dismiss Counts II and III in their entirety, as Plaintiffs maintain a prudence claim under those Counts as well. ECF 1 ¶¶ 218–220, 226–228.

interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The duty of loyalty requires fiduciaries to make decisions with "complete and undivided loyalty" to participants and "with an eye single to the interests of the participants and beneficiaries[.]" *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984) (cleaned up); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). They cannot place "[their] own interests ahead of those of the Plan beneficiary." *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 6 (1st Cir. 2018) (quoting *Luitgaren v. Sun Life Assurance Co. of Canada*, 765 F.3d 59, 65 (1st Cir. 2014)).

Loyalty claims require factfinders to assess "whether the fiduciary's 'operative motive was to further its own interests.'" *Brotherston*, 907 F.3d at 40 (citation omitted). Making this assessment requires considering the "totality of circumstances." *Bunch v. W.R. Grace & Co*, 555 F.3d 1, 7 (1st Cir. 2009) (citing *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007)). When issues of "motive" and "intent are at play[,]"the Court must "proceed with caution and restraint." *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998)). Direct evidence of disloyalty is not required when "enough circumstantial evidence exists to create a genuine issue of material fact as to whether Defendants breached their duty of loyalty to the Plan." *Fuller*, 2019 U.S. Dist. LEXIS 187098, at *78.

Defendants suggest that Plaintiffs are "drawing a sinister conclusion based on nothing more than rank speculation," ECF 109 at 21 (marks and citation omitted), but there is sufficient circumstantial evidence to prove that Defendants placed their own interests ahead of those of Plan participants by maintaining the challenged funds in the Plan despite their high cost and underperformance. The banks that owned the two challenged funds were business partners with

Liberty Mutual, and they all enjoyed a mutually beneficial relationship while the challenged funds were in the Plan. ██████████████████████████████████████████████████

██████████████████████████████████████. SMF ¶ 162. ███████████████████████████

████████████████████████████████████████████████████████████████████

████████. *Id.* ¶ 190.

████████████████████████████████████████████████████████

█████████████████████████████████████████. *Id.* ¶¶ 180, 184. █████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████. *Id.* ¶¶

174 164, 167. ████████████████████████████████████████████

████████████████████████████████████. *Id.* ¶ 166. ████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████. *Id.* ¶¶

105–06, 109. A company's consideration of its own "bottom line" in another fiduciary decision "reasonably raises a question as to whether such considerations bled over into the [committee's] decision-making for the 401(k) [p]lan." *Fuller*, 2019 U.S. Dist. LEXIS 187098, at *78.

This circumstantial evidence presents factual disputes regarding whether Defendants maintained the Wells Fargo and Sterling funds in the Plan to benefit Liberty's business relationships. *See Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 596 (8th Cir. 2009) (if allegations that fiduciaries chose investments "to benefit the trustee at the expense of the participants" are substantiated, their process "would have been tainted by failure of effort, competence, or loyalty");

*Spano v. Boeing Co*., 125 F. Supp. 3d 848, 866 (S.D. Ill. 2014) ("[F]actual disputes remain whether Defendants abused their discretion in maintaining Plan options with unreasonably high administrative fees in order to benefit their corporate relationship with State Street/CitiStreet."). Viewing the totality of the evidence, the question of whether Defendants breached their duty of loyalty cannot be resolved at summary judgment. To answer the question involves a "fact-intensive inquiry[,]" *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994), and consideration of circumstantial evidence of Defendants' motives or intent. Because Defendants' motivation is "at play," their summary judgment motion should be denied. *Taite,* 999 F.3d at 93.

Defendants rely heavily on *Troudt v. Oracle Corp.*, No. 16-175, 2019 U.S. Dist. LEXIS 33017 (D. Colo. Mar. 1, 2019), but the facts there are distinguishable. In *Troudt*, the court held that evidence the fiduciaries were aware of the relationship was insufficient to create an inference of a disloyal motive. *Id.* at 10. ██████████████████████████████████

████████████████████████████████████████████████████████████████. *See* SMF ¶¶ 105–06, 109. ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. *See id.* ¶ 166. ████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *See id.* ¶¶ 163, 184.

The evidence further distinguishes this case from *Falberg v. Goldman Sachs Grp., Inc.*, No. 22-2689, 2024 U.S. App. LEXIS 3418 (2d Cir. Feb. 14, 2024), an unreported summary judgment order with no precedential value that was limited to its facts. *Id. Falberg* held that the plaintiff "failed to submit evidence sufficient to create a dispute." *Id.* Here, Plaintiffs submit significant evidence of disloyal motive, including ██████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

*See supra* at 18.

### B.    Plaintiffs' interrogatory responses are immaterial.

Defendants point to Plaintiffs' interrogatory responses as conclusive evidence that "there is no evidence at *all*" of improper motive to advance Liberty Mutual's business relationships with Wells Fargo or BB&T. ECF 109 at 17–18. But Defendants propounded contention interrogatories when fact discovery was not yet complete and while refusing to produce materials related to their relationships with Wells Fargo and BB&T. ECF 111-1 at 7, 8 (Nos. 5 and 7) (served August 28, 2023). In light of the "preliminary stages" of discovery, Plaintiffs identified the "essential or principal facts in support of their contentions" with a list of cited supporting documents. *Id.* at 3–4 (No. 1). Plaintiffs objected to the interrogatories as overly broad to the extent that they seek all facts and evidence in support of their claims or recite information discussed in depositions. SMF ¶¶ 89, 91, 93. Plaintiffs also incorporated by reference all deposition testimony in the case. *Id.*

Defendants never raised any issue regarding the adequacy of Plaintiffs' responses. *Id.* Defendants have never requested to meet and confer regarding these objections. *Id.* Due to Defendants' resistance and delays, complete corporate representative testimony about the relationships with Wells Fargo and BB&T did not take place until after the close of fact discovery and after all expert reports had been exchanged. *Id.* Defendants should not be allowed to avoid the evidence of their disloyal acts by their own delay tactics. Finally, nearly all the evidence cited in Plaintiffs' statement of additional material facts regarding the loyalty claims was previously disclosed in either Plaintiffs' interrogatory responses, deposition testimony from Defendants' corporate representatives or executives, or documents discussed during depositions of Defendants'

witnesses. *Id.* ¶¶ 105–06, 109, 162–64, 165–66, 189–91 (citing deposition testimony from Defendants' witnesses); *id.* ¶¶ 109, 162–64, 189–91 (citing documents discussed in depositions); *id.* ¶¶ 165–66, 191 (citing documents disclosed in Plaintiffs' interrogatory responses). Therefore, Defendants were otherwise made aware of this evidence during the discovery process and there was no need to supplement Plaintiffs' interrogatory responses. Fed. R. Evid. 26(e)(1)(A).

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion for summary judgment.

September 3, 2024                           Respectfully submitted,

/s/ Nathan D. Stump
Nathan D. Stump
Bar Nos. 71641 (MO), 90169 (PA),
70315 (VA), 490342 (DC)
Kurt C. Struckhoff (*pro hac vice*)
Joel D. Rohlf (*pro hac vice*)
SCHLICHTER BOGARD LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Fax: (314) 621-5934
nstump@uselaws.com
kstruckhoff@uselaws.com
jrohlf@uselaws.com

*Lead Counsel for Plaintiffs*

Robert T. Naumes, BBO # 367660
Christopher Naumes, BBO # 671701
Naumes Law Group
2 Granite Ave, #425
Milton, Massachusetts 02186
617-227-8444
617-696-2437 (fax)
robert@naumeslaw.com
christopher@naumeslaw.com

*Local Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 3, 2024.

/s/ Nathan D. Stump