UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YUSUF AHMED, et al.,                          :

              Plaintiffs,        :   Civil Action

   v.                                        No. 20-30056-MGM

                        :

LIBERTY MUTUAL GROUP INC., et al.,     :   **PUBLICLY FILED**
                                        **<u>REDACTED VERSION</u>**

           Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## <u>IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

James R. Carroll
Michael S. Hines
Mary E. Grinman
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

*Counsel for Defendants*
*Liberty Mutual Group Inc. and*
Dated:  September 17, 2024        *the 401(k) Plan Administrative Committee*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS .....................................2

ARGUMENT .................................................................................................................3

I.    DEFENDANTS ARE ENTITLED TO SUMMARY
      JUDGMENT BECAUSE PLAINTIFFS CANNOT ESTABLISH LOSS .........................3

      A.    Plaintiffs Cannot Establish Loss Through
            Unreliable And Inadmissible Expert Testimony .......................................4

      B.    Plaintiffs' "Other Evidence" Cannot Establish Loss ................................4

            1.    Plaintiffs' Recordkeeping And Managed
                  Account Evidence Cannot Establish Loss ......................................4

            2.    Plaintiffs Do Not Even Attempt To Offer
                  "Other Evidence" Of Loss Concerning The Challenged Funds ..........6

II.   THE OPPOSITION CONFIRMS THAT DEFENDANTS ARE ENTITLED
      TO SUMMARY JUDGMENT ON PLAINTIFFS' DISLOYALTY CLAIMS ..................7

      A.    There Is No Genuine Dispute That No One At Liberty Mutual Considered
            Business Relationships With Insurance Brokers In Making Plan Decisions...........7

      B.    Plaintiffs' Opposition Fails To
            Identify Any Evidence Of Disloyal Conduct ...........................................10

            1.    Plaintiffs' Opposition Confirms That There Is No Evidence
                  Of Disloyal Conduct As To The Sterling Mid Cap Value Fund...............11

            2.    Plaintiffs' Opposition Confirms That
                  There Is No Evidence Of Disloyal Conduct As To
                  The Wells Fargo US Government Money Market Fund ...........................11

            3.    Plaintiffs' Interrogatory Responses
                  Accurately Identify No Evidence Of Disloyalty.......................................13

      C.    Plaintiffs' Opposition Fails To Distinguish Defendants' Legal Authorities .........13

      D.    Plaintiffs' Opposition Relies On Legal
            Authorities That Are Inapposite Or Support Defendants' Arguments .................14

CONCLUSION.............................................................................................................15

i

# TABLE OF AUTHORITIES

**CASES**                                                                                               **PAGE(S)**

*Braden v. Wal-Mart Stores, Inc.*,
 588 F.3d 585 (8th Cir. 2009) ........................................................................................14

*Brotherston v. Putnam Investments, LLC*,
 907 F.3d 17 (1st Cir. 2018) ......................................................................................7, 10

*Cates v. Trustees of Columbia University*,
 No. 1:16-cv-06524(GBD) (SDA), 2019 WL 8955333 (S.D.N.Y. Oct. 25, 2019)...............5

*Ellis v. Fidelity Management Trust Co.*,
 883 F.3d 1 (1st Cir. 2018)............................................................................................7

*Falberg v. Goldman Sachs Group, Inc.*,
 No. 22-2689-cv, 2024 WL 619297 (2d Cir. Feb. 14, 2024) ........................................13, 14

*Fuller v. SunTrust Banks*,
 No. 1:11-CV-784-ODE, 2019 WL 5448206 (N.D. Ga. Oct. 3, 2019)..............................15

*Munro v. University of Southern California*,
 No. 2:16-CV-06191-VAP-Ex, 2023 WL 2558415 (C.D. Cal. Jan. 19, 2023)....................5

*Roth v. Sawyer-Cleator Lumber Co.*,
 16 F.3d 915 (8th Cir. 1994) ........................................................................................14

*Spano v. The Boeing Company*,
 125 F. Supp. 3d 848 (S.D. Ill. 2014) ............................................................................15

*Taite v. Bridgewater State University*,
 999 F.3d 86 (1st Cir. 2021)..........................................................................................14

*Troudt v. Oracle Corp.*,
 No. 16-cv-00175-REB-SKC, 2019 WL 1006019 (D. Colo. Mar. 1, 2019)................11, 13

*Tussey v. ABB, Inc.*,
 No. 2:06-CV-04305-NKL, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012), *aff'd in
 part, vacated in part, and rev'd in part*, 746 F.3d 327 (8th Cir. 2014) ..............................5

*Vellali v. Yale University*,
 No. 3:16-CV-1345(AWT), 2022 WL 13684612 (D. Conn. Oct. 21, 2022) ......................5

## <u>STATUTES & RULES</u>                                           <u>PAGE(S)</u>

D. Mass. Local Rule 56.1................................................................................................2

Federal Rule of Evidence 702..........................................................................................4

## PRELIMINARY STATEMENT[1]

Defendants' motion for summary judgment seeks relief on two narrow grounds:
(1) Plaintiffs have not and cannot establish that they have suffered any losses and (2) Plaintiffs
cannot establish that Defendants acted disloyally. Rather than address those two issues directly,
Plaintiffs' Opposition attempts to manufacture factual disputes by attaching and referencing
thousands of pages of extrinsic evidence that is irrelevant to the dispositive legal questions at
issue. But at the end of the day, the Opposition simply does not refute that Defendants are
entitled to Summary Judgment on both grounds.

*First*, the Parties agree that to prove loss, "Plaintiffs 'must provide evidence of a
'suitable benchmark' against which loss [could] be measured." (Opp. at 11.) Plaintiffs do not
have any evidence of "suitable benchmarks." Rather than providing such "suitable benchmarks,"
Plaintiffs' three purported experts provide arbitrary benchmarks based on unreliable
methodologies. Mr. Hare's methodology involves numerous steps, none of them explained.
Moreover, his methodology changed drastically, without explanation, between November 2023
and March 2024, resulting in an 8X increase in damage calculations. Mr. Stone's methodology
is equally unexplained and relies almost exclusively on his limited memory of his industry
experience. As detailed in Defendants' accompanying *Daubert* briefing, all of Plaintiffs'
experts' loss calculations should be excluded, and therefore resolution of Defendants' motions to

---

[1]  Capitalized terms used herein have the same meaning as in Defendants' Memorandum Of
Law In Support Of Their Motion For Summary Judgment (ECF No. 109) (the "Opening Brief,"
cited as "Opening Br. at __"). Plaintiffs' Memorandum In Opposition To Defendants' Motion
For Summary Judgment (ECF No. 123) is referred to as the "Opposition" (cited as "Opp. at
__."). Citations To "Rohlf Decl. Ex. __" refer to the Declaration of Joel D. Rohlf (ECF No.
125). Citations to "SMF" refer to Defendants' Local Rule 56.1 Statement Of Material Facts As
To Which There Is No Genuine Issue To Be Tried (ECF No. 110). Citations to "SAMF" refer to
Plaintiffs' Statement of Additional Material Facts (ECF No. 124).

exclude also resolves this motion. Plaintiffs assert that even without their experts, they can still establish loss. But in the absence of admissible expert testimony, "suitable benchmarks" become arbitrary benchmarks, which are insufficient to establish loss.

*Second*, regarding Plaintiffs' disloyalty claim, although Plaintiffs attach 100 exhibits to their Opposition, none of them even *hint* that Defendants' "operative motive" in retaining the Challenged Funds was to further Liberty Mutual's own interests. Unable to find any evidence of disloyalty with respect to the Challenged Funds, Plaintiffs instead select two innocuous emails about the Plan's recordkeeper change and inject them with nefarious intent. Plaintiffs' creative reading of those two emails cannot be reconciled with the face of the documents, and is irrelevant to their claim of disloyalty in any event. The only other fact that Plaintiffs cite in connection with their disloyalty allegations is that Liberty Mutual had a business relationship with both Wells Fargo and BB&T. The fact that two large corporations have business interactions can hardly be the entire basis for a claim of disloyalty.

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

Plaintiffs' Opposition overwhelms the Court with 100 superfluous exhibits clocking in at over 4,600 pages to create the illusion that summary judgment is inappropriate. Plaintiffs also submit over 100 "Statement[s] of Additional Material Facts" which are anything but. Defendants' summary judgment motion concerns two issues: loss and disloyalty. Yet Plaintiffs' Statement of Additional Facts includes headings like, "In violation of their duty of prudence, Defendants . . ." and "Defendants' Imprudent Retention of the Wells Fargo Money Market Fund" -- issues wholly irrelevant to Defendants' motion. (*See* SAMF at 37, 49, 59.) Many of the "additional material facts" are a reformatted version of the expert report submitted by Plaintiffs' expert Donald C. Stone. (*See, e.g., id.* ¶¶ 114-131, 137-146, 152-154, 194-199.) Others are duplicative of statements in Defendants' Rule 56.1 statement and cannot

reasonably be considered "additional" or a fact "as to which it is contended that there exists a genuine issue to be tried." D. Mass. Local R. 56.1; *compare, e.g.*, SMF ¶ 45 ("The Sterling Mid Cap Value Fund was a separately managed account first available to Plan participants as a standalone investment option in January 2013."), *with* SAMF ¶ 157 ("The Sterling Mid-Cap Value Fund ("Sterling MCV"), a separately managed account, was a standalone investment option in the Plan's investment lineup."). Perhaps most troubling are the duplicative statements that Plaintiffs identify as "Additional Material Facts," but which Plaintiffs *disputed* in Defendants' Rule 56.1 statement as not "material to Defendants' motion for summary judgment." *Compare, e.g.*, Response to SMF ¶ 18 (disputing as not material the statement that "[t]he Plan's investment options have various investment strategies and risk profiles, including actively managed and passively managed investment products, as well as a mix of collective trusts, separately managed accounts, and mutual funds"), *with* SAMF ¶ 155 ("In 2014 and early 2015, the Plan offered to participants an investment lineup consisting of a money market fund, actively managed equity options, passively managed equity options, a fixed income fund, a custom target date fund suite, and three pre-mixed portfolios."). None of Plaintiffs' so-called "Additional Material Facts" preclude summary judgment. This transparent and procedurally improper attempt to manufacture factual disputes is a waste of judicial and litigant resources.

## ARGUMENT

### I.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT ESTABLISH LOSS

As Plaintiffs acknowledge, "[t]o meet their burden" to prove loss, they "'must provide evidence of a 'suitable benchmark' against which loss [could] be measured." (Opp. at 11.) Plaintiffs' only evidence of a "suitable benchmark" comes from the testimony of unreliable

and inadmissible experts. As a result, Plaintiffs cannot establish loss, and this case should be dismissed.

### A. Plaintiffs Cannot Establish Loss Through Unreliable And Inadmissible Expert Testimony

Plaintiffs assert that "[t]he reliable opinions of [their] qualified experts preclude summary judgment." (Opp. at 12.) But the opinions of those purported experts are not reliable. Mr. Hare has created a methodology for selecting alternative investments that looks like a quantitative financial model, but is actually replete with arbitrary and unexplained choices and results in damages that are *eight times higher* than a different model that he previously submitted in this case. (*See* Defendants' Proposed Reply Memorandum of Law In Further Support Of Their Motions To Exclude at 4-10, filed herewith.) Mr. Stone, for his part, has no methodology at all. He simply relies on his "experience," most of which he can't remember, to conjure a numerical "market rate" for recordkeeping and managed account fees and expense account balances. (*See id.* at 10-16.) None of Plaintiffs' experts meet the basic reliability standards of Federal Rule of Evidence 702, and their testimony should therefore be excluded. Without their testimony, Plaintiffs cannot establish loss, and that deficiency alone warrants summary judgment.

### B. Plaintiffs' "Other Evidence" Cannot Establish Loss

Plaintiffs assert that, separate from their proffered expert testimony, the record contains four other forms of evidence to support Plaintiffs' loss allegations. (Opp. at 13-14.) None of the evidence Plaintiffs identify establishes loss.

#### 1. Plaintiffs' Recordkeeping And Managed Account Evidence Cannot Establish Loss

*First*, Plaintiffs suggest that they can establish loss by introducing "[p]ublicly available data" for "comparable plans" that paid less for recordkeeping and managed account

4

services.  (*Id.* at 13.)  But Plaintiffs simultaneously concede that "[f]or fee claims, loss is

established if Plaintiffs can both prove the charged fees were imprudent *and* show a prudent

alternative." (*Id.* at 12 (emphasis added).)  Plaintiffs do not explain how, in the absence of

expert testimony, they could establish that publicly available fees paid by other plans were

prudent. *See Munro v. Univ. of S. Cal.*, No. 2:16-CV-06191-VAP-Ex, 2023 WL 2558415, at *2

(C.D. Cal. Jan. 19, 2023) (rejecting the identical argument and declining to permit proof of loss

through publicly available data after exclusion of plaintiffs' experts, holding that "a comparison

with 'comparable' index funds . . . could not be made without expert testimony" and that "the

designation of an index fund as a 'prudent' and 'comparable' alternative to some of the [p]lans'

investment options is not" judicially noticeable).[2]

     *Second*, Plaintiffs assert that ███████████████████████████

██████████████████████████████████ and characterize that as

evidence of loss.  (Opp. at 13.)  But Plaintiffs do not explain how ██████████████

████████████████████████████ establishes loss.

Moreover, Plaintiffs concede that to establish loss, they would have to "both prove the charged

fees were imprudent and show a prudent alternative." (*Id.* at 12.)  Plaintiffs do not explain how

they can do so without expert testimony.

---

[2]    Plaintiffs' cases are inapposite because none of them involve the exclusion of experts. *See Vellali v. Yale Univ.*, No. 3:16-cv-1345(AWT), 2022 WL 13684612, at *14 (D. Conn. Oct. 21, 2022) (observing that plaintiffs "disclosed expert testimony" and that "the court has not excluded the expert testimony"); *Cates v. Trs. of Columbia Univ.*, No. 1:16-cv-06524 (GBD) (SDA), 2019 WL 8955333, at *11 (S.D.N.Y. Oct. 25, 2019) (observing that plaintiffs cite the opinions of two experts in support of their loss arguments); *Tussey v. ABB, Inc.*, No. 2:06-CV-04305-NKL, 2012 WL 1113291, at *36 (W.D. Mo. Mar. 31, 2012) (observing that "[p]laintiffs rely primarily on [] expert testimony"), *aff'd in part, vacated in part, and rev'd in part*, 746 F.3d 327 (8th Cir. 2014).

*Third*, Plaintiffs state that a purportedly ███████████████████████ ████████████████████████████████████ is evidence of loss because it shows that comparator plans paid less for recordkeeping services. (*Id.* at 13.) Once again, without expert testimony, there is nobody who can opine that the comparator plans at issue are a "prudent alternative." (*Id.* at 12.) Plaintiffs cannot establish loss without that component.

*Fourth*, Plaintiffs state that ████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████ (*Id.* at 13; Response to SAMF ¶ 112.) Even if this were true -- and it is not -- ████████████████████████████████████ ████████████████████████████████████████████████ (*See* Response to SAMF ¶ 147.) In fact, Mr. Claudio testified that, █████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████ (*Id.*) Once again, without expert testimony, Plaintiffs cannot prove that the Plan paid "too much" for managed account services.

### 2.    Plaintiffs Do Not Even Attempt To Offer "Other Evidence" Of Loss Concerning The Challenged Funds

None of Plaintiffs' four categories of purported loss evidence concern Plaintiffs' Challenged Fund allegations. Therefore, even if Plaintiffs were permitted to introduce the proffered evidence to support their theory of loss as to the Plan's recordkeeping and managed account services, summary judgment is nevertheless appropriate on Count II (the Sterling Mid Cap Value Fund) and Count III (the Wells Fargo US Government Money Market Fund).[3]

---

[3]    Plaintiffs argue that they are not precluded from offering evidence that was not disclosed in their interrogatory responses. (Opp. at 14-15.) Plaintiffs miss the point. There is no evidence
*(cont'd)*

## II.    THE OPPOSITION CONFIRMS THAT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' DISLOYALTY CLAIMS

A fiduciary breaches ERISA's duty of loyalty if "the fiduciary's '*operative motive* was to further its own interests.'" *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 40 (1st Cir. 2018) (emphasis added) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 6 (1st Cir. 2018)); (*see also* Opp. at 16). Plaintiffs' Opposition confirms that there is no evidence that Defendants' "operative motive" in retaining the Sterling Mid Cap Value Fund or the Wells Fargo US Government Money Market Fund was to "further" Liberty Mutual's own interests. *See Brotherston*, 907 F.3d at 40.

### A.    There Is No Genuine Dispute That No One At Liberty Mutual Considered Business Relationships With Insurance Brokers In Making Plan Decisions

Plaintiffs assert, *for the first time*, that ███████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ██████████████ (Opp. at 17.) Notably, this has nothing to do with the Challenged Funds that form the basis of Plaintiffs' disloyalty claims. To support this erroneous and misleading accusation, Plaintiffs cite to two June 2017 emails from Thomas Oksanen, Liberty Mutual's former Vice President and Manager of Corporate Benefits and Retirement Committee secretary. (SAMF ¶ 109; Response to SAMF ¶ 109.) Both emails concern the Plan's 2018 recordkeeper switch from Aon Hewitt to Fidelity. (*See* Rohlf Decl. Ex. P-22 (June 16, 2017 email from T.

---

of loss in the record other than through Plaintiffs' proffered experts. Plaintiffs' responses to Defendants interrogatories are in accord: Plaintiffs did not then, and do not now, identify any evidence of loss other than their expert reports. That said, Plaintiffs' interpretation of Defendants' interrogatories is erroneous. Defendants asked Plaintiffs to "identify all losses, damages and/or equitable restitution claimed." (*Id.* at 14.) That request plainly encompasses both losses *and* damages. (*Contra* Opp. at 15.)

Oksanen to D. Langwell); Ex. P-23 (June 21, 2017 email from T. Oksanen to N. Bhalla

Johnson).)  Plaintiffs (mis)characterize those emails as Mr. Oksanen ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ (Opp. at 3.)  On the face of the emails,

these characterizations are demonstrably wrong.

████████████████████████████████████████████████████

████████████████████████████ (Response to SAMF ¶ 109).)  At the time,

Aon Hewitt was the Plan's recordkeeper.  (SMF ¶ 35.) ████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████ (Response to SAMF

¶ 109.) ████████████████████████████████████████████

████████████████████████████████████ (*Id.*)

On June 16, 2017, Mr. Oksanen sent the first of two emails that Plaintiffs cite.

(Opp. at 6.) █████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ (Response to SAMF ¶ 109.)  Mr. Oksanen wrote,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

(*Id.*) ███████████████████████████████████████████████

████████████████ (*See id.*) ████████████████████████████

8



(*Id.*) As Mr. Oksanen explained at his deposition, ███████████████ (SAMF ¶ 106.) It was Mr. Oksanen's ██████████████████████████ (Response to SAMF ¶ 109.) He explained that as a result, ██████████████████████ (*Id.*)[4]

On June 21, 2017, Mr. Oksanen sent to Neeti Bhalla Johnson, who was Liberty Mutual's Head of Investments and also a Retirement Committee member at the time, the second of the two cited emails. (Rohlf Decl. Ex. P-23 (June 21, 2017 email from T. Oksanen to N. Bhalla Johnson).) ███████████████

(*Id.*; Response to SAMF ¶ 109.) Mr. Oksanen

(Rohlf Decl. Ex. P-23 (June 21, 2017 email from T. Oksanen to N. Bhalla Johnson).) ██████

---

[4]    Mr. Oksanen elaborated that he emailed Mr. Langwell to provide "a status update" on "the RFP process" because Mr. Langwell, as Liberty Mutual's CFO, "is a person you want to keep informed and updated on major activities." (Response to SAMF ¶ 109.) These "major activities" include updates to the Plan, because "benefits is a significant expenditure" and there are "risk issues associated with benefits plans that you generally want to keep your core business partners informed of." (*Id.*) Mr. Oksanen "consider[ed]" the CFO one of those "critical business partner[s]." (*Id.*)



*(Id.)*

As evident from the emails, Mr. Oksanen

*(See* Opp. at 3, 17.) *(See* Response to SAMF ¶ 109).)

(Opp. at 3 (emphasis added).)

(Response to SAMF ¶ 109).)

Plaintiffs' reliance on these two emails as their only "evidence" of purported disloyalty all but confirms the glaring absence of any actual disloyalty.

**B.** **Plaintiffs' Opposition Fails To Identify Any Evidence Of Disloyal Conduct**

Plaintiffs' remaining "evidence" of disloyalty fares no better. As Plaintiffs recognize, "[l]oyalty claims require factfinders to assess 'whether the fiduciary's 'operative motive was to further its own interests.'" (Opp. at 16 (quoting *Brotherston*, 907 F.3d at 40).) That a plan's sponsor has a business relationship with a fund's manager is not, without more, evidence that plan fiduciaries retained a fund with the operative motive of furthering a business

10

relationship. *See Troudt v. Oracle Corp.*, No. 16-cv-00175-REB-SKC, 2019 WL 1006019, at

*10 (D. Colo. Mar. 1, 2019). There is no dispute that Liberty Mutual (one of the world's largest

insurance companies) had business relationships with two of the world's largest banks, Branch

Banking and Trust ("BB&T") and Wells Fargo Company ("Wells Fargo").

### 1. Plaintiffs' Opposition Confirms That There Is No Evidence Of Disloyal Conduct As To The Sterling Mid Cap Value Fund

The only fact that Plaintiffs cite in support of their Sterling Mid Cap Value Fund

disloyalty allegations is that ██████████████████████████████████████

███████████████████████████████████ (*See* Opp. at 17.) Notably,

████████████████████████████████████████████████████

████████████████████████████████████████████████ (SAMF

¶ 190.) ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ (Response to SAMF ¶¶ 187,

190.) Thus, Plaintiffs' only "evidence" of disloyalty as to the Sterling Mid Cap Value Fund is

the existence of a business relationship between Liberty Mutual and BB&T. That is insufficient.

### 2. Plaintiffs' Opposition Confirms That There Is No Evidence Of Disloyal Conduct As To The Wells Fargo US Government Money Market Fund

Plaintiffs' "evidence" of disloyalty with respect to the Wells Fargo US

Government Money Market Fund fares no better. Plaintiffs state that Defendants ████████

████████████████████████████████████████████████████

██████████████████ (Opp. at 17.) That, of course, is wrong. Plaintiffs concede that

███████████████████████████████████████████

11

████████████████████████ (SAMF ¶ 183.)  Plaintiffs also argue that the Plan did not

explore removal of the Wells Fargo US Government Money Market Fund until 2020, but they

ignore that in 2017, the Retirement Committee made changes which drastically reduced the

percentage of the Plan's assets invested in the fund.  (Opening Br. at 15.)  Equally unavailing is

Plaintiffs' assertion that ████████████████████████████████████████████████

████████████████████████████████ (Opp. at 6.)  Not only does this

evidence fail to address disloyalty, but ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

(Response to SAMF ¶ 180.)  In all events, even if Plaintiffs' assertions were true -- and they are

not -- they are irrelevant to the issue of disloyal conduct.

Plaintiffs also attempt to manufacture a factual dispute by ██████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████ (Opp. at 17.)  Correlation does not imply causation, and Plaintiffs'

speculation is not evidence that Defendants ████████████████████████████

████████████████████████████████████████████

████████████████████████████ Plaintiffs also observe that ██████████

████████████████████████████████████████████ (*Id.*)  But

████████████████████████████████████████████

████████████████████████████████████████████████

All that shows is what everyone already knows:  Liberty Mutual had a business relationship with

Wells Fargo.  It does not show that Defendants' operative motive in retaining the Wells Fargo US Government Money Market Fund was furthering Liberty Mutual's interests.

### 3.    Plaintiffs' Interrogatory Responses Accurately Identify No Evidence Of Disloyalty

Plaintiffs take issue with Defendants' reliance on Plaintiffs' own interrogatory responses.  (Opp. at 19-20.)  Defendants asked Plaintiffs to state their bases for their contention that Defendants retained the Challenged Funds to further Liberty Mutual's business relationships, and Plaintiffs did not identify any evidence.  (*See* Opening Br. at 13.)  Contrary to Plaintiffs' argument, Defendants do not contest "the adequacy of Plaintiffs' responses."  (Opp. at 19.)  In fact, Defendants are confident that Plaintiffs have nothing more to disclose because there is not any evidence of disloyalty in the record.  (Opening Br. at 15.)  Rather, as explained in Defendants' Opening Brief, Plaintiffs' interrogatory responses demonstrate Plaintiffs' "lack of evidence" that Defendants disloyally retained the Challenged Funds.  (*Id.*)  And nothing in Plaintiffs' Opposition changes that:  Plaintiffs cite to no evidence (whether or not contained in interrogatory responses) that Defendants' operative motive in retaining the Challenged Funds was to further Liberty Mutual's business interests.

### C.    Plaintiffs' Opposition Fails To Distinguish Defendants' Legal Authorities

Contrary to Plaintiffs' assertions, this case is squarely within both *Troudt v. Oracle Corp.* and *Falberg v. Goldman Sachs Group, Inc.*, No. 22-2689-cv, 2024 WL 619297 (2d Cir. Feb. 14, 2024), in which courts granted or affirmed the grant of summary judgment to defendants on ERISA disloyalty claims.  (*See* Opening Br. at 15-17.)  Similar to *Troudt*, the "evidence [P]laintiffs have adduced shows" that Defendants "were 'aware' of" Liberty Mutual's business relationship with Wells Fargo, but there is "no evidence of any directives, suspect or otherwise, flowing" from Liberty Mutual executives to Defendants.  2019 WL 1006019, at *10.

This is "insufficient to create a genuine dispute [of] material fact for trial." *Id.* And like *Falberg*, "[a]s an overarching matter, [Plaintiffs] failed to introduce evidence that Defendants retained the Challenged Funds in the Plan for the purpose of advancing their interests; indeed, the evidence in the record suggests otherwise." 2024 WL 619297, at *2. Plaintiffs' Opposition also ignores that, as in *Falberg*, Defendants hired an independent investment advisor to evaluate the Challenged Funds and "there is no evidence in the record that either the independent investment advisor or the [Retirement] Committee members had any personal incentive to favor the Challenged Funds." *Id.*

### D.    Plaintiffs' Opposition Relies On Legal Authorities That Are Inapposite Or Support Defendants' Arguments

Although the Opposition cites 43 cases, Plaintiffs principally rely on only five to support their claim that a genuine dispute of material fact exists as to whether Defendants retained the Challenged Funds "to benefit Liberty [Mutual's] business relationships." (Opp. at 17-18.) Three of the cases are entirely irrelevant:

- *Taite v. Bridgewater State University.*, 999 F.3d 86 (1st Cir. 2021) (cited at Opp. at 18), involved Title VII discrimination claims, not ERISA breach of fiduciary duty claims.

- *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915 (8th Cir. 1994) (cited at Opp. at 18), did not involve ERISA breach of loyalty claims, but rather, breach of prudence claims.

- *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) (cited at Opp. at 17) involved ERISA breach of loyalty claims, but at the motion to dismiss stage. The Eighth Circuit reversed the dismissal of the disloyalty claims because, if the plaintiffs' allegations that funds "were chosen to benefit the trustee at the expense of the participants" were "substantiated," then the defendants would have breached their fiduciary duties. *Id.* at 596. That is undoubtedly true, but unhelpful to Plaintiffs where, as here and explained above, they have failed to put forth evidence that could substantiate their loyalty claims.

The remaining two cases support Defendants' motion. These cases illustrate the type of evidence -- which is missing here -- that would be sufficient to establish a genuine dispute of material fact on disloyalty claims:

- In *Spano v. Boeing Co.*, 125 F. Supp. 3d 848 (S.D. Ill. 2014) (cited at Opp. at 18), the court denied the defendants' motion for summary judgment on claims that the defendants breached their fiduciary duty of loyalty by making plan decisions to "benefit [the] [d]efendants' corporate relationship with" a bank that was also the plan's recordkeeper. *Id.* at 854. To support those claims, the plaintiffs pointed to deposition testimony that "[t]he chief investment officer said that he would prefer to hire a manager that, you know, was owned by a bank to, you know, help with credit facility for the Boeing Company." *Id.* at 868 (internal quotation marks omitted).

- In *Fuller v. SunTrust Banks*, No. 1:11-CV-784-ODE, 2019 WL 5448206 (N.D. Ga. Oct. 3, 2019) (cited at Opp. at 16-17), the court denied the defendants' motion for summary judgment on claims that the defendants breached their fiduciary duty of loyalty by failing to properly monitor and remove proprietary funds from the company's 401(k) plan. *Id.* at *2. The plaintiffs identified (1) evidence that the defendants, in deciding whether to remove a non-proprietary fund, noted "[s]ome concern expressed if we immediately take action on a non-proprietary fund as compared to the drawn out process taken with our own funds"; and (2) a PowerPoint presented to the defendants in connection with another benefits plan which stated that the "[s]hift of assets to outside[, or non-proprietary,] funds represents tangible loss of revenue to the [c]ompany, based on expense ratios of funds utilized." *Id.* at *24 (first, second, and third alterations in original).

In contrast, Plaintiffs' "evidence" of disloyalty is only that Liberty Mutual had business relationships with BB&T and Wells Fargo.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' Opening Brief, the Court should grant summary judgment in favor of Defendants.

Dated: September 17, 2024
         Boston, Massachusetts

Respectfully submitted,

/s/ *Michael S. Hines*
James R. Carroll (BBO # 554426)
Michael S. Hines (BBO # 653943)
Mary E. Grinman (BBO # 694097)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

*Counsel for Defendants*
*Liberty Mutual Group Inc. and*
*the 401(k) Plan Administrative Committee*

## CERTIFICATE OF SERVICE

I, Mary E. Grinman, hereby certify that on September 17, 2024, a true copy of the unredacted version of the foregoing document was served by email upon all counsel of record for the Plaintiffs as follows:

Jerome J. Schlichter
Andrew D. Schlichter
Joel Rohlf
Kurt C. Struckhoff
Nathan Stump
Alexander L. Braitberg
Schlichter, Bogard & Denton, LLP
100 S. 4th Street, Suite 1200
St. Louis, MO 63102
jschlichter@uselaws.com
aschlichter@uselaws.com
jrohlf@uselaws.com
kstruckhoff@uselaws.com
nstump@uselaws.com
abraitberg@uselaws.com

Christopher C. Naumes
The Naumes Law Group, LLC
2 Granite Avenue, Suite 245
Suite 620
Milton, MA 02186
christopher@naumeslaw.com

Dated:  September 17, 2024

/s/ *Mary E. Grinman*
Mary E. Grinman