**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YUSUF AHMED, et al., | |
| *Plaintiffs,* | |
| v. | No. 3:20-cv-30056-MGM |
| LIBERTY MUTUAL GROUP, INC., et al., | |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Table of Contents**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

    I.    Plaintiffs' Claims and Procedural History .......................................................................... 1

    II.   Settlement Negotiations ..................................................................................................... 4

    III.  Terms of the Proposed Settlement .................................................................................... 4

        A.   Monetary Benefits to Class Members ....................................................................... 4

        B.   Cost and Expenses Associated with Settlement ........................................................ 4

            1.   Administrative Expenses ................................................................................. 5

            2.   Service Awards ................................................................................................ 5

            3.   Attorneys' Fees and Costs .............................................................................. 6

ARGUMENT ................................................................................................................................. 7

    I.    The Court should grant preliminary approval because all relevant factors are met. ........ 8

        A.   The Class Representatives and Counsel adequately represented the Class............... 8

        B.   The terms of the Settlement were negotiated at arm's length without collusion. ... 10

        C.   The Settlement provides very substantial relief for the Class. ................................ 11

        D.   Class Members will be treated favorably under the Plan of Allocation. .................. 14

    II.   The Court should approve the proposed notice to Class Members. .............................. 15

CONCLUSION ............................................................................................................................ 17

## Table of Authorities

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, Dkt. No. 497 (S.D. Ill. Apr. 14, 2015) ................................................................... 12

*Bettencourt v. Jeanne D'Arc Credit Union*,
No. 17-12548-NMG, 2020 U.S. Dist. LEXIS 106469 (D. Mass. June 17, 2020) ...................... 5

*Binder v. PPL Corp.*,
No. 22-133, Dkt. No. 162-2 (E.D. Pa. Mar. 7, 2025) ............................................................... 14

*Brown v. Colegio de Abogados de P.R.*,
613 F.3d 44 (1st Cir. 2010) ........................................................................................................ 15

*Cunningham v. Cornell Univ.*,
640 U.S. 693 (2025) .................................................................................................................... 10

*Cure v. Factory Mut. Ins. Co.*,
No. 23-12399-JEK, 2025 U.S. Dist. LEXIS 201094
(D. Mass. Oct. 10, 2025) ............................................................................. 8, 9, 10, 11, 12, 17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................................... 16

*Ford v. Takeda Pharms. U.S.A., Inc.*,
No. 21-10090-WGY, 2023 U.S. Dist. LEXIS 93286 (D. Mass. Mar. 31, 2023) ............ 6, 10, 14

*Ford v. Takeda Pharms. U.S.A., Inc.*,
No. 21-10090-WGY, Dkt. No. 95-1 (D. Mass. Nov. 14, 2022) ................................................. 13

*Giotto v. United States Dep't of Homeland Sec.*,
762 F. Supp. 3d 127 (D.N.H. 2025) ........................................................................................... 11

*Gordan v. Mass. Mut. Life. Ins. Co.*,
No. 13-30184-MAP, 2016 U.S. Dist. LEXIS 195935 (D. Mass. Nov. 3, 2016) .. 7, 9, 10, 13, 14

*Hochstadt v. Boston Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ......................................................................................... 7, 8

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) .................................................................................................................... 10

*In re Asacol Antitrust Litig.*,
No. 15-12730-DJC, 2017 U.S. Dist. LEXIS 221904 (D. Mass. Dec. 7, 2017) .......................... 5

*In re Fid./Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) ........................................................................................................ 6

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004) ....................................................................................... 5, 8

*In re Neurontin Mktg. & Sales Practices Litig.*,
58 F. Supp. 3d 167 (D. Mass. 2014) ............................................................................................ 6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) ...................................................................................... 9, 10

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  630 F. Supp. 3d 241 (D. Mass. 2022) ............................................................................ 5

*In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*,
  No. 01-12239-WGY, 2004 U.S. Dist. LEXIS 29834 (D. Mass. Nov. 24, 2004) ....................... 5

*Jackson v. New England Biolabs, Inc.*,
  No. 23-12208-RGS, 2025 U.S. Dist. LEXIS 151966 (D. Mass. Aug. 7, 2025) ......................... 6

*Kelly v. Johns Hopkins Univ.*,
  No. 16-2835, 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ...................................... 14

*Kruger v. Novant Health, Inc.*,
  No. 14-208, 2016 U.S. Dist. LEXIS 193107 (M.D.N.C. Sept. 29, 2016) ............................... 10

*Lauderdale v. NFP Ret., Inc.*,
  No. 21-301, 2024 U.S. Dist. LEXIS 31527 (C.D. Cal. Feb. 23, 2024) ................................... 12

*Meaden v. Harborone Bank*,
  No. 23-10467-AK, 2023 U.S. Dist. LEXIS 87154 (D. Mass. May 18, 2023)...................... 8, 16

*Mills v. Molina Healthcare, Inc.*,
  No. 22-1813, 2024 U.S. Dist. LEXIS 50572 (C.D. Cal. Mar. 20, 2024)................................. 12

*Mongue v. Wheatleigh Corp.*,
  No. 18-30095-KAR, 2023 U.S. Dist. LEXIS 147961
  (D. Mass. Aug. 23, 2023).......................................................... 7, 8, 9, 12, 13, 14, 15

*Mongue v. Wheatleigh Corp.*,
  No. 18-30095-KAR, 2024 U.S. Dist. LEXIS 69928 (D. Mass. Apr. 16, 2024) ......................... 6

*Monteiro v. Child.'s Hosp. Corp.*,
  No. 22-10069-JEK, 2025 U.S. Dist. LEXIS 89719 (D. Mass. May 12, 2025).................... 8, 17

*Mullane v. Central Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)................................................................................................. 16

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
  55 F.4th 340 (1st Cir. 2022).................................................................................... 7, 8

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
  582 F.3d 30 (1st Cir. 2009)......................................................................................... 11

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
  No. 15-30024-KAR, 2020 U.S. Dist. LEXIS 53643 (D. Mass. Mar. 27, 2020)....................... 10

*New England Biolabs, Inc. v. Miller*,
  No. 20-11234-RGS, 2022 U.S. Dist. LEXIS 244587 (D. Mass. Oct. 26, 2022) ...... 7, 10, 12, 15

*Nolte v. Cigna Corp.*,
  No. 07-2046, 2013 U.S. Dist. LEXIS 184622 (C.D. Ill. Oct. 15, 2013)................................. 10

*Pledger v. Reliance Tr. Co.*,
  No. 15-4444, 2021 U.S. Dist. LEXIS 105868 (N.D. Ga. Mar. 8, 2021) ................................ 10

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
74 F.4th 171 (4th Cir. 2023) ..................................................................................... 12

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000).............................................................................. 11, 13

*Sacerdote v. N.Y. Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018) ...................................................................... 12

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015)................................................................................................. 10

*Tracey v. Mass. Inst. of Tech.*,
No. 16-11620-NMG, Dkt. No. 290-1 (D. Mass. Oct. 28, 2019)................................ 14

*Tussey v. ABB, Inc.*,
No. 06-4305, 2019 U.S. Dist. LEXIS 138880 (W.D. Mo. Aug. 16, 2019) ............... 13

*Vellali v. Yale Univ.*,
No. 16-1345, Dkt. No. 575 (D. Conn. June 28, 2023)............................................... 12

**Statutes**

29 U.S.C. § 1132(g) .......................................................................................................... 6

**Rules**

Fed. R. Civ. P. 23(C)...................................................................................................... 13

Fed. R. Civ. P. 23(D) ..................................................................................................... 13

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................ 16

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 7, 9, 10

Fed. R. Civ. P. 23(e)(2)(C)(i)......................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(ii)........................................................................................ 13

Fed. R. Civ. P. 23(e)(2)(C)(iv)....................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................ 14

Fed. R. Civ. P. 23(h) .................................................................................................. 6, 14

**Other Authorities**

*Manual for Complex Litigation* (4th ed. 2004)................................................................ 7

*Newberg on Class Actions* (5th ed. 2013)........................................................................ 7

Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral*, Investment Company
Institute, (Sept. 17, 2013)......................................................................................... 12

**INTRODUCTION**

Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Liberty Mutual 401(k) Plan (the "Plan"), brought this action under 29 U.S.C. §§ 1132(a)(2) and (a)(3) against Defendants Liberty Mutual Group, Inc. and the 401(k) Plan Administrative Committee (collectively, "Defendants")[1] for breaches of fiduciary duty under 29 U.S.C. § 1104(a) related to Defendants' failure to monitor, control, and evaluate the Plan's fees and investments. *See* Dkt. No. 1. Defendants dispute these allegations and deny liability for any alleged ERISA violations.

After extensive arm's length negotiations, the parties reached a settlement that provides meaningful monetary and equitable relief to Class Members. In light of the litigation risks further prosecution of this action would inevitably entail, Plaintiffs respectfully request that this Court: (1) preliminarily approve the proposed settlement attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement as Exhibit A ("Settlement Agreement"); (2) approve the proposed form and method of notice to Class Members; and (3) schedule a hearing at which the Court will consider final approval of the Settlement.[2]

**BACKGROUND**

**I.    Plaintiffs' Claims and Procedural History**

Plaintiffs Yusuf Ahmed, Mary Ann Stocum, Andrew Loring, Mark Severn, Edward Lief, and Scott Diehl filed their complaint on April 10, 2020. Dkt. No. 1. Plaintiffs assert four counts against Defendants. They alleged that Defendants breached their fiduciary duties by failing to monitor, control, and evaluate the Plan's recordkeeping fees (Count I), managed account fees

---

[1] The individually named defendants were dismissed from this suit on December 23, 2022, pursuant to a stipulation between the parties. Dkt. No. 55.

[2] If not defined herein, capitalized terms have the definitions in the Settlement Agreement, which is incorporated herein by reference.

(Count IV), and two Plan investments, the Sterling Mid-Cap Value Portfolio (Count II), and the Wells Fargo Government Money Market Fund (Count III). *Id.*

On June 3, 2020, Defendants moved to dismiss Plaintiffs' claims. Dkt. No. 20. The Court ultimately denied Defendants' motion to dismiss in its entirety on June 15, 2021. Dkt. No. 44.

The parties proceeded to discovery, negotiating a stipulation on discovery of hard copy documents and electronically stored information ("ESI") (Dkt. No. 53) and a protective order (Dkt. No. 54). The parties engaged in extensive written discovery, involving the production of over 105,000 pages by the parties and third parties. Declaration of Joel D. Rohlf ("Rohlf Decl.") ¶ 4. These materials required close review and analysis by Plaintiffs' counsel, which was aided by discussions with consultants and experts retained by Plaintiffs' counsel. *Id.*

On December 23, 2022, Plaintiffs moved for class certification. Dkt. No. 56. Defendants subsequently filed a notice of non-opposition (Dkt. No. 69), and on June 8, 2023, the Court certified a class under Rule 23(b)(1) of "[a]ll participants and beneficiaries of the Liberty Mutual 401(k) Plan from April 10, 2014 through the date of judgment, excluding the Defendant[s]." Dkt. No. 73. In addition, the Court certified a subclass of "[a]ll participants and beneficiaries of the Liberty Mutual 401(k) Plan who utilized the Plan's managed account services from April 10, 2014 through the date of judgment, excluding the Defendants." *Id.*[3] The Court also appointed Schlichter Bogard LLC as Class Counsel and Plaintiffs Yusuf Ahmed, Mary Ann Stocum, Andrew Loring, Mark Severn, Edward Lief, and Scott Diehl as Class Representatives, and Plaintiffs Scott Diehl, Edward Lief, Andrew Loring, and Mark Severn as Class Representatives of the subclass. *Id.*

With discovery materials thoroughly analyzed and classes certified, the parties proceeded

---

[3] The Class under the Settlement Agreement is defined as the broader class certified by the Court, which subsumes the subclass: "all participants in the Liberty Mutual 401(k) Plan from April 10, 2014 through December 31, 2025, and their beneficiaries, excluding Defendants." Ex. A § 2.10.

to the deposition phase of discovery. In total, the parties took 22 depositions, including 16 fact witness depositions. Rohlf Decl. ¶ 5. The depositions of Defendants' witnesses lasted hours with the use of numerous exhibits. *Id.* Following fact discovery, the parties disclosed expert written opinions. In total, six expert witnesses were engaged by the parties in this matter, and each was deposed. *Id.* ¶ 6.

On August 5, 2024, Defendants moved to exclude Plaintiffs' experts' testimony and for summary judgment. Dkt. Nos. 104, 106, 108. Plaintiffs opposed the motions. Dkt. Nos. 121–123. The summary judgment and *Daubert* record was extensive, incorporating hundreds of exhibits with thousands of pages. *See* Dkt. Nos. 111, 125, 130. The Court held a hearing on the motions to exclude Plaintiffs' experts' testimony on October 24, 2024 (Dkt. No. 146), after which the Court granted in part the motions to exclude Plaintiffs' experts' testimony on March 6, 2025 (Dkt. Nos. 152–153).

On May 12, 2025, the Court then held a hearing on Defendants' motion for summary judgment. Dkt. No. 158. Subsequently, on June 5, 2025, the Court granted Defendants' motion for summary judgment as to the portion of Count I that alleged excessive expense account balances, and Counts II and III as to the alleged breaches of the duty of loyalty, but otherwise denied Defendants' motion for summary judgment, leaving Plaintiffs' prudence claims intact. Dkt. No. 162.

On June 13, 2025, Defendants moved to strike Plaintiffs' jury demand. Dkt. No. 169. After a hearing on the motion on October 30, 2025 (Dkt. No. 179), the Court set the case for a trial beginning on February 9, 2026 (Dkt. No. 192). In advance of trial, the parties worked diligently to prepare the case and their witnesses for examination. Apart from general trial preparations, the parties exchanged pretrial disclosures, including the joint pretrial memorandum, exhibit lists (and

3

objections), witness lists, and deposition designations. Rohlf Decl. ¶ 7.

## II.    Settlement Negotiations

Throughout the course of the litigation, the parties engaged in settlement discussions. Pursuant to the Court's Notice of Scheduling Conference (Dkt. No. 46), Plaintiffs sent Defendants a written settlement proposal on July 1, 2022. Rohlf Decl. ¶ 9. Defendants rejected the proposal. *Id.* As the trial date approached, the parties resumed settlement negotiations in earnest. After the hearing on the motion to strike Plaintiffs' jury demand in October 2025, the parties restarted their settlement discussions. *Id.* ¶ 10. Over the next few months, the parties communicated extensively via email and phone, and exchanged numerous counter proposals pertaining to both monetary and non-monetary relief. *Id.* On the eve of trial, the parties were ultimately able to reach a settlement in principle on January 14, 2026, *id.* ¶ 11, and filed a notice of the tentative settlement the next day, *see* Dkt. No. 195.

## III.    Terms of the Proposed Settlement

### A.  Monetary Benefits to Class Members

In exchange for the dismissal of this action and for entry of the judgment as provided for in the Settlement Agreement, Defendants will make available to Class Members significant monetary relief. They will deposit $13,400,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Qualified Settlement Account"). Ex. A § 5.4. The Qualified Settlement Account, plus applicable interest, less the expenses and fees as described below, will be used to pay the Class Members' recoveries.

### B.  Cost and Expenses Associated with Settlement

Apart from Class Members' recoveries, the Qualified Settlement Account will be used to pay administrative expenses to facilitate the Settlement, Plaintiffs' counsel's attorneys' fees and expenses, and Class Representatives' service awards if approved by the Court.

### 1. Administrative Expenses

Administrative expenses include those associated with providing notice to Class Members, hiring the Independent Fiduciary to approve the terms of the Settlement, and hiring the Settlement Administrator to administer the Settlement. *Id.* §§ 2.3.1, 3.1.3, 2.42. After consideration of the proposed fees and the quality of the services to be provided, Analytics Consulting LLC was selected as the Settlement Administrator to provide notice to Class Members and administer the Settlement. Defendants will soon identify the Independent Fiduciary to approve the terms of the Settlement. It is appropriate for these costs to be paid out of the Qualified Settlement Account. *E.g.*, *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 141 (D. Mass. 2004); *In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*, No. 01-12239-WGY, 2004 U.S. Dist. LEXIS 29834, at *16 (D. Mass. Nov. 24, 2004).

### 2. Service Awards

Plaintiffs intend to seek no more than $20,000 for each of the six Named Plaintiffs and Class Representatives as a service award (or Class Representatives' Case Contribution Awards as defined in the Settlement). Ex. A § 2.16. This amount is consistent with district court precedent recognizing the value of individuals stepping forward to represent a class, particularly in contested complex litigation like this where the potential benefit to any individual does not outweigh the cost of prosecuting class-wide claims, and there are significant risks of no recovery and alienation from their employers and peers. *See, e.g.*, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 248 (D. Mass. 2022) (approving $40,000 and $50,000 service awards for class representatives); *In re Asacol Antitrust Litig.*, No. 15-12730-DJC, 2017 U.S. Dist. LEXIS 221904, at *19 (D. Mass. Dec. 7, 2017) (approving a $100,000 service award for each class representative); *Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-12548-NMG, 2020 U.S. Dist. LEXIS 106469, at *4 (D. Mass. June 17, 2020) (approving a $10,000 service award for each class representative).

As Plaintiffs will explain in connection with their forthcoming motion for attorneys' fees and reimbursement of expenses, service awards are justified here. The Class Representatives took on a substantial risk of nonrecovery and alienation from their employers and peers, exposed themselves to personal liability if Defendants are awarded their attorneys' fees and costs under 29 U.S.C. § 1132(g), and devoted substantial amounts of their own time to benefit absent Class Members. The total award requested for the Class Representatives is less than 0.1% of the Gross Settlement Amount.

### 3. Attorneys' Fees and Costs

"Under the 'common fund doctrine,' attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *Mongue v. Wheatleigh Corp.*, No. 18-30095-KAR, 2024 U.S. Dist. LEXIS 69928, at *12 (D. Mass. Apr. 16, 2024) (quoting *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014)); *Jackson v. New England Biolabs, Inc.*, No. 23-12208-RGS, 2025 U.S. Dist. LEXIS 151966, at *6 (D. Mass. Aug. 7, 2025) (citing *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999)); Fed. R. Civ. P. 23(h).

Class Counsel intends to seek attorneys' fees in an amount not to exceed one-third of the Settlement Fund Balance, including interest earned on the Balance, as well as reimbursement for reasonable litigation expenses not to exceed $430,000.[4] Ex. A § 7.1. A one-third fee is "identical to other awards in other excessive 401(k) fee cases brought by Class Counsel, including in this district." *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 21-10090-WGY, 2023 U.S. Dist. LEXIS 93286, at *7 (D. Mass. Mar. 31, 2023) (citing *Gordan v. Mass. Mut. Life. Ins. Co.*, No. 13-30184-

---

[4] The Settlement Fund Balance includes any accrued interest or earnings on the Gross Settlement Amount of $13.4 million. *See* Ex. A § 2.45. Class Counsel will submit a formal application for attorneys' fees and costs and for the Class Representatives' service awards at least 30 days prior to the deadline for Class Members to file objections to the Settlement.

MAP, 2016 U.S. Dist. LEXIS 195935, at *3, 11 (D. Mass. Nov. 3, 2016) (awarding a fee of one-third of the monetary recovery in a 401(k) excessive fee case)). However, Class Counsel will not seek fees or costs: (1) that may be incurred to enforce the Settlement, if necessary; or (2) for the time associated with communicating with Class Members, the Independent Fiduciary, the Settlement Administrator or Defendants' counsel to facilitate the Settlement.

## ARGUMENT

The approval of a class action settlement involves two steps: preliminary approval and final approval. *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 97 n.1 (D. Mass. 2010); *Manual for Complex Litigation* § 13.14 (4th ed. 2004). Preliminary approval requires the court to conduct an "initial evaluation" of the fairness of the proposed settlement to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." *New England Biolabs, Inc. v. Miller*, No. 20-11234-RGS, 2022 U.S. Dist. LEXIS 244587, at *8–9 (D. Mass. Oct. 26, 2022) (quoting *Manual for Complex Litigation* § 21.632 (4th ed. 2004), *Newberg on Class Actions* § 13:10 (5th ed. 2013)). The court must only "determine whether the proposed settlement appears to fall within the range of possible final approval." *Id.* at *9 (citation omitted).

When making a preliminary approval determination, courts consider four factors under Federal Rule of Civil Procedure 23(e): "(1) whether the class representatives and counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate; and (4) whether the proposal treats class members equitably relative to each other." *Mongue v. Wheatleigh Corp.*, No. 18-30095-KAR, 2023 U.S. Dist. LEXIS 147961, at *12–13 (D. Mass. Aug. 23, 2023) (citing Fed. R. Civ. P. 23(e)(2)(A)–(D)); *see also Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) (noting factors from Rule 23(e)(2)). A presumption of fairness attaches when "(1) the

7

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *In re Lupron*, 345 F. Supp. 2d at 137); *Meaden v. Harborone Bank*, No. 23-10467-AK, 2023 U.S. Dist. LEXIS 87154, at *10 (D. Mass. May 18, 2023).

### I.    The Court should grant preliminary approval because all relevant factors are met.

### A.  The Class Representatives and Counsel adequately represented the Class.

The "adequate representation inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Monteiro v. Child.'s Hosp. Corp.*, No. 22-10069-JEK, 2025 U.S. Dist. LEXIS 89719, at *8 (D. Mass. May 12, 2025) (quoting *Murray*, 55 F.4th at 345) (quotation marks omitted). The Class Representatives have no conflicts of interest with the Class, consistent with the Court's prior finding appointing them as Class Representatives. *See* Dkt. No. 73. At all times, they fully understood their role to represent all Class Members. *See* Dkt. Nos. 58-9–58-14 (Plaintiffs' declarations); Dkt. Nos. 67–68 (same).

Similar to all Plan participants, the Class Representatives "seek relief from the defendants' allegedly imprudent conduct in managing and administering the Plan." *Cure v. Factory Mut. Ins. Co.*, No. 23-12399-JEK, 2025 U.S. Dist. LEXIS 201094, at *8 (D. Mass. Oct. 10, 2025); *Monteiro*, 2025 U.S. Dist. LEXIS 89719, at *8 (same); *see also* Dkt. Nos. 58-9–58-14 (Plaintiffs' declarations); Dkt. Nos. 67–68 (same); Dkt. No. 1 ¶¶ 5, 209–38. Throughout this litigation, they diligently represented the interests of the Class through their active role in the litigation by assisting Class Counsel in developing their claims, responding to written discovery, and sitting for their depositions. Rohlf Decl. ¶ 8; *see Mongue*, 2023 U.S. Dist. LEXIS 147961, at *14 (finding adequacy when the "Plaintiff spent time and effort diligently representing the Class, such as by sitting for a deposition and making herself available to assist with the litigation"). Four of the six

Plaintiffs were also preparing to testify at trial, and the others were available to the extent the need would arise. Rohlf Decl. ¶ 8.

The Court has already determined the ability for Class Counsel to adequately represent the Class. Dkt. No. 73 (appointing Class Counsel under Rule 23(g)); *see Mongue*, 2023 U.S. Dist. LEXIS 147961, at *14–15 (noting same). The focus of the inquiry of class counsel's adequacy of representation is on the "actual performance of counsel," and critical to that evaluation is whether class counsel had an "adequate information base," considering the "nature and amount of discovery," which informed the decision to reach a class settlement. *Mongue*, 2023 U.S. Dist. LEXIS 147961, at *14–15 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018)). That standard is easily met.

Class Counsel represented the Class "competently and vigorously and without conflicts of interest." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009). They successfully litigated this action through motions to dismiss, summary judgment and *Daubert* challenges. *See* Dkt. Nos. 44, 152, 153, 162. Relying on their extensive experience in similar ERISA class actions, *see* Dkt. No. 58-15, Class Counsel was fully prepared to present Plaintiffs' claims at trial after developing them through extensive fact and expert discovery. *See Cure*, 2025 U.S. Dist. LEXIS 201094, at *8 ("Given the nature and amount of discovery conducted, counsel appear to have an adequate information base to justify settling. . . . [and] counsel—who have extensive experience litigating ERISA disputes—conducted a thorough investigation of the claims[.]" (quotation marks and citation omitted)). Only through the efforts of Class Counsel was a significant settlement obtained for the Class. *See Gordan*, 2016 U.S. Dist. LEXIS 195935, at *8 ("The exceptional result in this case is the direct result of [Schlichter Bogard's] unique expertise and outstanding effort."); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 U.S. Dist. LEXIS

193107, at *8 (M.D.N.C. Sept. 29, 2016) ("[Schlichter Bogard's] efforts have not only resulted in a significant monetary award to the class but have also brought improvement [to the plans.]").

## B. The terms of the Settlement were negotiated at arm's length without collusion.

Settlement negotiations must be "conducted in a manner that would protect and further the class interests." *Cure*, 2025 U.S. Dist. LEXIS 201094, at *9 (quoting Fed. R. Civ. P. 23(e)(2)(A)–(B) advisory committee's note (2018)). A settlement is presumed reasonable when "the parties negotiated at arm's length and conducted sufficient discovery." *In re Pharm. Indus.*, 588 F.3d at 32–33; *see also Miller*, 2022 U.S. Dist. LEXIS 244587, at *10 ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by *experienced* counsel." (quoting *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, No. 15-30024-KAR, 2020 U.S. Dist. LEXIS 53643, at *11 (D. Mass. Mar. 27, 2020) (emphasis added)).

As to their experience, Class Counsel "is a recognized leader in ERISA excessive fee litigation, having pioneered the field." *Ford*, 2023 U.S. Dist. LEXIS 93286, at *4; *see also Gordan*, 2016 U.S. Dist. LEXIS 195935, at *8 (recognizing "Class Counsel's unique expertise and outstanding effort"). The firm has "achieved unparalleled results on behalf of its clients" in the face of "enormous risks[.]" *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S. Dist. LEXIS 184622, at *8 (C.D. Ill. Oct. 15, 2013); *see also Pledger v. Reliance Tr. Co.*, No. 15-4444, 2021 U.S. Dist. LEXIS 105868, at *21 (N.D. Ga. Mar. 8, 2021) ("Class Counsel are highly experienced and recognized experts in ERISA litigation."). Moreover, Class Counsel have obtained *three* separate unanimous victories in ERISA cases before the United States Supreme Court. *Tibble v. Edison Int'l*, 575 U.S. 523 (2015); *Hughes v. Nw. Univ.*, 595 U.S. 170 (2022); *Cunningham v. Cornell Univ.*, 640 U.S. 693 (2025).

Aided by their extensive knowledge of the facts and claims at issue, the parties' experienced counsel negotiated the terms of the Settlement at arm's length. *See* Rohlf Decl. ¶ 12;

*see also Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *cf. Cure*, 2025 U.S. Dist. LEXIS 201094, at *9 (settlement reached at arm's length when "negotiated extensively and had commenced discovery before participating in a private mediation"). With the February 9, 2026 trial date looming, and intense pretrial preparations already underway, the parties engaged in extensive settlement discussions to seek a resolution. Rohlf Decl. ¶ 10. These discussions occurred over multiple weeks, culminating in a settlement in principle on January 14, 2026. *Id.* ¶¶ 10–11; *see also Giotto v. United States Dep't of Homeland Sec.*, 762 F. Supp. 3d 127, 131 (D.N.H. 2025) ("[T]he record establishes that counsel for the parties negotiated the proposed settlement at arm's length over the course of a long period of time following sustained litigation, adversarial testing of plaintiffs' claims, and the exchange of information and discovery.").

### C.  The Settlement provides very substantial relief for the Class.

Rule 23 requires "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). "When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation,' . . . there are clearly strong arguments for approving a settlement." *Rolland*, 191 F.R.D. at 10 (citation omitted).

Class Counsel secured a $13.4 million settlement, along with valuable affirmative relief that will benefit Class Members moving forward. *See*, *e.g.*, Ex. A § 2.28, Articles 5 & 10. Considering the benefit of the present value of tax deferral for 20 years (which is 18.6%), the value

of the monetary portion of the Settlement is $15,892,400.[5] Had Class Counsel litigated this case to judgment, there was a very real risk that Class Members would obtain no recovery. Judgments in favor of the defendants following trial in ERISA litigation illustrate the difficulty of obtaining a successful judgment. *See*, *e.g.*, *Mills v. Molina Healthcare, Inc.*, No. 22-1813, 2024 U.S. Dist. LEXIS 50572 (C.D. Cal. Mar. 20, 2024); *Lauderdale v. NFP Ret., Inc.*, No. 21-301, 2024 U.S. Dist. LEXIS 31527 (C.D. Cal. Feb. 23, 2024); *see also Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023) (affirming judgment in favor of fiduciary defendant); *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) (judgment in favor of defendants); *Vellali v. Yale Univ.*, No. 16-1345, Dkt. No. 575 (D. Conn. June 28, 2023) (same).

The relief obtained was substantial relative to the *maximum* recovery that Plaintiffs could obtain after a successful trial. The $13.4 million settlement was approximately 25% to 46% of the total damages Plaintiffs sought across their four claims. *See* Dkt. No. 164-12 ¶¶ 10, 17 ($11,853,628–$36,298,370 mid-cap value fund claim, $629,721 money market fund claim); Dkt. No. 164-16 at 52 ($7,235,200 recordkeeping fee claim); Dkt. No. 165-17 at 25 ($9,431,702 managed account fee claim). The Settlement's percentage of the total damages is in line with other settlements that have been preliminarily approved. *See*, *e.g.*, *Cure*, 2025 U.S. Dist. LEXIS 201094, at *9 (settlement representing 37.5% of damages); *Miller*, 2022 U.S. Dist. LEXIS 244587, at *10–11 (preliminarily approving ERISA class settlement that represented 48.98% of maximum possible recovery and collecting similar cases approving 40% and 27% of such recovery).

Other factors identified in Rule 23(e)(2)(C) provide further support for the Settlement. *See Mongue*, 2023 U.S. Dist. LEXIS 147961, at *24–29 (considering these factors at preliminary

---

[5] *Abbott v. Lockheed Martin Corp*., No. 06-701, Dkt. No. 497 at 37 (S.D. Ill. Apr. 14, 2015) (Report of the Special Master) (citing Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral*, Investment Company Institute, (Sept. 17, 2013), http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral).

approval).

The costs, risks, and delay of continued litigation would be significant if this action were not resolved at this stage. Fed. R. Civ. P. 23(e)(2)(C)(i); *see Mongue*, 2023 U.S. Dist. LEXIS 147961, at \*24–26 (discussing risks); *cf. Gordan*, 2016 U.S. Dist. LEXIS 195935, at \*8 ("counsel faced a high risk of non-payment"). The parties would incur substantial costs for a multi-week trial, including travel and lodging costs, expert witness fees, and other expenses associated with a complex trial. *See Rolland*, 191 F.R.D. at 10 ("All parties properly recognized that, without a settlement, this expenditure of resources would have been considerable."). Even if Plaintiffs obtain a successful judgment following trial, Defendants would inevitably appeal, resulting in further years of delay and additional expense, not to mention the risk that a favorable judgment for Plaintiffs could be overturned by the First Circuit. *E.g.*, *Tussey v. ABB, Inc.*, No. 06-4305, 2019 U.S. Dist. LEXIS 138880 (W.D. Mo. Aug. 16, 2019) (settlement obtained approximately seven years after judgment was entered in the plaintiffs' favor after trial).

The method of distributing the settlement proceeds to Class Members will be effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii); *see Mongue*, 2023 U.S. Dist. LEXIS 147961, at \*26 (the court must "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding.") (quoting Fed. R. Civ. P. 23(C)–(D) advisory committee's note (2018)). Here, current participants in the Plan will receive their payments directly into their Plan account. Ex. A § 6.4. Former participants who submitted a valid claim form will receive a check by U.S. mail unless they elected to rollover their payment to an authorized account. *Id.* §§ 6.6–6.7. This proposed method of distribution is commonly utilized in similar class action settlements handled by Class Counsel. *See, e.g.*, *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 21-10090-WGY, Dkt. No. 95-1 §§ 6.4–6.7 (D. Mass. Nov. 14, 2022); *Tracey v.*

13

*Mass. Inst. of Tech.*, No. 16-11620-NMG, Dkt. No. 290-1 §§ 6.5–6.7 (D. Mass. Oct. 28, 2019); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-30184-MAP, Dkt. No. 107-2 §§ 6.5–6.7 (D. Mass. June 15, 2016); *Binder v. PPL Corp.*, No. 22-133, Dkt. No. 162-2 §§ 6.4, 6.6–6.7 (E.D. Pa. Mar. 7, 2025).

With respect to the terms of any proposed award of attorneys' fees, Fed. R. Civ. P. 23(e)(2)(C)(iv), Class Counsel intends to seek no more than one-third of the Settlement Fund Balance, including interest earned on the Balance, in attorneys' fees and reimbursement of reasonable expenses advanced during the litigation. *See* Ex. A, Article 7; *see* Fed. R. Civ. P. 23(h). This amount is routinely awarded to Class Counsel in similar complex ERISA class actions. *See Ford*, 2023 U.S. Dist. LEXIS 93286, at *7; *Gordan*, 2016 U.S. Dist. LEXIS 195935, at *3, 11; *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 U.S. Dist. LEXIS 14772, at *8 (D. Md. Jan. 28, 2020) (collecting cases). As previously noted, in advance of the final fairness hearing, Class Counsel will submit appropriate documentation demonstrating the reasonableness of any award after applying the relevant factors considered by courts. *See Ford*, 2023 U.S. Dist. LEXIS 93286, at *3–7.

There is no agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Accordingly, this factor is not applicable.

### D. Class Members will be treated favorably under the Plan of Allocation.

"The purpose of this requirement is to prevent the 'inequitable treatment of some class members vis-a-vis others.'" *Mongue*, 2023 U.S. Dist. LEXIS 147961, at *29 (quoting Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note (2018)). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* at *29–30 (quoting same). "A plan of allocation is fair and

14

reasonable as long as it has a 'reasonable, rational basis.'" *Miller*, 2022 U.S. Dist. LEXIS 244587, at \*13 (citation omitted). The court must "give great weight to the opinion of experienced counsel" in determining whether a plan of allocation is fair and reasonable. *Id.* (citation omitted).

The Plan of Allocation appropriately allocates the monetary relief among Class Members. Under Article 6, Class Members will receive a pro rata allocation of the net settlement proceeds based on the estimated harm they suffered across each of the four claims. *See* Ex. A, Article 6. Each of the four claims was apportioned a percentage of the total recovery, which was estimated based on the claimed damages and likelihood of success at trial. *Id.* § 6.3.3. For instance, Class Members who were invested in the Sterling Mid-Cap Value Fund will be allocated 35% of the net settlement amount based on the amount they held in the fund between April 10, 2014, and March 14, 2018. *Id.* § 6.3.3.1. Because the Plan of Allocation appropriately allocates the net settlement proceeds based on the losses suffered by each participant, it treats all Class Members equitably. *See*, *e.g.*, *Miller*, 2022 U.S. Dist. LEXIS 244587, at \*11 (based on a pro rata allocation, class members' share of the proceeds "depends on the losses suffered by that participant"); *Mongue*, 2023 U.S. Dist. LEXIS 147961, at \*30 ("Because this allocation of settlement dollars approximates the proportion of damages suffered by each person, the agreement treats the class members equitably.").

## II.     The Court should approve the proposed notice to Class Members.

The notice requirement "is rooted in due process" and designed "to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated." *Brown v. Colegio de Abogados de P.R.*, 613 F.3d 44, 51 (1st Cir. 2010) (citation omitted). But due process and Rule 23(e) do not require that each Class Member receive notice. Rather, class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central*

*Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also* Fed. R. Civ. P. 23(e)(1)(B) (notice be provided "in a reasonable manner to all class members who would be bound by the [settlement] proposal"). "Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The parties' proposed notice and plan for issuing such notice satisfies the requirements of Rule 23 and due process.[6] The notice will fully apprise Class Members of the existence of the lawsuit, the proposed settlement, and the information they need to make informed decisions about their rights, including: (i) the terms and operation of the Settlement; (ii) the nature and extent of the release; (iii) the maximum attorneys' fees and costs that will be sought; (iv) the procedure and timing for objecting to the Settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the final fairness hearing; and (vi) the website on which the full settlement documents and any modifications thereto will be posted. *See Meaden*, 2023 U.S. Dist. LEXIS 87154, at *12 ("The notice should 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

The notice plan consists of multiple components designed to reach Class Members. *See generally*, Ex. A § 3.2. The notice will be sent by electronic email to all Class Members who have a current email address known to Defendants and/or the Plan's recordkeeper and by first-class mail to the current or last-known address of all Class Members for whom there is no current email address after entry of preliminary approval. In addition to the notice, the Settlement Administrator will develop a dedicated website solely for the Settlement, and a link to that website will appear on Class Counsel's website [www.uselaws.com]. The notice plan also includes a follow-up

---

[6] The parties' proposed notices to current and former participants are attached as Exhibits 3 and 4 to the Settlement Agreement.

requirement for the Settlement Administrator to take additional action to reach those Class Members whose notice letters are returned as undeliverable. Accordingly, the method for delivering notice to Class Members satisfies the requirements of due process and Rule 23. *See Cure*, 2025 U.S. Dist. LEXIS 201094, at *11 (approving similar notice plan by email and mail); *Monteiro*, 2025 U.S. Dist. LEXIS 89719, at *12 (same).

## CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

February 17, 2026                                Respectfully submitted,

                                                 /s/ Joel D. Rohlf
                                                 Joel D. Rohlf (*pro hac vice*)
                                                 Troy Doles (*pro hac vice*)
                                                 Kurt C. Struckhoff (*pro hac vice*)
                                                 Nathan D. Stump (*pro hac vice*)
                                                 SCHLICHTER BOGARD LLC
                                                 100 South Fourth Street, Suite 1200
                                                 St. Louis, MO 63102
                                                 Telephone: (314) 621-6115
                                                 Fax: (314) 621-5934
                                                 jrohlf@uselaws.com
                                                 tdoles@uselaws.com
                                                 kstruckhoff@uselaws.com
                                                 nstump@uselaws.com

                                                 Ruben Chapa (*pro hac vice*)
                                                 SCHLICHTER BOGARD LLC
                                                 33 North Dearborn Street, Suite 1170
                                                 Chicago, IL 60602
                                                 Telephone: (630) 919-9301
                                                 Fax: (314) 621-5934
                                                 rchapa@uselaws.com

                                                 *Lead Counsel for Plaintiffs*

Robert T. Naumes, BBO # 367660
Christopher Naumes, BBO # 671701
NAUMES LAW GROUP
2 Granite Ave, #425
Milton, Massachusetts 02186
617-227-8444
617-696-2437 (fax)
robert@naumeslaw.com
christopher@naumeslaw.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 17, 2026.

/s/ Joel D. Rohlf