**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YUSUF AHMED, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>LIBERTY MUTUAL GROUP, INC., et al.,<br><br>*Defendants*. | No. 3:20-cv-30056-MGM |

**ORDER REGARDING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CASE CONTRIBUTION AWARDS FOR CLASS REPRESENTATIVES**

Upon consideration of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards for the Class Representatives [Dkt. No. 210], the Motion is **GRANTED**.

**BACKGROUND**

Plaintiffs Yusuf Ahmed, Mary Ann Stocum, Andrew Loring, Mark Severn, Edward Lief, and Scott Diehl, individually and as representatives of a class of similarly situated Plan participants and beneficiaries of the Liberty Mutual 401(k) Plan (the "Plan"), filed this action on April 10, 2020, against Defendants Liberty Mutual Group, Inc. and the 401(k) Plan Administrative Committee (collectively, "Defendants").[1] Dkt. No. 1. They alleged that Defendants breached their fiduciary duties by failing to monitor, control, and evaluate the Plan's recordkeeping fees (Count I), managed account fees (Count IV), and two Plan investments, the Sterling Mid-Cap Value Portfolio (Count II) and the Wells Fargo Government Money Market Fund (Count III). *Id.* On June

[1] The individually named defendants were dismissed from this suit on December 23, 2022, pursuant to a stipulation between the parties. Dkt. No. 55.

3, 2020, Defendants moved to dismiss Plaintiffs' claims. Dkt. No. 20. The Court denied Defendants' motion to dismiss on June 15, 2021. Dkt. No. 44.

Following the Court's dismissal order, the parties engaged in extensive written discovery, involving the production of over one hundred thousand pages of documents by the parties and third parties. Dkt. No. 200 at 7; Dkt. No. 212 ¶ 13. In total, the parties took 22 depositions, including 16 fact witness and Named Plaintiff depositions. Dkt. No. 200 at 8; Dkt. No. 212 ¶¶ 15, 20. Following fact discovery, the parties disclosed six expert witnesses on a variety of subjects. Dkt. No. 200 at 8; Dkt. No. 212 ¶¶ 17–20.

On June 8, 2023, the Court certified a class under Rule 23(b)(1) of "[a]ll participants and beneficiaries of the Liberty Mutual 401(k) Plan from April 10, 2014 through the date of judgment, excluding the Defendant[s]." Dkt. No. 73. In addition, the Court certified a subclass of "[a]ll participants and beneficiaries of the Liberty Mutual 401(k) Plan who utilized the Plan's managed account services from April 10, 2014 through the date of judgment, excluding the Defendants." [2] *Id.* The Court appointed Schlichter Bogard LLC ("Schlichter Bogard") as Class Counsel; Plaintiffs Yusuf Ahmed, Mary Ann Stocum, Andrew Loring, Mark Severn, Edward Lief, and Scott Diehl as Class representatives of the Class; and Plaintiffs Scott Diehl, Edward Lief, Andrew Loring, and Mark Severn as Class representatives of the subclass. *Id.*

On August 5, 2024, Defendants moved to exclude Plaintiffs' experts' testimony and for summary judgment. Dkt. Nos. 104, 106, 108. Plaintiffs opposed the motions. Dkt. Nos. 121–123. The summary judgment and *Daubert* record was extensive, incorporating hundreds of exhibits

[2] Under the Settlement Agreement, the Class is defined as the broader class certified by the Court, which subsumes the subclass: "all participants in the Liberty Mutual 401(k) Plan from April 10, 2014 through December 31, 2025, and their beneficiaries, excluding Defendants." Dkt. No. 199-1 § 2.10.

with thousands of pages. *See* Dkt. Nos. 111, 125, 130. The Court held a hearing on the motions to exclude Plaintiffs' experts' testimony on October 24, 2024 (Dkt. No. 146), after which the Court granted in part Defendants motions on March 6, 2025 (Dkt. Nos. 152–153).

On May 12, 2025, the Court then held a hearing on Defendants' motion for summary judgment. Dkt. No. 158. Subsequently, on June 5, 2025, the Court granted Defendants' motion for summary judgment as to the portion of Count I that alleged excessive expense account balances, and Counts II and III as to the alleged breaches of the duty of loyalty, but otherwise denied Defendants' motion for summary judgment, leaving Plaintiffs' prudence claims intact. Dkt. No. 162.

On June 13, 2025, Defendants moved to strike Plaintiffs' jury demand. Dkt. No. 169. After a hearing on the motion on October 30, 2025 (Dkt. No. 179), the Court set the case for trial beginning on February 9, 2026 (Dkt. No. 192). The motion remained pending when the Settlement was reached. *See* Dkt. No. 197 (finding as moot the motion). In advance of trial, the parties worked diligently to prepare the case and their witnesses for examination. Apart from general trial preparations, the parties exchanged pretrial disclosures, including the joint pretrial memorandum, exhibit lists (and objections), witness lists, and deposition designations. Dkt. No. 200 at 8–9.

Throughout the course of the litigation, the parties engaged in settlement discussions. Pursuant to the Court's Notice of Scheduling Conference (Dkt. No. 46), Plaintiffs sent Defendants a written settlement proposal on July 1, 2022 (Dkt. No. 200 at 9), which was rejected by Defendants. After the hearing on the motion to strike Plaintiffs' jury demand in October 2025, the parties resumed their settlement discussions. *Id.* Over the next few months, the parties communicated extensively via email and phone, and exchanged numerous counter proposals pertaining to both monetary and affirmative relief. *Id.* On the eve of trial, the parties were

ultimately able to reach a settlement in principle on January 14, 2026, *id.*, and filed a notice of the tentative settlement the next day. *See* Dkt. No. 195; Dkt. No. 212 ¶ 24.

As a condition of the Settlement, Defendants paid the full settlement amount of $13,400,000 into an interest-bearing account, the Qualified Settlement Account, ten days after the Court entered its preliminary approval order. Dkt. No. 199-1 § 5.4. This early funding benefited the Class by increasing the total amount of the common fund created to $13,524,410.05. *See* Dkt. No. 212 ¶ 37. The Settlement also includes significant affirmative relief, including a three-year period where the Plan's recordkeeper must be informed in writing that it cannot engage in cross-selling and a requirement that Defendants conduct a request for proposal for investment and administrative consulting services. Dkt. No. 199-1 § 10. Moreover, Class Counsel will monitor Defendants' compliance with these terms. *Id.*

On February 17, 2026, Plaintiffs moved for preliminary approval of the Settlement. Dkt. No. 199. On March 12, 2026, the Court granted preliminary approval. Dkt. No. 207. The Court set the final fairness hearing for September 2, 2026. Dkt. No. 207 ¶ 2.

After preliminary approval was granted, on July 2, 2026, Plaintiffs moved for attorneys' fees, reimbursement of expenses, and case contribution awards for the Class representatives. Dkt. No. 210. Their motion was supported by a memorandum in support, the Declaration of Joel D. Rohlf, and the Declaration of Jerome J. Schlichter. Dkt. Nos. 211 – 213. Defendants did not file a response to Plaintiffs' motion.

The deadline for Class members to file any objection to any part of the Settlement, including Class Counsel's request for attorneys' fees and reimbursement of expenses, was August 3, 2026. Dkt. 207 ¶ 5(B). Only two objections were timely filed with the Court. *See* Dkt. Nos. 214, 215.

## ANALYSIS

### I. Attorneys' Fees

Under the "common fund" doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds. Fed. R. Civ. P. 23(h); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013) ("Under [the common fund doctrine], 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))).

In the First Circuit, in calculating attorneys' fees from a common fund, the percentage-of-fund (or POF) approach is preferred. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *Sasoon v. Postmates, Inc.*, No. 17-11397-JCB, 2020 U.S. Dist. LEXIS 247946, at *9 (D. Mass. May 15, 2020) ("The POF method is preferred in common fund cases because it allows courts to award fees from the funds in a manner that rewards counsel for success and penalizes it for failure." (quoting *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006))); *Jackson v. New England Biolabs, Inc.*, No. 23-12208-RGS, 2025 LX 396873, at *3 (D. Mass. Aug. 7, 2025); *Gordan v. Mass. Mut. Life. Ins. Co.*, No. 13-30184-MAP, 2016 U.S. Dist. LEXIS 195935, at *5 (D. Mass. Nov. 3, 2016); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189–90 (D. Me. 2003).

In determining the reasonableness of class counsel's percentage fee award in a common fund case, this Court may consider the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections relative to the size of the settlement class; (3) the skill and efficiency of Class Counsel; (4) the

> complexity and duration of the litigation; (5) the financial risks of nonpayment taken on by Class Counsel; (6) the amount of time devoted to the case by Class Counsel; and (7) the awards in similar cases.

*Ford v. Takeda Pharms. U.S.A., Inc.*, No. 21-10090-WGY, 2023 U.S. Dist. LEXIS 93286, at *3 (D. Mass. Mar. 31, 2023). In applying these factors to this case, the Court finds that Class Counsel's requested award of one-third of the common fund is fair, reasonable, and warranted.

**A. Application of the Relevant Factors**

The Court finds that Class Counsel's requested attorneys' fee award is warranted after applying each of the relevant factors. The Court will emphasize the driving factors supporting the fee award requested here.

Class Counsel obtained a $13.4 million settlement, which now amounts to $13,524,410.05, that benefits approximately 136,000 Class members.[3] Dkt. No. 199-1 §§ 2.28, 5.4. This was a very substantial recovery for Class members, which can be estimated to over $15.8 million when considering the benefit of tax deferral. *See* Dkt. No. 211 at 14 (citing Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral*, INVESTMENT COMPANY INSTITUTE (Sept. 17, 2013)). The Court also considers the value of the future affirmative relief obtained through the settlement, which provides additional value to Class members. *See Gordan*, 2016 U.S. Dist. LEXIS 195935, at *6–7 (considering non-monetary relief and concluding that "Class Counsel's requested fee represents much less than one-third of the *total* value of the settlement" (emphasis in original)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346 (D. Mass. 2015) (Woodlock, J.) ("Injunctive relief has been recognized as a meaningful component of a settlement agreement[.]").

[3] Former Participant Notice, at 5, available at https://libertymutual401ksettlement.com/wp-content/uploads/2026/06/LibertyMutual_Former_Notice.pdf.

Out of over one hundred thousand Class members who received notice of the settlement and Class Counsel's request for attorneys' fees, only *two* Class members objected. *See* Dkt. Nos. 214, 215. This represents a miniscule amount – less than 0.002% – of the Class. Thus, the Class members' reaction to the proposed settlement and Class Counsel's request for attorneys' fees and reimbursement of litigation expenses illustrates almost unanimous approval. And the Independent Fiduciary, Fiduciary Counselors, rejected these objections, finding that the settlement was fair and reasonable, along with Class Counsel's request for attorneys' fees and reimbursement of litigation expenses. *See* Dkt. No. 218-1. This Court overrules these objections for the reasons stated in its final order approving the Settlement.

The Court recognizes that Schlichter Bogard pioneered this type of ERISA class actions. *See Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S. Dist. LEXIS 93206, at *4–5 (S.D. Ill. July 17, 2015) (the firm is the "pioneer and the leader in the field"). The firm's success in ERISA litigation can be seen through three recent victories before the United States Supreme Court. *See, e.g.*, *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015); *Hughes v. Northwestern Univ.*, 595 U.S. 170, 173–77 (2022); *Cunningham v. Cornell Univ.*, 604 U.S. 693, 709 (2025). The Court agrees that Schlichter Bogard are experts in this field. *See, e.g.*, *Pledger v. Reliance Tr. Co.*, No. 15-4444, 2021 U.S. Dist. LEXIS 105868, at *21 (N.D. Ga. Mar. 8, 2021) ("Class Counsel are highly experienced and recognized experts in ERISA litigation."); *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 U.S. Dist. LEXIS 91385, at *6 (D. Minn. July 13, 2015) ("experts in ERISA litigation") (citation omitted). As numerous federal courts have found, the Court concludes that Schlichter Bogard has demonstrated tremendous skill and unique expertise throughout this litigation to obtain an efficient result for Class members. *See, e.g.*, *Gordan*, 2016 U.S. Dist. LEXIS 195935, at *7–8 ("Class Counsel's unique expertise and outstanding effort"); *see also Ford*, 2023

U.S. Dist. LEXIS 93286, at *4 (Schlichter Bogard's "work on this case was exemplary and benefitted the Class by securing both monetary and affirmative relief").

Obtaining a successful recovery on behalf Class members was not a simple exercise. This was a highly complex case involving legal and factual issues that were vigorously contested. *Martin v. Caterpillar, Inc.*, No. 07-1009, 2010 U.S. Dist. LEXIS 82350, at *7 (C.D. Ill. Aug. 12, 2010) (excessive fee litigation "entails complicated ERISA claims" and novel questions of law). The Supreme Court has recognized that "ERISA is a comprehensive and reticulated statute . . . and is enormously complex and detailed[.]" *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) (internal quotations and citations omitted); *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 237 (3d Cir. 2007) ("ERISA is an enormously complicated statute.").

In this case, as in many other ERISA class actions handled by Schlichter Bogard, the firm devoted substantial resources to reaching the highly favorable result on behalf of tens of thousands of participants and retirees who depend on their savings for retirement. This Settlement was only achieved after almost six years of litigation on the eve of trial. *See* Dkt. No. 1; Dkt. No. 195. Over the course of the litigation, the firm dedicated over 6,100 hours of attorney time and over 900 hours of non-attorney time. Dkt. No. 212 ¶ 5. "[T]his time was spent investigating the Plan, identifying and formulating case theories and claims, meeting with named Plaintiffs, consulting with experts, briefing dispositive motions, reviewing discovery, preparing for and engaging in settlement negotiations, and answering motions." Dkt. No. 211 at 18–19; *see also* Dkt. No. 212 ¶¶ 7–24 (describing work performed throughout the litigation). The time and labor devoted by Class Counsel is consistent with other ERISA class actions handled by the firm. *See, e.g.*, *Cates v. Trs. of Columbia Univ.*, No. 16-6524, 2021 U.S. Dist. LEXIS 200890, at *8 (S.D.N.Y. Oct. 18, 2021) (13,188 hours of attorney hours and 2,288 hours of non-attorney hours); *Munro v. Univ. of S. Cal.*,

No. 16-6191, Dkt. No. 384 at 16 (C.D. Cal. Aug. 24, 2023) (13,285.20 attorney hours and 1,393.30 non-attorney hours); *Sims v. BB&T Corp.*, No. 15-732, 2019 U.S. Dist. LEXIS 75839, at *14 (M.D.N.C. May 6, 2019) (14,605.70 attorney hours and 1,951.70 non-attorney hours).

The Court finds that Class Counsel faced "significant risk of nonpayment" heading into a trial. *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 U.S. Dist. LEXIS 193107, at *14 (M.D.N.C. Sept. 29, 2016). In light of the Court's order granting in part and denying in part Defendants' *Daubert* motions to exclude Plaintiffs' experts at the summary judgment stage (Dkt. Nos. 152, 153), Defendants invariably would have renewed their motions following their cross-examination of Plaintiffs' experts at trial. Even if such motions were later denied, judgments in favor of defendants after lengthy and expensive trials of similar ERISA litigation illustrate the difficulty and uncertainty of obtaining a successful verdict or judgment. *See, e.g., Mills v. Molina Healthcare, Inc.*, No. 22-1813, 2024 U.S. Dist. LEXIS 50572 (C.D. Cal. Mar. 20, 2024); *Lauderdale v. NFP Ret., Inc.*, No. 21-301, 2024 U.S. Dist. LEXIS 31527 (C.D. Cal. Feb. 23, 2024); *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018); *Vellali v. Yale Univ.*, No. 16-1345, Dkt. No. 575 (D. Conn. June 28, 2023). Accordingly, there was no guarantee of a successful outcome in this case.

The Court finds that Class Counsel's request for $4,507,685.87 (one-third of the "Settlement Fund Balance")[4] in attorneys' fees is consistent with awards in similar ERISA class action settlements. *See, e.g.*, *Gordan*, 2016 U.S. Dist. LEXIS 195935, at *11; *Glass Dimensions, Inc. v. State Street Bank & Tr. Co.*, No. 10-10588-FDS, Dkt. No. 408 (D. Mass. May 12, 2014) (approving a one-third fee from a $10 million recovery on behalf of class members); *Bilewicz v.*

[4] The Settlement Fund Balance means the Gross Settlement Amount, including any accrued interest. Dkt. No. 199-1 § 2.45.

*FMR LLC*, No. 13-10636-DJC, 2014 U.S. Dist. LEXIS 183213 at *18–19 (D. Mass. Oct. 15, 2014) (approving a one-third fee from a $12 million recovery on behalf of 55,862 class members); *Ford*, 2023 U.S. Dist. LEXIS 93286, at *7–8 (approving a one-third fee from $22 million recovery on behalf of class members). Class Counsel has also shown that federal courts have consistently awarded Class Counsel a fee of one-third of the common fund in similar litigation. *See* Dkt. No. 213 ¶ 24 (listing 26 other ERISA settlements). The Court agrees with the weight of authority across the country that "have consistently recognized that a one-third fee is the market rate" in similar ERISA class actions handled by Class Counsel. *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 U.S. Dist. LEXIS 14772, at *8 (D. Md. Jan. 28, 2020) (collecting cases).

Moreover, the requested fee represents approximately 28.5% of the value of the monetary relief after the tax deferral benefits of the Settlement. Further, this does not include the significant value for years in the future for non-monetary relief.

**B. Lodestar Cross-Check**

The First Circuit prefers the percentage-of-fund approach when awarding attorneys' fees in common fund cases because it offers distinctive advantages including: (1) it is less burdensome to administer; (2) it reduces the possibility of collateral disputes; (3) it enhances the efficiency throughout the litigation; (4) it is less taxing on judicial resources; and (5) it better approximates the workings of the marketplace. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). Although the percentage-of-fund approach is the preferred method, a lodestar analysis may nevertheless be performed as simply a cross-check to ensure that the percentage award is fair and reasonable. *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 163 (D. Mass. 2015) (Young, J.). The lodestar approach multiplies the reasonable hours spent in litigating the case by the reasonable hourly rates

of the attorneys who worked on the case. *See In re Thirteen Appeals*, 56 F.3d at 305. The rates must be in line with attorneys with commensurate skill and experience. *See In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-02208-MAP, 2014 U.S. Dist. LEXIS 170100, at *23 (D. Mass. Dec. 9, 2014).

A lodestar cross-check confirms that Class Counsel's requested fee is appropriate and reasonable. The Court finds that the relevant market rate for this case is a nationwide rate. *See, e.g., Kelly*, 2020 U.S. Dist. LEXIS 14772, at *18 ("As courts have repeatedly recognized, complex ERISA class action litigation, such as this, involves a national market, particularly given that no attorney or law firm ever filed an excessive fee ERISA case before Class Counsel."); *see also Ford*, 2023 U.S. Dist. LEXIS 93286, at *6–7 ("national hourly rates" used when approving Class Counsel's requested fee).

Class Counsel had its national hourly rates approved by federal courts across the country. Most recently, the Southern District of New York and the Eastern District of Pennsylvania approved Schlichter Bogard's attorneys' fees of one-third of the settlement fund that included a lodestar cross-check based on Class Counsel's 2025 hourly rates. *Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, No. 20-7561, Dkt. No. 350 (S.D.N.Y Dec. 2, 2025); *Binder v. PPL Corp.*, No. 22-133, Dkt. No. 168 (E.D. Pa. July 22, 2025); Dkt. No. 212 ¶ 4.

The Court applies the following national hourly rates from 2025 to conduct the lodestar analysis: for attorneys with at least 25 years of experience, $1,550 per hour; for attorneys with 15–24 years of experience, $1,300 per hour; for attorneys with 5–14 years of experience, $950 per hour; for attorneys with 0–4 years of experience, $725 per hour; and for paralegals and law clerks, $475 per hour. Dkt. No. 212 ¶ 4; *see also Khan*, Dkt. No. 327 at 25 and *Binder*, Dkt. No. 165-1 at 22 (same hourly rates). Mr. Sanford Rosen, a nationally recognized expert on attorneys' fees,

independently verified these rates as reasonable for Schlichter Bogard based on the rates charged by attorneys of equivalent experience, skill and expertise for comparable services. *See Khan*, Dkt. No. 329 ¶¶ 77–85 (Declaration of Sanford Rosen); *Binder*, Dkt. No. 165-4 at 22–24 (same); *Ford*, 2023 U.S. Dist. LEXIS 93286, at *6–7 (noting Mr. Rosen's expertise); *Cates*, 2021 U.S. Dist. LEXIS 200890, at *10 (same).

The Court finds that the national hourly rates submitted by Schlichter Bogard are reasonable and appropriate. As previously indicated, Schlichter Bogard is the preeminent firm in this field. Throughout this litigation, the firm has demonstrated specialized knowledge and expertise in excessive fee litigation that resulted in a valuable settlement for Class members. *See also Gordan,* 2016 U.S. Dist. LEXIS 195935, at *7–8 (commended this firm's "extraordinary resourcefulness, skill, efficiency and determination," crediting the "exceptional result in th[e] case" is "Class Counsel's unique expertise and outstanding effort").

Using the national hourly rates and hours in Class Counsel's supporting declaration (Dkt. No. 212 ¶¶ 4–6), the lodestar is $7,316,747.50, creating a multiplier of 0.62 – much less than rates for lawyers who handle such cases on an hourly basis free of any risk. To compensate for the risk of nonpayment and to reflect scale of the results achieved by Class Counsel, a multiplier of the lodestar may be used. *In re Volkswagen*, 89 F. Supp. 3d at 165. However, the lack of any multiplier confirms that Class Counsel's requested attorneys' fees are eminently reasonable. *See, e.g.*, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 246 (D. Mass. 2022) ("Most multipliers fall between one and four, although there is significant variation."); *Mongue v. Wheatleigh Corp.*, No. 18-30095-KAR, 2024 LX 220459, at *14 (D. Mass. Apr. 16, 2024) ("[T]he fact that counsel are seeking fees below the amount of class counsel's lodestar does support the reasonableness of the requested fee.") (citation omitted); *New Eng. Carpenters Health Benefits*

*Fund v. First Databank*, No. 05-11148-PBS, 2009 U.S. Dist. LEXIS 68419, at *8–10 (D. Mass. Aug. 3, 2009) (awarding a fee representing a multiplier of approximately 8.3 times the lodestar).

## II. Expenses

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill v. State St. Corp.*, No. 09-12146-GAO, 2014 U.S. Dist. LEXIS 179702, at *53 (D. Mass. Nov. 26, 2014) (citing *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011) (Gorton, J.)); *Ford*, 2023 U.S. Dist. LEXIS 93286, at *7–8 (same). Reimbursable expenses include expert fees, travel, mediation, deposition, postage, and computerized legal research, among others. Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. 2004).

The Court finds that Class Counsel is entitled to reimbursement of litigation expenses of $400,962.86 advanced in prosecuting this case. Fed. R. Civ. P. 23(h); Dkt. No. 212 ¶¶ 30–31. The requested expenses are all for legitimate costs associated with prosecuting the case, and the amounts are reasonable. Given the substantial risk of nonpayment in ERISA litigation, Class Counsel had a strong incentive to limit costs. Although the costs incurred necessarily were substantial, they were consistent with what would be expected in a case of this magnitude that was litigated for years, proceeded through summary judgment, and ultimately settled immediately prior to trial. *See, e.g., Clark v. Duke Univ.*, No. 16-1044, 2019 U.S. Dist. LEXIS 105696, at *14 (M.D.N.C. June 24, 2019) ($822,212 costs); *Sims*, 2019 U.S. Dist. LEXIS 75839, at *17 ($737,377 costs); *Spano v. Boeing Co.*, No. 06-743, 2016 U.S. Dist. LEXIS 161078, at *3 (S.D. Ill. Mar. 31, 2016) ($1.8 million costs); *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S. Dist. LEXIS 12037,

at *3–4, 15 (S.D. Ill. Jan. 31, 2014) ($1.6 million costs); *In re Northrop Grumman ERISA Litig.*, 2017 U.S. Dist. LEXIS 223293, at *24 ($1.2 million costs) (all cases handled by Class Counsel).

## III. Class Representatives

The Court finds that an incentive award of $20,000 for each of the Class representatives—Yusuf Ahmed, Mary Ann Stocum, Andrew Loring, Mark Severn, Edward Lief, and Scott Diehl—is warranted in this case. "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts." *Savani v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015). Class Counsel has detailed why each of the Class representatives are deserving of any award, including obtaining critical documents regarding the Plan, working with Class Counsel in developing the case, sitting for depositions, and showing their overall commitment to the case. Dkt. No. 212 ¶¶ 33–36; *see Gordan*, 2016 U.S. Dist. LEXIS 195935, at *10–11 (similar). The Class representatives also took personal and financial risk in having a judgment against them for Defendants' costs. *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming cost award of $54,396.57 against plaintiffs); *see also Beesley*, 2014 U.S. Dist. LEXIS 12037, at *13–14 (noting risks).

Class Counsel's request is further in line with service awards in this District and elsewhere. *See, e.g.*, *Gordan*, 2016 U.S. Dist. LEXIS 195935, at *10–11 (approving $20,000 service awards for each class representative); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 248 (D. Mass. 2022) (approving $40,000 and $50,000 service awards for class representatives); *In re Asacol Antitrust Litig.*, No. 15-12730-DJC, 2017 U.S. Dist. LEXIS 221904, at *19 (D. Mass. Dec. 7, 2017) (approving a $100,000 service award for each class representative); *see also Kelly*, 2020 U.S. Dist. LEXIS 14772, at *18 (granting service awards of $20,000); *Pledger*, 2021 U.S. Dist. LEXIS 105868, at *27–28 (granting service awards of $25,000).

## CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards for the Class Representatives [Dkt. No. 210]:

1. the Court awards Schlichter Bogard LLC an attorneys' fee of **$4,507,685.87**, to be paid from the Qualified Settlement Account;

2. the Court awards Schlichter Bogard LLC litigation expenses of **$400,962.86**, which are to be paid from the Qualified Settlement Account; and

3. the Court awards **$20,000** to each of the Class representatives Yusuf Ahmed, Mary Ann Stocum, Andrew Loring, Mark Severn, Edward Lief, and Scott Diehl, also to be paid from the Qualified Settlement Account.

**IT IS SO ORDERED.**

DATED: 9/9, 2026

HON. MARK G. MASTROIANNI
UNITED STATES DISTRICT JUDGE